UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BARRY D. IRVIS,

                                        Petitioner,

                                                                9:12-CV-01538

v.
                                                                (FJS/TWD)

SUPERINTENDENT HAGGAT,
Mt. McGregor Correctional Facility,

                                        Respondent.
_____

APPEARANCES:                            OF COUNSEL:

BARRY D. IRVIS
08-A-4424
Petitioner *pro se*
Gowanda Correctional Facility
P.O. Box 311
Gowanda NY 14070

HON. ERIC T. SCHNEIDERMAN              PRISCILLA I. STEWARD, ESQ.
Attorney General for the State of New York
Counsel for Respondent
120 Broadway
New York, New York 10271


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER and REPORT-RECOMMENDATION**</u>

## I.    INTRODUCTION

    This matter has been referred to this Court for Report and Recommendation, pursuant to

28 U.S.C. § 636(b) and Northern District Local Rule 72.3(c), by the Hon. Frederick J. Scullin,

Senior United States District Judge.

Presently before this Court is the timely Petition of Petitioner Barry D. Irvis, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. No. 1.) Petitioner brings this proceeding challenging a judgment of conviction entered on August 12, 2008, on Petitioner's June 3, 2008, guilty plea to Rape in the Second Degree (N.Y. Penal Law § 130.30), a Class D Felony, and Attempted Rape in the Second Degree (N.Y. Penal Law §§ 110.00 and 130.30), a Class E Felony, in Greene County Court. (Dkt. No. 9 at 99.)[1]

Pursuant to a plea agreement, Petitioner, was sentenced as a second felony offender to three and a half to seven years for the crime of Rape in the Second Degree and one and a half years to three years for the crime of Attempted Rape in the Second Degree. *Id*. at 107. The terms were to run consecutively so that Petitioner's total term of imprisonment would be five to to ten years. *Id*.

The Appellate Division Third Department ("Appellate Division") unanimously affirmed the judgment of conviction on December 22, 2011, and leave to appeal to the New York Court of Appeals was denied on June 8, 2012. *People v. Irvis*, 935.Y.S.2d 371 (3rd Dep't 2011), *lv. denied*, 950 N.Y.S.2d 114 (2012). Petitioner is currently incarcerated in Gowanda Correctional Facility pursuant to the conviction. (Dkt. Entry, July 15, 2015.)

Petitioner has raised numerous grounds for habeas review: (1) his guilty plea was not made voluntarily with an understanding of the consequences; (2) ineffective assistance of counsel; (3) he was denied the right to appeal all issues; (4) his conviction was obtained by evidence gained through an unconstitutional search and seizure; (5 & 11) Penal Law § 130.30 is

---

[1] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

unconstitutional on the grounds that it does not allow mistake as to the victim's age as a defense, and he was denied a fair trial because he was deprived of the defense; (6) the County Court Judge was biased against him; (7) the District Attorney was biased against him; (8) he was the victim of selective and malicious prosecution because he is Black and the victim is White; (9) he was denied a speedy trial; and (10) he was denied due process in various ways related to the grand jury proceedings and the timing of the suppression hearing in relation to his N.Y. Criminal Procedure Law ("CPL") § 210.30 motion to inspect the grand jury minutes and dismiss the indictment. (Dkt. No. 1 at ¶ 12(A)-(K).)

For the reasons discussed below, the Court recommends that Petitioner's Petition (Dkt. No. 1) be denied and dismissed in its entirety.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Investigation, Arrest, and Indictment

On October 5, 2006, after declining his parole officer's request to provide a buccal DNA sample, Petitioner accompanied a New York State Police Investigator to the Catskill Police Department. (Dkt. No. 9 at 9, 16, 20.) The Investigator had learned that a fourteen year old girl, referred to herein as V.C., was pregnant, and that she had engaged in sexual intercourse with Petitioner, who was twenty-nine years old, on several occasions around the time she had become pregnant. *Id.* at 17-19, 24. The Investigator interviewed Petitioner and asked him to provide a buccal DNA sample to determine if he was the father of V.C.'s child. *Id.* at 26, 50-51. Although he was initially resistant, Petitioner agreed after numerous requests and signed the consent form. *Id.* at 26-28, 52, 56-57. The DNA test established Petitioner as the father of V.C.'s baby. (Dkt. No. 10-1 at 107.)

3

After being interviewed by the Investigator and giving the DNA sample, Petitioner was arrested and arraigned on charges of Rape in the Second Degree and Endangering the Welfare of a Child for allegedly having engaged in sexual intercourse with V.C. (Dkt. Nos. 9 at 19; 10-1 at 64-66, 86, 110, 112.) Petitioner was subsequently indicted on four charges of Rape in the Second Degree (Penal Law § 130.00) and one count of Criminal Sexual Act in the Second Degree (Penal Law § 130.45). *Id*. at 54-55.

### B. Petitioner's Defense Counsel

The Greene County Public Defender was assigned to represent Petitioner. (Dkt. No. 10-1 at 41.) In an April 24, 2007, notarized letter to the Hon. Daniel K. Lalor, Greene County Court Judge, Petitioner requested that he be assigned another attorney to represent him because the Public Defender representing him had been the Assistant District Attorney on Petitioner's 1996 drug case, and Petitioner did not believe he had his best interest in mind. *Id*. Petitioner claimed that the Public Defender was waiting for the present District Attorney to retire so that he could take over, and that he would use Petitioner's case as a stepping stone. *Id*.

Judge Lalor assigned Petitioner new counsel on or about April 8, 2008. (Dkt. No. 9-3 at 64.) Before being replaced, the Public Defender filed an omnibus motion for inspection of the grand jury minutes and dismissal of the indictment based upon deficiencies; a *Sandoval* hearing; for discovery and a bill of particulars; and participated in a suppression hearing with regard to statements given to law enforcement personnel, including those given during the October 5, 2006, interview with the Investigator, and the DNA sample. (Dkt. No. 10-1 at 68-69.)

### C. Objection to Judge Lalor

In his April 24, 2007, letter to Judge Lalor, Petitioner also requested a change of venue or the appointment of a judge from another county to hear his case because of Judge Lalor's personal dislike of Petitioner and his family as a result of Petitioner's former relationship with Judge Lalor's sons involving the apparent use and selling of drugs, and Petitioner's father's relationship with the Judge's secretary. (Dkt. No. 10-1 at 41.) However, Judge Lalor continued to preside over the case through Petitioner's guilty plea and sentencing. (Dkt. No. 9 at 78-109.)

### D. Suppression Hearing

A suppression hearing regarding oral and written statements bearing on the indictment given to law enforcement personnel and the question of consent regarding the DNA sample was held in Greene County Court on September 27, 2007. (Dkt. No. 9 at 1-77.) According to testimony by the Investigator, he interviewed Petitioner regarding V.C. after advising him of his *Miranda* rights. *Id*. at 21-23. Petitioner testified at the suppression hearing that he was never advised of his *Miranda* rights, and that he was interviewed in a cold room for three to four hours and given nothing to eat or drink. *Id*. at 54-55. Petitioner claimed he requested a lawyer and was told by the Investigator he was not under arrest. *Id*. at 55. Petitioner also testified that he was under the impression that the DNA sample was for a paternity test for Social Services because that is what his parole officer had told him when he was first asked to give a DNA sample. *Id*. at 70.

According to a January 15, 2008, letter to Petitioner from the Public Defender, who had represented Petitioner at the suppression hearing, Judge Lalor found in his decision on the

hearing, which does not appear to be part of the record, that while law enforcement had used deception to obtain the DNA sample, the statement was preceded by *Miranda* warnings and was therefore admissible.  (Dkt. No. 10-1 at 107.)  Judge Lalor also found that the deception was not so unfair as to render the DNA results identifying Petitioner as the father of V.C.'s baby inadmissible.  *Id*.

### E.      Appointment of a Special Prosecutor

In his April 24, 2007, letter to Judge Lalor, Petitioner also requested the appointment of a prosecutor from another county because the Greene County District Attorney's brother had an order of protection against him, and Petitioner had a parole stipulation to stay away from and have no contact with the brother or his family.  (Dkt. No. 10-1 at 42.)  In April 2008, the District Attorney filed an application for the appointment of a Special District Attorney to prosecute Petitioner's case.  (Dkt. No. 9-3 at 59-60.)  The District Attorney stated in the application that he had been advised in a February 11, 2008, letter from Petitioner that one of the conditions of Petitioner's parole in 2000 had been that he stay away from the District Attorney's brother and his family because of threats Petitioner had made to kill them.  *Id*.  Judge Lalor granted the request and appointed an attorney from the New York State Prosecutor's Training Institute as Special District Attorney.  *Id*. at 57-58.

### F.      Plaintiff's Guilty Plea and Sentencing

Petitioner had remained in jail from the time of his arrest on October 5, 2006, until his June 3, 2008, trial date.  (Dkt. No. 10 at 35.)  On June 3, 2008, Judge Lalor held a conference at the start of trial.  (Dkt. No. 9 at 78-101.)  During the conference, Petitioner consented to a plea agreement pursuant to which he pleaded guilty to the first count of the indictment, Rape in the

Second Degree (Penal Law § 130.00) and one count of Attempted Rape in the Second Degree (Penal Law §§ 110.00 and 130.30).  *Id*. at 87, 99.  A part of the plea agreement was a waiver by Petitioner of his right to appeal his conviction and sentence.  *Id*.  Pursuant to the plea agreement, Petitioner was sentenced as a second felony offender to three and a half to seven years for the crime of Rape in the Second Degree and one and a half years to three years for the crime of Attempted Rape in the Second Degree.  *Id*. at 107.  The terms were to run consecutively so that Petitioner's total term of imprisonment would be five to ten years.  *Id*.

The plea agreement also satisfied all of the known sex related charges against Petitioner in Greene County and gave Petitioner credit for time served on the indictment involving V.C.  *Id*. at 90.  The known sex related charges satisfied by the plea agreement included a pending indictment against Petitioner involving another young female victim, and a third case involving a young female victim in which the District Attorney's Office had not yet indicted Petitioner.  *Id*. at 82, 89.  In addition, the prosecution agreed not to petition the court to sentence Petitioner as a persistent felony offender.  *Id.* at 90.

## III.    POST-CONVICTION PROCEEDINGS

### A.    Direct Appeal

Petitioner pursued a counseled appeal from the judgment of conviction entered on his guilty plea, in which he also filed Appellant's Supplemental Brief Pro Se.  (Dkt. Nos. 9-1 and 9-2.)  The grounds for appeal raised by Petitioner's counsel included: (1) denial of Petitioner's constitutional right to a speedy trial; (2) the involuntary nature of Petitioner's guilty plea; (3) ineffective assistance of counsel; and (4) imposition of a harsh and excessive sentence.  (Dkt. No. 9-1.)  Petitioner also raised violation of his right to a speedy trial and ineffective assistance of

counsel in his Pro Se Brief. (Dkt. No. 9-2 at 7-10, 14-20.) Additional grounds raised in Petitioner's Pro Se Brief included that his constitutional rights were violated as a result of a conflict with the District Attorney and a biased judge, and the unconstitutionality of the statute under which he was convicted. *Id*. at 3-6, 11-13, 21-24.

The Appellate Division unanimously affirmed Petitioner's judgment of conviction on December 22, 2011, and leave to appeal to the New York Court of Appeals was denied on June 8, 2012. *People v. Irvis*, 935.Y.S.2d 371 (3rd Dep't 2011), *lv. denied*, 950 N.Y.S.2d 114 (2012). The Appellate Division found that by pleading guilty and waiving his right to appeal, Petitioner was precluded from raising the following claims: (1) denial of his CPL § 30.30 statutory right to a speedy trial; (2) that the County Court committed reversible error by ruling that evidence that the victim misrepresented her age to him at the time of the encounter was irrelevant and would not be admitted at trial; and (3) that his sentence was harsh and excessive. *Id*. at 373. The Appellate Division also found that Petitioner's claim that the County Court was biased was both foreclosed by his appeal waiver and unpreserved. *Id*.

Petitioner's claim that he was denied his constitutional right to a speedy trial was found by the Appellate Division to have survived his guilty plea. *Id*. However, the Court concluded that Petitioner had not been denied his constitutional right to a speedy trial. *Id*. The Appellate Division found that Petitioner's claim that his guilty plea was involuntarily entered was not preserved for review because Petitioner did not move to withdraw is plea or make an application to vacate the judgment of conviction and made no statement during his plea allocution to cast doubt on his guilt so as to give rise to an exception to the preservation rule. *Id*.

The Court further found that Petitioner's claim that his counsel was ineffective and that the ineffectiveness impacted the voluntariness of his plea was unpreserved for appellate review. *Id.* at 374. The Court noted that in any event, as a result of his counsel's efforts, Petitioner had not received the maximum prison sentence that could have been imposed, and Petitioner's allocution demonstrated his full understanding of the consequences of entering a guilty plea. *Id*. at 374.

The Appellate Division reviewed Petitioner's remaining contentions and found them to be without merit. *Id*.

### B.     State *Habeas Corpus*

Petitioner filed a state *habeas corpus* petition in New York State Supreme Court, Franklin County on February 18, 2011. (Dkt. Nos. 1 at 2; 10-1 at 122-24.) The grounds raised by Petitioner in the State proceeding included that the judgment of conviction and sentence imposed "were the product of prosecutorial misconduct, ineffective assistance of counsel and judicial misconduct/errors," that his constitutional right to a speedy trial was violated, and that New York State's statutory rape statute is unconstitutional. (Dkt. No. 10-1 at 123.)

The Hon. S. Peter Feldstein, Acting State Supreme Court Justice, treated Petitioner's petition as an *ex parte* request for the issuance of a writ of habeas corpus or an order to show cause in a habeas corpus proceeding. *Id*. at 122. Justice Feldstein denied Petitioner's request to issue a writ or order on the grounds that the issues raised by Petitioner either were, or could have been, raised in his pending direct appeal or in a CPL Article 440 motion, and the court found no basis for departure from the traditional procedure. *Id*. at 123-24.

## IV.    STANDARD OF REVIEW

### A.    Exhaustion Requirement under the Antiterrorism and Effective Death Penalty Act of 1996

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs applications of incarcerated state court defendants seeking federal habeas corpus relief. *See* 28 U.S.C. § 2254. Before a federal court may consider an application for habeas corpus relief pursuant to 28 U.S.C. § 2254, the petitioner must generally have exhausted all the remedies available in the courts of the state in which he or she was convicted.[2] 28 U.S.C. § 2254(b)(1)(A); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1399 (2011) ("Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief."); *Jones v. Murphy*, 694 F.3d 225, 246-47 (2d Cir. 2012), *cert. denied*, ___ U.S. ___, 133 S.Ct. 1247 (2013) ("Under AEDPA, a prisoner in custody pursuant to a state court judgment must generally exhaust state court remedies before seeking federal habeas corpus review.").

"Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoner's federal rights." *Cornell v. Kirkpatrick*, 665 F.3d 369, 375 (2d Cir. 2011) (citation and internal quotation marks omitted); *Strogov v. Attorney General*, 191 F.3d 188, 191 (2d Cir. 1999) (a habeas petitioner has fairly presented his claim when he has "[i]nformed [the

---

[2] Exhaustion may be excused where it appears that "there is an absence of available state corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." *See* 28 U.S.C. § 2254(b)(1)(B)(i)-(ii).

State] courts of all the essential factual allegations and essentially the same legal doctrine [asserted] in [the] federal petitioner") (citation and internal quotation marks omitted).

> Passage through the state courts, in and of itself, "is not sufficient." *Picard* [*v. Connor*, 404 U.S. 270, 275 (1971)]. To provide the State with the necessary 'opportunity,' the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)."

*Wilens v. Superintendent of Clinton Correc. Fac.*, No. 11-CV-1938 (JFB), 2014 WL 28995, at *5, 2014 U.S. Dist. LEXIS 182111, at *13 (E.D.N.Y. Jan. 2 2014).[3]

Petitioner bears the burden of proving exhaustion. *Colon v. Johnson*, 19 F.Supp. 2d 112, 119-20 (S.D.N.Y. 1998) (citations omitted).

**B.     Procedural Default**

A state prisoner's procedural default in the state courts will also bar federal review unless the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he or she can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A procedural default occurs in one of two ways. "First, if the state prisoner fails to exhaust his state remedies in a manner in which, were he to return to the state courts with his unexhausted claim, those courts would find the claim barred by the application of a state procedural rule," [the habeas court] must deem the claim procedurally defaulted." *Jackson v.*

---

[3] Copies of unreported cases cited herein will be provided to Petitioner. *See Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

*Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (citation and internal quotation marks omitted).

"Alternatively, a procedural default occurs if the state court's rejection of a federal claim rests on

a state law ground   such as the operation of a state procedural rule   that is both independent of

the federal question and adequate to support the judgment . . . , [and] the last state court

rendering a judgment in the case clearly and expressly states that its judgment rest on a state

procedural bar." *Id.*  (citations and internal punctuation and quotation marks omitted).  A

petitioner's procedural default precludes federal habeas review "if the last state court rendering a

judgment in the case rests its judgment on the procedural default." *Harris v. Reed*, 489 U.S. 255,

262 (1989).  Where a state court has expressly relied on a procedural default, federal habeas

review is foreclosed even if the state court also addressed the merits of the federal claim.  *See*

*Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (federal habeas review barred where state held

claim "not preserved for appeal" but then ruled on the merits of the claim "in any event").

C.      **Review of State Court Decisions on the Merits Under the AEDPA**

Under the AEDPA, an application for a writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated
> on the merits in State court proceedings unless the adjudication of
> the claim    (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United
> States; or (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

28 U.S.C. § 2254(d).  Recognizing the principle that "[s]tate courts are adequate forums for the

vindication of federal rights . . . , AEDPA erects a formidable barrier to federal habeas relief for

prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, ___U.S. ___, 134

S.Ct. 10, 15-16 (2013); *see also Cullen,* 131 S.Ct. at 1398 ("This is a difficult to meet [ ] . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt . . . .") (citation and internal quotation marks omitted).

"For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). Under the AEDPA, a summary disposition by a state court constitutes a disposition on the merits. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Where AEDPA's deferential standard of review applies, "[a] state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence." *Bierenbaum v. Graham*, 607 F.3d 36, 48 (2d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)), *cert. denied*, 131 S.Ct. 1693 (2011). "[A] state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 291 (2010).

In determining whether a state court has adjudicated a claim "on the merits," a federal habeas corpus court must classify the state court decision as either (1) fairly appearing to rest primarily on federal law or to be interwoven with federal law; or (2) fairly appearing to rest primarily on state procedural law. *Jimenez v. Walker*, 458 F.3d 130, 145 (2d Cir. 2006). Decisions in the first category are deemed to have been made "on the merits" of the federal claim. *Id*.

A decision "on the merits" is contrary to clearly established federal law when it is either contrary to Supreme Court precedent on a question of law or opposite to a relevant Supreme Court case with materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000).  "Section 2254(d)(1)'s 'clearly established' phrase refers to the holdings, as opposed to

the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decisions."

*Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (citation and internal quotation marks omitted).

"[F]ederal law, as defined by the Supreme Court, may be either a generalized standard

enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a

particular context."  *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002).  "[C]ircuit precedent

does not constitute clearly established Federal law, as determined by the Supreme Court . . . [and]

cannot form the basis for habeas relief under AEDPA."  *Parker v. Matthews*, ___ U.S. ___, 132

S.Ct. 2148, 2155  (2012) (citation and internal quotation marks omitted).

　　A state court unreasonably applies federal law when it correctly identifies the governing

legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable"

manner.  *Lockyer*, 538 U.S. at 75.  An erroneous application of federal law is not necessarily an

unreasonable one.[4]  *Williams,* 529 U.S. at 413.  "It is settled that a federal habeas corpus may

overturn a state court's application of federal law only if it is so erroneous that 'there is no

possibility fairminded jurists could disagree that the state court's decision conflicts with this

Court's precedents.'" *Nevada v. Jackson*, ___ U.S. ___, 133 S.Ct. 1990, 1992 (2013) (quoting

*Richter*, 562 U.S. at 101).  "[A] federal habeas court may not issue the writ simply because that

court concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly."  *Lockyer*, 538 U.S. at 75-76.

―――――――――――――

　　[4] Nevertheless, as interpreted by the Second Circuit, "although some increment of
incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas
relief would be limited to state court decisions so far off the mark as to suggest judicial
incompetence."  *Mask v. McGinnis*, 252 F. 3d 85, 89 (2d Cir. 2001).

Federal habeas corpus review is limited to determining whether petitioner is in custody in violation of the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. §§ 2241(c), 2254(a); *see also Wainwright v. Goode*, 464 U.S. 78, 83 (1983) ("[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."). Federal habeas relief does not "lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). Petitioner has the burden of proving by a preponderance of the evidence that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *see also Smalls v. Batista*, 191 F.3d 272, 278 (2d Cir. 1999). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Richter*, 131 S.Ct. at 786. Where a claim has been adjudicated on the merits by a state court, federal habeas review is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 131 S.Ct. at 1398.

## V.    ANALYSIS

### A.    Petitioner's Claim that his Guilty Plea and Waiver of Appeal Were Not Knowing, Voluntary, and Intelligent and that His Counsel was Ineffective

#### 1.    Petitioner's Procedural Default on his Claims that his Guilty Plea was Not Knowing, Voluntary, and Intelligent, and that his Counsel was Ineffective

The Appellate Division found Petitioner's claims that his guilty plea was not voluntarily entered and that his counsel was ineffective, and that the ineffectiveness impacted the voluntariness of his plea, were unpreserved for appeal. *Irvis*, 935 N.Y.S.2d at 373-73. It is well-settled that a petitioner's federal claim may be procedurally barred from habeas review if it was decided at the state level on "adequate and independent" procedural grounds. *See Coleman,* 501

U.S. at 729-33.  The procedural rule is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999).  To be independent, the "state court must have actually relied on the procedural bar as an independent basis for its disposition of the case," *Harris,* 489 U.S. at 261-62, by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Id*. at 263 (internal quotation marks omitted).

New York courts have long relied on the preservation requirement to deny challenges to the voluntariness of guilty pleas where the petitioner has not moved to withdraw his guilty plea or vacate the judgment of conviction. *See, e.g., People v. Pascale*, 425 N.Y.S.2d 547, 547 (1980) ("The argument that the defendant should be relieved of his guilty plea was not raised by motion in the court of first instance prior to conviction and therefore has not been preserved for our review."); *see also People v. Jones*, 981 N.Y.S.2d 465 (3d Dep't 2014) (claim that guilty plea was coerced by court's alleged threat to defendant to illegally sentence him was unpreserved because he withdrew his motion to withdraw his plea and the record did not reveal that he moved to vacate the judgment); *People v. Hernandez*, 972 N.Y.S.2d 697, 698-99 (2d Dep't 2013) ("The defendant's contention that her plea of guilty was not knowing, voluntarily, and intelligently entered into is unpreserved for appellate review, since she did not move to withdraw her plea on the ground prior to the imposition of sentence.")

New York courts have likewise relied on the preservation requirement to deny challenges to the effectiveness of defense counsel's representation as it impacts the voluntariness of the guilty plea where the petitioner has failed to withdraw his guilty plea or vacate the judgment of conviction. *See People v. Benson*, 929 N.Y.S.2d 885, 886 (3d Dep't 2011) ("Defendant's contention that he was denied the effective assistance of counsel . . . to the extent it relates to the

voluntariness of his plea . . ., is similarly unpreserved for our review due to his failure to move to withdraw his plea or vacate the judgment of conviction."); *People v. Douglas*, 831 N.Y.S.2d 585, 586 (3d Dep't 2007) ("Defendant's challenges to the validity of his plea and to the effectiveness of defense counsel's representation as it impacts the voluntariness of his guilty plea are unpreserved for our review given his failure to move to withdraw his plea or vacate the judgment of conviction.").

Habeas courts in this Circuit have recognized that failure to move to withdraw a guilty plea or move to vacate a judgment of conviction constitutes an independent and adequate state procedural rule barring federal habeas review of claims challenging the voluntariness of a plea and that the ineffective assistance of counsel impacted the voluntariness of the plea. *See, e.g.*, *Rojas v. Heath*, No. 11 Civ. 4322(CS)(PED), 2012 WL 5878679, at *7, 2012 U.S. Dist. LEXIS 166853, at *21 (S.D.N.Y. Oct. 18, 2012) (well-settled that preservation of challenges to the validity of a guilty plea for appeal in New York requires a motion to withdraw the plea or motion to vacate the judgment of conviction); *Garcia v. Boucaud*, No. 09 Civ. 5758 (RJH) (GWG), 2010 WL 1875636, at *6, 2010 U.S. Dist. LEXIS 142951, at *18 (S.D.N.Y. May 11, 2010) (failure to withdraw a guilty plea before sentencing constitutes an independent and adequate ground for the state court decision); *Moore v. Lape*, No. 08-CV-0474 (MAT), 2010 WL 3522227, at *3, 2010 U.S. Dist. LEXIS 93372, at *7 (W.D.N.Y. Sept. 8, 2010) ("Habeas courts in this Circuit held have held that the failure to move to withdraw a guilty plea before sentencing constitutes an adequate and independent state ground barring habeas review."); *Bennefield v. Kirkpatrick*, 741 F.Supp. 2d 447, 453-54 (W.D.N.Y. 2010) (citing *People v. Hilliard*, 832 N.Y.S.2d 461 (3d Dep't 2007) ("[D]efendant's assertion that his guilty plea was involuntarily entered is unpreserved for

our review in light of his failure to move to withdraw the plea or vacate the judgment of conviction.")).

   As noted above, if, as in this case, claims are procedurally defaulted, a federal habeas court may not review the claim on the merits unless the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he or she can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman,* 501 U.S. at 750. A petitioner may demonstrate cause with "a showing that the factual or legal basis for a petitioner's claim was not reasonably available to counsel, . . . or that some interference by state officials made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel." *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Only if a petitioner can establish cause will a court proceed to consider prejudice, which requires a showing of "actual prejudice resulting from the errors of which [petitioner] complains." *United States v. Frady*, 456 U.S. 152, 168 (1982) (internal quotation marks omitted). A fundamental miscarriage of justice involves showing that the petitioner is actually innocent of the crime. *Sweet v. Bennett*, 353 F.3d 135, 141 (2d Cir. 2003).

   Petitioner has demonstrated neither cause for his procedural default nor his actual innocence as required for a showing a miscarriage of justice absent review of the procedurally defaulted claims.

2.     Merits of Petitioner's Claims that his Guilty Plea and Waiver of Appeal
       Were Not Knowing, Voluntary, and Intelligent, and that his Counsel was
       Ineffective

       a.     Guilty Plea

Petitioner claims that his guilty plea was not voluntarily made.  (Dkt. No. 1 at 4.)

According to Petitioner, his public defender recused himself in early April of 2008, and his court

appointed counsel, appointed on April 8, 2008 (Dkt. No. 9-3 at 64), never told him any of the

consequences of pleading guilty and kept telling him to plead guilty because he would lose at

trial, and that he would still be able to appeal.[5]  (Dkt. No. 1 at 4.)  The consequences referred to

by Petitioner include the possibility of civil confinement in a mental hospital after completing his

prison sentence, never being able to know the son he had with victim V.C., not being able to be

paroled to his house because of the presence of young children, needing his parole officer's

written permission to see his children, not being able to go to his children's school or park or any

place where children under eighteen will be present, being required to wear a GPS tracking

system, and having to take polygraph tests.  (Dkt. No. 10 at ¶ 21.)

     "A guilty plea operates as a waiver of important rights, and is valid only if done

voluntarily, knowingly, and intelligently, 'with sufficient knowledge of the relevant

circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (citing

*Brady v. United States*, 397 U.S. 742, 748 (1970).  "The standard was and remains whether the

plea represents a voluntary and intelligent choice among the alternative courses of action open to

_____

[5] There is no support in the State court record for Petitioner's claim that his attorney told
him he would still be able to appeal, and Petitioner did not make that claim on his direct appeal.
(Dkt. No. 9-1 at 2-33.)

the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A guilty plea must be

voluntary, knowing, and intelligent "because a guilty plea constitutes a waiver of three

constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege

against self-incrimination." *Parke v. Raley*, 506 U.S. 20, 29 (1973). The voluntariness of a

guilty plea "can be determined only by considering all of the relevant circumstances surrounding

it," *Brady v. United States*, 379 U.S. 742, 750 (1970).

A court may determine whether a defendant knowingly and voluntarily entered into a plea

bargain by, among other things, his allocution statements. *United States v. Torres*, 129 F.3d 710,

715 (2d Cir. 1997). Sworn statements made by a defendant in entering a guilty plea carry "a

strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). "[T]he

representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any

findings made by the judge in accepting the plea, constitute a formidable barrier in any

subsequent collateral proceedings" to withdraw the plea or vacate the judgment of conviction

based on the plea. *Id*. at 73-74.

Petitioner claimed on his appeal to the Appellate Division that the guilty plea was rushed

and done under a great deal of pressure from his attorney, who never fully discussed his trial

options, and that it was effectuated without his full knowledge of the consequences of his legal

rights. (Dkt. No. 9-1 at 19.) According to Petitioner, he was discouraged from going to trial and

misled into believing he had no choice but to plead guilty. *Id*.

However, the record of Petitioner's plea allocution supports the conclusion reached by the

Appellate Division that he fully understood the consequences of pleading guilty. The plea and

the sentence he could receive were fully explained to Petitioner, and he was allowed to speak

with his attorney before deciding to accept the plea. *Id.* at 85-89, 91-93. In addition, Petitioner

indicated that he understood the nature of the proceedings; was not under the influence of drugs

or alcohol; understood the sentence he could receive; had been given an opportunity to speak

with his counsel and was satisfied with the advice he had given and the services he had rendered;

that no promises other than those disclosed in court had been made to him in order to get him to

plead guilty; and that no one had threatened him. *Id.* at 91-95. "A defendant's bald statements

that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw

the guilty plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997).

Based upon the proceedings regarding Petitioner's guilty plea and his plea allocution, the

Court concludes that the Appellate Division determination that his guilty plea was knowingly and

voluntarily entered into was not contrary to, or an unreasonable application of, clearly established

federal law as determined by the Supreme Court.

### b. Waiver of Appeal

The "right to appeal in a criminal case is not of constitutional magnitude." *United States

v. Teeter*, 257 F.3d 14, 22 (1st Cir. 2001) (citing *Jones v. Barnes*, 463 U.S. 745 (!983)). New

York allows criminal defendants to waive their right to appeal as a part of a plea agreement when

the waiver is made voluntarily, knowingly, and intelligently. *See People v. Bradshaw*, 938

N.Y.S.2d 254 (2011); *People v. Seaberg*, 543 N.Y.S.2d 968 (1989). *See also United States v.

Ruiz*, 536 U.S. 622, 629 (2002) (defendant may waive the right to appeal as a condition of a plea

bargain; however, as with a guilty plea, the record must demonstrate that the waiver is voluntary,

knowing, and intelligent); *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001) (per

curiam) ("a knowing and voluntary waiver of the right to appeal is generally enforceable" in the

context of a direct appeal from a criminal conviction); *see also Steele v. Filion*, 377 F. Supp. 2d 332, 334-35 (W.D.N.Y. 2005) (appeal waivers set forth in plea agreements are constitutional provided the waiver was knowing, voluntary, and intelligent.)  To be effective, a defendant must be informed of the nature of the right and must evidence a full understanding of the consequences of the waiver.  *United States v. Ready*, 82 F.3d 551, 556-57 (2d Cir. 1996), *superseded on other grounds as stated in United States v. Cook*, 722 F.3d 477, 481 (2d Cir. 2013).

Petitioner claimed in his direct appeal to the Appellate Division that his attorney had him waive his right to an appeal without his realizing the ramifications of the waiver, with no idea what it really meant, and without knowledge of the legal issues he would be giving up on his appeal as his attorney never explained it to him.  (Dkt. No. 9-1 at 20-21.)   However, he has offered no record evidence of this outside of conclusory allegations.  *See United States v. Walker*, 411 F.Supp. 2d 336, 337 (W.D.N.Y. 2006) (holding that a defendant cannot defeat an appeal waiver through conclusory assertions).

The state court record supports the conclusion that the appeal waiver was voluntary, knowing, and intelligent.  During the plea allocution, Judge Lalor asked Petitioner whether he understood that "as part of the proposed plea agreement in this case you agree to waive your right to appeal your conviction and sentence." (Dkt. No. 9 at 99.)   The Judge explained to him that under New York law he had the right to appeal both his conviction and sentence and to have the facts of the case and rulings by the court reviewed by a higher court.  *Id.*  at 99-100.  He further explained to Petitioner that by entering into the plea agreement he would be giving up that right to appeal, and that the effect of the waiver would be "the same as if [he] had appealed [his] case

and lost [his] appeal." *Id*. at 100.  Petitioner was asked if he understood the effect of the waiver, and he answered in the affirmative.  *Id*.

Based upon the foregoing, the Court finds that the Appellate Division determination that Petitioner's guilty plea, of which his agreement to waive his right to appeal was a part, *id*., at 99, was knowing and voluntary was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

c.     Assistance of Counsel with Regard to the Guilty Plea

On his direct appeal to the Appellate Division, Petitioner claimed that his attorney never discussed his trial options or legal defenses with him, discouraged him from going to trial, and misled him into believing that he had no choice but to accept the plea offer.  (Dkt. No. 9-1 at 19.)  According to Petitioner, his attorney continuously threatened him that he could receive several more years in state prison if he did not accept the plea offer and told him he had no viable defenses.  *Id*. at 20.   In addition, Petitioner claimed on his direct appeal that his attorney had him waive his appeal rights without understanding the ramifications of the waiver, and Petitioner had no idea what rights he was giving up because his attorney never fully explained it to him.  *Id*.  20-21.

The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const., amend VI.  "[T]he right to counsel is the right to the effective assistance of counsel."  *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  The Sixth Amendment right to counsel extends to the plea-bargaining process and sentencing.  *Lafler v. Cooper*, ___ U.S. ___,132 S.Ct. 1376, 1384 (2012).  To establish a violation of the right to effective assistance of counsel, a habeas

petitioner must show: (1) that counsel's representation fell below an objective standard of reasonableness, measured in light of the prevailing professional norms; and (2) resulting prejudice, that is, a reasonable probability that but for counsel's unprofessional performance, the outcome would have been different. *Id*. at 1384 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984)). Under *Strickland,* 666 U.S at 690, "counsel should be strongly presumed to have rendered adequate assistance and made all decisions in the exercise of reasonable professional judgment."

In *Richter*, 131 S.Ct. 770, 786, addressing the *Strickland* standard and its relationship to the AEDPA, the Supreme Court explained:

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [*Strickland*], 466 U.S. at 688 [ ]. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id*., at 689 [ ]. The challenger's burden is to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*., at 687 [ ].
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Id*. at 693 [ ]. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*., at 687 [ ].
>
> "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. [356, 371], 130 S.Ct. 1473, 1485 [ ] (2010). . . . Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. . . . . The question is

whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom." *Strickland*, 466 U.S., at 690.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult [because] the standards created by *Strickland* and § 2254(d) are both "highly deferential" . . . and when the two apply in tandem, review is "doubly" so. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. (some internal citations omitted).

In *Titlow*, 134 S.Ct. at 13, the Supreme Court reiterated the requirement that federal courts use a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." (quoting *Cullen*, 131 S.Ct. at 1403).

As noted above, Petitioner claims that he was rushed to plead guilty under pressure from his attorney, who never fully discussed his trial options and defenses, discouraged him from going to trial, misled him into believing he had no choice but to plead guilty, and told him to waive his right to an appeal without explaining the ramifications. (Dkt. No. 9-1 at 19-21.) However, as discussed above, Petitioner's plea allocution belies those claims. (Dkt. No. 9 at 85-100.)

Furthermore, even if Petitioner's attorney did advise him to plead guilty, Petitioner has failed to establish that his attorney's representation fell below an objective standard of reasonableness, *see Strickland*, 466 U.S. at 687-88, because, among other things, under the circumstances, the plea bargain was quite favorable to Petitioner. At the time Petitioner entered

his guilty plea, there was a paternity test revealing him as the father of V.C.'s baby, a pending indictment against him on another sex crime, and still another sex crime case against him in the pipeline. (Dkt. No. 9 at 82.) The prosecution agreed to dismiss and discontinue those two cases in exchange for the plea agreement. *Id*. at 82, 84. In addition, the prosecution agreed to forego a persistent felony petition, which was significant in that persistent felony status would make Petitioner eligible for a life sentence if he were convicted under any count of the indictment. *Id*. at 84. *See Belle v. Superintendent*, No. 9:11-CV-0657 (NAM), 2013 WL 992663, at *13, 2013 U.S. Dist. LEXIS 34481, at *36-37 (N.D.N.Y. Mar. 13, 2013) (the highly favorable outcome as a result of the plea agreement was found to belie petitioner's ineffective assistance claims).

Furthermore, given that the paternity test found admissible by the state court established that Petitioner was the father of the child V.C. had at the age of fourteen (Dkt. No. 10-1 at 107), an acquittal on the statutory rape charge under Penal Law § 130.30 would have been at best highly unlikely. There is nothing in the State court record suggesting "a reasonable possibility that but for counsel's errors the outcome would have been different *i.e.*, the accused would not have pled guilty and would likely have been acquitted at trial, or would have received a significantly more favorable sentence." *Belle*, 2013 WL 992663, at *13 (citing *Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985)). Therefore, Petitioner has made no showing that he was prejudiced by the legal representation given him by his attorney with regard to his guilty plea and waiver of his right to appeal, and the Court finds that there is no merit to his ineffective assistance claim.

### B.     Petitioner's Fourth Amendment Search and Seizure Claim

Petitioner claims that the buccal DNA sample that led to the determination that he was the father of V.C.'s baby was taken after he had been locked in a room at the state trooper's

26

barracks and stripped of his personal belongings, and before he was given his *Miranda* rights, in

violation of his Fourth Amendment right against unreasonable search and seizure.  (Dkt. No. 1 at

5.)  Respondent contends that the claim is unexhausted and procedurally barred, and that even if

it were not, Petitioner is precluded from raising independent claims relating to the deprivation of

constitutional rights that occurred prior to the guilty plea.  (Dkt. No. 8-1 at 23.)

       1.     <u>The Fourth Amendment Claim is Unexhausted and Procedurally Defaulted</u>

To satisfy the requirement that state remedies be exhausted before a petitioner can seek

federal habeas corpus relief, a petitioner must have presented the substance of the federal claim

to the highest court in the state.  *Aparicio v. Artuz*, 269 F.3d 78, 89-90 (2d Cir. 2001).  Petitioner

did not raise a Fourth Amendment unreasonable search and seizure claim on his direct appeal to

the Appellate Division in either his counseled or pro se briefs.  (Dkt. Nos. 9-1, 9-2.)   Nor did he

do so in his application for leave to appeal to the New York Court of Appeals.  (Dkt. No. 9-5.)

Therefore, the Court finds that the claim is unexhausted.

When the petitioner has "failed to exhaust state remedies and the court to which the

petitioner would be required to present his claims in order to meet the exhaustion requirement

would now find the claims procedurally barred," federal habeas courts must deem the claims

procedurally defaulted.  *Aparicio*, 269 F.3d at 90 (quoting *Coleman*, 501 U.S. at 735 n.1).  Under

New York law, a petitioner is entitled to only one direct appeal to the Appellate Division and one

request for leave to appeal to the Court of Appeals, both of which Petitioner pursued in this case.

*Id.* at 91; N.Y. CPL § 450.10(1).  New York does not permit collateral attacks on a conviction

when a petitioner has unjustifiably failed to raise the issue on direct appeal.  *Id.*; N.Y. CPL §

440.10(2)(c).  Petitioner has presented no justification for failing to raise his record based

unreasonable search and seizure claim on direct appeal.  Because "it is clear that [Petitioner's] unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile," *Aparicio*, 269 F.3d at 90, the Court finds that it is procedurally defaulted.

Petitioner's procedural default can be cured only by a showing of cause for the default plus prejudice, or a showing of actual innocence.  *Coleman*, 501 U.S. at 735.  Petitioner has failed to show either.  Therefore, the Court concludes that Petitioner's Fourth Amendment claim is unexhausted and procedurally defaulted.

## 2.     Petitioner's Fourth Amendment Claim is Not Cognizable on Appeal

In *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), the Supreme Court held that as a general rule, a defendant who pleads guilty to a charged offense "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  However, an exception to the rule has been recognized by the Supreme Court where a state permits appeal of a pre-appeal constitutional ruling. *See Lefkowitz v. Newsome*, 420 U.S. 283, 293 (1975) ("[W]hen state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding.").

Pursuant to CPL § 710.70(2), a criminal defendant may appeal an adverse decision on a pretrial motion to suppress evidence, despite conviction upon a guilty plea.  "Accordingly, in New York, a guilty plea does not bar habeas review of constitutional claims arising from an illegal search provided the search was contested in state court." *Belle,* 2013 WL 992663, at * 8. Because Petitioner sought to suppress the test results on the buccal DNA sample gained from the

allegedly unconstitutional search and seizure (Dkt. No. 9 at 1-109), his guilty plea does not waive his right to challenge the admissibility of the evidence through a habeas petition. *Id*.

Nonetheless, review of Petitioner's Fourth Amendment claim is precluded pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), in which the Supreme Court held that federal habeas review is unavailable for Fourth Amendment claims where the state has provided a full and fair opportunity to litigate such a claim. It is well settled that New York provides an adequate corrective procedure for Fourth Amendment claims, *see, e.g.*, *Capellan v. Riley*, 975 F.2d 67, 70 n.1 (2d Cir. 1992) (citations and internal quotation marks omitted), and Petitioner does not dispute that he had the opportunity to litigate his Fourth Amendment claims in the state court proceeding. Therefore, the Court finds that federal habeas relief is unavailable on Petitioner's Fourth Amendment claim.

### C. Petitioner's Constitutional Right to a Speedy Trial

Petitioner claims that he was denied his Sixth Amendment right to a speedy trial. (Dkt. No. 1 at 6.) Petitioner was arrested on October 6, 2006, and remained incarcerated until his guilty plea on June 3, 2008.[6] (Dkt. No. 10 at 35.) As of the date of his speedy trial motion in state court on March 28, 2008, Petitioner had been in custody awaiting trial for over 560 days, or approximately eighteen months. (Dkt. No. 9-1 at 11.) On his direct appeal to the Appellate Division, Petitioner argued in both his counseled and pro se briefs that he was denied his Sixth Amendment constitutional right to a speedy trial. (Dkt. Nos. 9-1 at 10-16; 9-2 at 22-28.) The

---

[6] Plaintiff has not raised a claim that he was denied his statutory right to a speedy trial under CPL § 30.30 in this proceeding.

Appellate Division found that Petitioner's constitutional claim survived his guilty plea and waiver of appeal but rejected it on appeal. *See Irvis*, 935 N.Y.S.2d at 373.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ." U.S. Const. Amend. VI. In *Barker v. Wingo*, 407 U.S. 514, 521 (1972), the Supreme Court made clear that:

> [T]he right to a speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied. We cannot definitively say how long is too long in a system where justice is supposed to be swift but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial.

*See also Vermont v. Brillion*, 556 U.S. 81, 89-90 (2009) (the right contained within the Speedy Trial Clause is "amorphous," "slippery," and "necessarily relative"). The Sixth Amendment proscribes no maximum or minimum amount of time in which a case must be brought to trial, but rather requires a "functional analysis of the right in the particular context." *Barker*, 407 U.S. at 522.

In *Barker*, the Supreme Court identified four factors that a court should consider in passing on a petitioner's claims that pretrial delays in state court denied him his Sixth Amendment right to a speedy trial: "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530. With respect to the first *Barker* factor, both the Supreme Court and Second Circuit have found that no speedy trial violation occurred in cases involving delays nearly as long and significantly longer than that in this case. *See, e.g., Barker*, 407 U.S. at 533-34 (over five years); *Flowers v. Warden, Connecticut Corr. Inst., Somers*, 853 F.2d 131, 133 (2d Cir. 1988) ("As to the first factor, length

of the delay, we note first that the 17-month delay here, while lengthy, is nevertheless considerably shorter than those in other cases where we have found no speedy trial violation.") (citing, *inter alia*, *United States v. McGrath*, 622 F.2d 36 (2d Cir. 1980) (24 months); *United States v. Lane*, 561 F.2d 1075 (2d Cir. 1977) (58 months); *United States v. Cyphers*, 556 F.2d 630 (2d Cir. 1977) (33 months); *United States v. Lasker*, 481 F.2d 229 (2d Cir. 1973) (2 years)).

On Petitioner's direct appeal, the Appellate Division, quoting *People v. McCorkle*, 890 N.Y.S.2d 665 (3d Dep't 2009), identified the factors to be considered in evaluating his Sixth Amendment right to a speedy trial claim as "length of delay, reason for the delay, nature of the charges, extent of pretrial incarceration and any impairment to the defense caused by the delay."[7] *Irvis,* 935 N.Y.S.2d at 373. The Appellate Division found that Petitioner had been in custody for approximately eighteen months, which was significantly less time than in many of the Second Circuit cases cited in *Flowers* in which no Sixth Amendment violation was found. *Id.*

With regard to the second *Barker* factor, the Supreme Court has stated that "[c]losely related to length of delay is the reason the government assigns to justify the delay," and that a deliberate delay in order to hamper the defense should be weighed heavily against the prosecutor. *Barker*, 407 U.S. at 531. The Court finds no evidence in the state court record that the prosecution intentionally delayed the trial to hamper Petitioner's defense. The Appellate Division specifically attributed the delay to the filing of other charges against Petitioner while he

---

[7] Although the factors considered by the Appellate Division in *Irvis* differed slightly from those articulated in *Barker*, the issue before the state court in *McCorkle* was the defendant's Sixth Amendment right to a speedy trial, and the Court finds that the factors identified in *McCorkle* are sufficiently close to the *Barker* factors.

was in custody alleging that he had sex with another underage victim, and Petitioner's request, which was ultimately granted, for appointment of a special prosecutor. *Id*.

The Appellate Division also considered Petitioner's claim that his defense was prejudiced by the delay in that it deprived him of the availability of a potential alibi witness, who had been murdered during the time he awaited trial, (Dkt. No. 9-1 at 12.), Citing CPL § 250.20, the Appellate Division noted that Petitioner had not ever filed a statement notifying the County Court or District Attorney of his alibi defense and, as a result, may well not have been allowed to assert the defense at trial in any event.[8] *Irvis*, 935 N.Y.S.2d at 373. The Appellate Division concluded that while delays like that encountered in Petitioner's case should, if possible, be avoided, the delay did not in Petitioner's case serve to deprive him of his constitutional right to a speedy trial.[9]

In light of the foregoing, the Court finds that the Appellate Division's determination that Petitioner's Eighth Amendment right to a speedy trial had not been violated was neither contrary

---

[8] The state court records shows that the prosecution served a Demand for Notice of Alibi on Petitioner. (Dkt. No. 10-1 at 58.) Given V.C.'s age and the finding of paternity, it is unlikely that an alibi witness could have been of much assistance in Petitioner's defense on the statutory rape charge in any event.

[9] The Appellate Division did not consider the time it took Petitioner to assert his right to a speedy trial, one of the *Barker* factors, in finding that his constitutional right to a speedy trial had been violated. However, because Petitioner did not bring a speedy trial motion until March 28, 2008, consideration of the factor would not likely have led to a different conclusion on the Petitioner's speedy trial claim on the direct appeal. While the Supreme Court found in *Barker* that a defendant's assertion of his speedy trial right was entitled to "strong evidentiary weight in determining whether the defendant is begin deprived of the right" to a speedy trial, *Barker*, 407 U.S. at 528, the Court acknowledged that the failure to assert the right could be strong evidence to the contrary. *Id*. at 532. In this case, Petitioner waited nearly eighteen months before bringing a speedy trial motion.

to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

**D.     Petitioner's Remaining Claims are Barred By his Guilty Plea**

It is well settled that a guilty plea represents a "break in the chain of events which has preceded it in the criminal process," and a defendant "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Tollett*, 411 U.S. at 267; *see also McGrail v. Superintendent, Collins Corr. Facility*, No. Civ. No. 9:08-CV-111 (GLS/RFT), 2011 WL 7090716, at * 9, 2011 U.S. Dist. LEXIS 152191, at * 31 (N.D.N.Y. Nov. 14 2011) ("[I]t is well-settled that a defendant's properly counseled and entered plea of guilty admits all of the elements of a formal criminal charge and waives a multitude of federal constitutional rights) (citing *Tollett*, 411 U.S. at 267). The Court has concluded herein that Petitioner's guilty plea is valid. Consequently, the Court also finds that under *Tollett*, Petitioner is precluded from obtaining habeas relief on claims arising out of matters that occurred prior to the plea.

1.     <u>Ineffective Assistance of Counsel Prior to Petitioner's Guilty Plea</u>

Petitioner claims that his originally assigned counsel denied him effective assistance of counsel by: (1) continuing to represent him following Petitioner's request on or about October 10, 2006, for assignment of new counsel on conflict of interest grounds (denied by the court) and then recusing himself eighteen months later, six days before the originally scheduled date for Petitioner's trial; and (2) ineffectively representing Petitioner from October 10, 2006, until April 8, 2008, by waiving his rights, refusing to file motions on his behalf, and sharing information

with his friends and former colleagues at the District Attorney's Office to help prosecute Petitioner.  (Dkt. No. 1 at 4, 7.)

Petitioner's ineffective assistance of counsel claim survives his guilty plea only to the extent it challenges the voluntariness of his guilty plea and advice he received from counsel in connection with the plea.  *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008); *see also Blackledge*, 417 U.S. at 29-30 (following a guilty plea, a defendant "is limited in a federal habeas corpus proceeding to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases.") (citation and internal quotation marks omitted).  The Court has already concluded that Petitioner's guilty plea was knowing, voluntary, and intelligent, and that he was not deprived of effective assistance of counsel in connection with the guilty plea or waiver of his right to appeal.  The Court now finds that all of Petitioner's other ineffective assistance of counsel claims, which challenge the representation by an attorney who was no longer representing Petitioner at the time of his guilty plea, are foreclosed by that guilty plea.

2.      Claim that District Attorney Was Biased

Petitioner claims that the Greene County District Attorney, who obtained the indictments and prosecuted him until replaced by a Special District Attorney at the District Attorney's request in or about April 2008, was biased against him.  (Dkt. No. 1 at 5.)  Petitioner claims the District Attorney was biased because his brother had an order of protection against Petitioner as a result of threats made by Petitioner.  (Dkt. No. 10-1 at 42.)   Inasmuch as there is no evidence in the state court record that the Greene County District Attorney, who was no longer prosecuting the case at the time of Petitioner's guilty plea, was in a position to, or actually had, any impact on the

voluntary nature of the guilty plea, the Court finds that the claim is foreclosed from habeas review under *Tollett*.

           3.      <u>Claim that the County Court Judge Was Biased</u>

Petitioner claims that County Court Judge Lalor was biased against him because he knew Petitioner personally in that he was a friend of the Judge's sons, one of whom went to prison for selling drugs, and the Judge blamed his son's friendship with Petitioner for the drug matter. (Dkt. No. 1 at 5.) Petitioner also claims that his biological father had been involved in a situation with the Judge years before and gotten away with something in the Judge's eyes. *Id.* According to Petitioner, the Judge had refused to step down in order to conspire with the District Attorney and officers of the court he assigned to represent Petitioner, in order to convict him one last time before he retired. *Id.*

On Plaintiff's direct appeal, the Appellate Division found Petitioner's claim that Judge Lalor was biased to be foreclosed by his appeal waiver and unpreserved. *Irvis*, 935 N.Y.S.2d at 373. It is well-settled in New York that a waiver of appeal provides an independent and adequate procedural bar to habeas relief. *See, e.g., Junior v. Warden*, No. 13-CV-9164 (NSR) (PED), 2015 WL 1931229, at * 2, 2015 U.S. Dist. LEXIS 56286, at * 22-23 (S.D.N.Y. April 28, 2015) (waiver of appeal provided an independent and adequate state procedural bar to habeas relief); *Haynes v. Burge*, No. 05 CV 5997 (RJD), 2015 WL 791457, at * 7 n.11, 2015 U.S. Dist. LEXIS 22655, at * 23 (E.D.N.Y. Feb. 25, 2015) (finding Appellate Division's rejection of challenge to sentence on the ground that defendant's waiver of his right to appeal barred the sentencing challenge was an independent and adequate state law ground barring habeas review).

The Court finds no evidence in the state court record of default and prejudice or a fundamental miscarriage of justice in the application of the state procedural rule with regard to Petitioner's bias claim. The state court record reveals that Judge Lalor clearly explained Petitioner's rights and the implications of his guilty plea during the plea allocution, and there is nothing in the record suggesting that the Judge coerced Petitioner into pleading guilty. Moreover, as previously discussed, the plea agreement was favorable to Petitioner, particularly given the DNA evidence of paternity.

In light of the foregoing, the Court finds that the state procedural bar precludes habeas review of Petitioner's bias claim against Judge Lalor.

4.     <u>Selective and Malicious Prosecution</u>

Petitioner claims that he was singled out for prosecution because he is Black and V.C. is White. (Dkt. No. 1 at 5.) Petitioner did not assert a claim of selective prosecution in either his counseled or pro se brief on his direct appeal (Dkt. Nos. 9-1, 9-2), or in his application for leave to appeal to the Court of Appeals, (Dkt. No. 9-5), leaving the claim unexhausted. The claim appears to be procedurally defaulted since there is no evidence in the state court record suggesting that the selective prosecution claim could not have been raised in the trial court and on the direct appeal or that the record was inadequate to review the claim.

Furthermore, there is no evidence whatsoever in the state court record that supports Petitioner's claim of selective or malicious prosecution based on his race and the race of his

victim.[10]  In fact, the evidence that Petitioner was the father of fourteen year old V.C.'s baby rendered the prosecution for statutory rape virtually inevitable.

In light of the foregoing, the Court finds that the selective prosecution claim is unexhausted, procedurally defaulted, and wholly unsupported by the record.

                5.      Constitutionality of Penal Law § 130.30 (Rape in the Second Degree)

Petitioner claims that Penal Law § 130.30, a statutory rape provision, is unconstitutional, and that he was denied the right to a fair trial because the statute does not allow for mistake of age, and the jury would not have been allowed to hear testimony from V.C., her family, and her friends about lying to Petitioner concerning her age.  (Dkt. No. 1 at 5-6.)

Respondent contends that Petitioner's guilty plea forecloses review of his challenge to the constitutionality of § 130.30.  (Dkt. No. 8-1 at 27-28.)  However, there is case law, including from the Second Circuit, finding that a facial challenge to the constitutionality of a criminal statute is not waived by a guilty plea.  *See United States v. Yousef*, 750 F.3d 254, 259 n.2 (2d Cir. 2014) ("where the prosecution is facially unconstitutional . . . a guilty plea does not waive the constitutional challenge) (citing *Menna v. New York*, 423 U.S. 61, 63 n.2 (1975) (per curiam)); *Mercado v. Rockefeller*, 502 F.2d 666, 672 (2d Cir. 1974) (guilty plea does not bar challenges to the constitutionality of the statute underlying conviction); *Neely v. McDaniel*, 677 F.3d 346, 349 (8th Cir. 2012) ("'[A] plea of guilty to a charge does not waive a claim that   *judged on its face* the charge is one which the State may not constitutionally prosecute.'"), *cert. denied*, 133 S.Ct. 546 (2012) (quoting *United States v. Broce*, 488 U.S. 563, 575 (1989)) (emphasis in original).

---

[10]  Petitioner claims that V.C. had sexual relations with twelve other adults including her father, brother, and cousin.  However, there is no evidence of that in the record and none of those individuals is the established father of V.C.'s child.

Therefore, to the extent Petitioner's constitutional challenge is to the constitutionality of § 130.30 on its face, the Court finds that it is not foreclosed by his guilty plea.[11]

Considering the merits, the Court finds that existing case law does not support Petitioner's due process challenge to Penal Law § 130.30 on the grounds that mistake as to the age of the victim is not a defense.[12]  Section 130.30, a statutory rape crime, provides in relevant part that "A person is guilty of rape in the second degree when: 1. being eighteen years old or more, he or she engages in sexual intercourse with another person less than fifteen years old." Penal Law § 15.20(1) provides in relevant part that "A person is not relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief of fact unless: (a) Such factual mistake negates the culpable state required for the commission of an offense; or (b) The statute defining the offense or a statute related thereto expressly provides that factual mistake constitutes a defense or exemption. . . ." Neither (a) nor (b) applies to § 130.30, which contains no mens rea provision and contains no provision expressly providing that a factual mistake constitutes a defense or exemption.

---

[11]  To the extent the challenge is to the constitutionality of the statute as applied, it is foreclosed by Petitioner's guilty plea.  *See Neely,* 677 F.3d at 349 (court found that petitioner was foreclosed by guilty plea from challenging the constitutionality of the criminal statute as applied to him, although not on its face).

[12]  Petitioner challenged the constitutionality of Penal Law § 130.30 in his pro se brief on direct appeal.  (Dkt. No. 9-2 at 29-33.)  The Appellate Division did not discuss the claim and presumably intended that it be covered in the statement that "[d]efendant's remaining contentions have been reviewed and found to be without merit." *Irvis*, 935 N.Y.S.2d 374.  Inasmuch as Petitioner did not include a constitutional challenge to the statute in his application for leave to appeal to the Court of Appeals, the claim is unexhausted and procedurally defaulted.  *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam) (in order to exhaust state remedies, a petitioner is required to fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review) thereby alerting that court to the federal nature of the claim.)  The Court has nonetheless considered the merits.

In *People v. Dozier*, 424 N.Y.S.2d 1010 (1st Dep't 1980), the defendant challenged the constitutionality of Penal Law § 130.25, another New York statutory rape provision, on due process grounds because it did not allow ignorance, fraud, or mistake as a defense. In rejecting the defendant's due process challenge, the Appellate Division wrote: "We find that the statute serves a significant state interest in that it protects a certain class of minors from any adverse consequence of sexual intercourse, even if consensual. Following long-settled principles, we also find no constitutional prohibition against imposing criminal liability for conduct in which Mens rea is not an element of the offense." *Id*. at 1011.

The *Dozier* decision finds support in *Morissette v. United States*, 342 U.S. 246, 251 n.8 (1952), in which the Supreme Court, albeit in dicta, noted that the recognized exception to the general mens rea requirement in the case of "public welfare offenses" included "sex offenses such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached the age of consent."[13] *See also United States v. Robinson*, 702 F.3d 22, 32-33 (2d Cir. 2012) (in child sex trafficking case court found that presumption that criminal statutes are generally intended to include mens rea requirements does not apply to sex crimes against minors) (citing *Morissette*, 342 U.S. at 251 n.8); *United States v. Brooks*, 841 F.2d 268, 269-70 (9th Cir. 1988) (rejecting claim that failure to include a mistake of age defense in a statutory rape statute rendered the statute unconstitutional by denying defendant due process).

In light of the foregoing, the Court finds that even if Petitioner's claim is not found to be unexhausted and procedurally defaulted, it should be denied on the merits.

---

[13] Criminal statutes are generally construed to include mens rea requirements. *See Staples v. United States*, 511 U.S. 600, 605-06 (1994).

6. <u>Denial of Due Process as a Result of the Timing of the Suppression Hearing</u>

Petitioner claims that his Fourteenth Amendment right to due process was violated when he was forced to attend a suppression hearing prior to the time the County Court received and inspected the grand jury minutes and ruled on his CPL § 210.30 motion to inspect the grand jury minutes and dismiss the indictment. (Dkt. Nos. 1 at 6; 10 at 3-4.) Petitioner also claims that he testified at a 2008 grand jury that he thought was for a separate case but was actually for the original one, and he was instantly indicted after knowing three grand jurors personally and being asked questions about his tattoos. (Dkt. No. 1 at 6.) In addition, Petitioner claims that he was arraigned on a sealed indictment, which was impossible since it was no longer secret by virtue of his having testified. *Id.*

The Court finds that habeas review of Petitioner's due process claims is foreclosed under *Tollett* in that the alleged constitutional violations all occurred prior to the entry of his guilty plea.

## VI. CONCLUSION

Based upon the foregoing, the Court recommends that Petitioner's Petition for a writ of habeas corpus (Dkt. No. 1) be denied and dismissed.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED**. The Court finds that Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) (2006) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209

40

F.3d 107, 112 (2d Cir. 2000). Therefore, the Court recommends that no certificate of appealability issue with respect to any of Petitioner's claims; and it is hereby

**ORDERED**, that the Clerk's Office provide Petitioner with copies of all unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated: October 13, 2015
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2013 WL 992663
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Isiah BELLE, Petitioner,

v.

SUPERINTENDENT, Respondent.

No. 9:11–CV–0657 (NAM).   |   March 13, 2013.

**Attorneys and Law Firms**

Isiah Belle, Schenectady, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney
General, Paul M. Tarr, Esq., Ass't Attorney General, of
Counsel, New York, NY, for Respondent.

**DECISION AND ORDER**

NORMAN A. MORDUE, District Judge.

**I. INTRODUCTION**

 *1  Petitioner Isiah Belle has filed a petition for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254, in which he
challenges a 2008 judgment of conviction in Schenectady
County Court, following his guilty plea, of second degree
criminal possession of a weapon and several related charges.
Dkt. No. 1, Petition ("Pet.") at 1.[1] Respondent has filed
a response to the petition, a memorandum of law, and the
relevant state court records. Dkt. No. 6, Response; Dkt. No.
7, Respondent's Memorandum of Law ("Resp't Mem."); Dkt.
No. 8, State Court Records. Petitioner has answered. Dkt. No.
11, Traverse. For the reasons that follow, the petition is denied
and dismissed.[2]

**II. BACKGROUND**

**A. The Crime and Arrest**

The Appellate Division, Third Department, concisely
summarized the facts underlying petitioner's criminal offense
as follows:

In August 2007, at around 3:00 a.m., police received a
telephone call reporting that shots had been fired in the
vicinity of Hulett Street and Lincoln Avenue in the City
of Schenectady, Schenectady County. The caller reported

that the shooter was wearing a blue shirt with white
stripes, light colored shorts and a white hat. When police
arrived at the location a few minutes later, they observed a
man matching the description of the suspect. Upon being
ordered to stop, the man, who was later identified as
[petitioner], fled into a nearby backyard, resulting in a
foot chase. During this pursuit, [petitioner] appeared to
throw something over a fence into a neighboring yard.
Upon tackling [petitioner], police noticed that a baggie
with a white powdery substance had fallen partially out
of the pocket of defendant's pants. The police proceeded
to arrest [petitioner], and found on his person a stun gun
and marihuana. The police then searched the other side
of the fence and recovered a handgun. Back at police
headquarters, [petitioner] made an oral statement to a
detective, "The cocaine was mine, but it was for personal
use."

[Petitioner] was charged with two counts each of criminal
possession of a weapon in the second degree and third
degree, two counts of criminal possession of a controlled
substance in the third degree, and one count each of
resisting arrest and unlawful possession of marihuana.
After a *Huntley* hearing, [petitioner's] motion to suppress
the oral statement made at police headquarters was denied.
After *Mapp/Dunaway* hearings, [petitioner's] motion to
suppress all evidence obtained by police was denied.

While no plea offers were made by the People, on the
date of trial, County Court, over the People's objection,
indicated to [petitioner] that, upon a plea of guilty to
the entire indictment, it would sentence [petitioner] to
a six-year prison term with four years of postrelease
supervision. [Petitioner] consulted with counsel and then
elected to plead guilty to all charges contained in the
indictment. As part of his plea, [petitioner] waived his right
to appeal, preserving his right to appeal the suppression
rulings. Sentencing was adjourned three times to provide
[petitioner] with time to review certain evidence, to obtain
a second opinion from a second assigned counsel and to
decide whether to make a motion to withdraw his plea.
After electing not to move to withdraw his plea, [petitioner]
was sentenced to an aggregate prison term of five years
with four years of postrelease supervision.

 *2  *People v. Belle,* 74 A.D.3d 1477, 1478–79 (3d Dep't
2010).

## B. Petitioner's Appeal and Collateral Attacks on the Verdict

On May 20, 2009, petitioner filed a motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10, in which he raised the following grounds: (1) the police lacked probable cause to stop and search him; (2) the police did not possess accurate information to justify a warrantless search and seizure; (3) the prosecution never established constructive possession of a firearm; (4) the police officers' testimony before the grand jury was conflicting and false; (5) the prosecution fraudulently breach the terms of a negotiated agreement, causing him to be sentenced to a Class B felony; (6) the trial court violated double jeopardy by denying him a downward departure in his charges; and (7) ineffective assistance of trial counsel. Dkt. No. 8, Ex. H, Motion to Vacate the Judgment at 3–16.

On July 17, 2009, the trial court denied petitioner's motion in its entirety. Dkt. No. 8, Ex. K, Decision and Order. With regard to petitioner's claims that the police lacked probable cause and the prosecution presented false evidence to the grand jury, the court found that these issues had already been determined on the merits in a prior proceeding. *Id.* at 2–3 (citing N.Y. Crim. Proc. Law § 440 .10(3)(b)). Turning to the alleged breach of the plea agreement, the court found that petitioner clearly understood the terms of the plea agreement and voluntarily pled guilty to each count in the indictment. *Id.* at 3. Thus, the court continued, there is no support for the contention that the trial court improperly sentenced him to a Class B felony. *Id.* In rejecting petitioner's ineffective assistance of counsel claim, the court noted that petitioner's counsel filed pre-trial motions, fully explained to petitioner the consequences of pleading guilty, and negotiated an advantageous plea agreement. *Id.* Accordingly, under the totality of the circumstances, petitioner received effective assistance. *Id.* at 4–5. The court denied petitioner's double jeopardy claim because he failed to set forth any evidence that he was punished for the same crime twice. *Id.* at 4. Finally, the court dismissed petitioner's remaining claims as meritless. *Id.* at 5.

Petitioner moved for leave to appeal to the Appellate Division, Third Department, who denied his request in a summary order. Dkt. No. 8, Ex. N, Appellate Division Order Denying Leave.

In July 2009, petitioner, represented by counsel, filed a direct appeal with the Appellate Division raising three claims: (1) his guilty plea was involuntary because of pressure from counsel and the extensive jail time he faced if the case proceeded to trial; (2) his sentence was harsh and excessive; and (3) ineffective assistance of trial counsel. Dkt. No. 8, Ex. A, Appellant's Br. at 3. With regard to the ineffective assistance claim, petitioner specifically argued that counsel: (a) failed to meet with him before the guilty plea; (b) failed to file appropriate pre-trial motions; (c) pressured him into entering a guilty plea and waiving his appellate rights; and (d) failed to secure cooperation from the district attorney in a related case involving his son. *Id.* at 19–23.

**\*3** Apparently unsatisfied with appellate counsel's choice of issues, petitioner also filed a pro se supplemental brief, arguing (1) the police apprehended and searched petitioner without probable cause; (2) the police lacked sufficient information to justify a warrantless search and seizure; (3) the prosecution breached their plea agreement; and (4) the prosecution presented false testimony at the grand jury proceedings and at the *Mapp/Dunaway* hearing. Dkt. No. 8, Ex. C, Appellant's Supplemental Br. at 1.

On June 10, 2010, the Appellate Division unanimously affirmed the conviction. *Belle,* 74 A.D.3d at 1478–80. First, the court ruled that by failing to withdraw his guilty plea or vacate the judgment, petitioner failed to preserve his claim that the plea was involuntary. *Id.* at 1479. In any event, the court also concluded that his plea and appeal waiver were knowing, voluntary, and intelligent. *Id.* Next, the court concluded that the police had reasonable suspicion to believe that a crime had been committed, which justified the pursuit and subsequent detention of petitioner. *Id.* Accordingly, the evidence gained from petitioenr was not subject to suppression and provided probable cause for the arrest. *Id.* at 1480.

Turning to petitioner's ineffective assistance claim, the court held that his appeal waiver precluded review of this argument outside of any contention that counsel's improper advice impacted the plea. *Belle,* 74 A.D.3d at 1480. To the extent petitioner's ineffective assistance claim survived the appeal waiver, the court concluded that it was unpreserved due to his failure to move to withdraw the plea or vacate the judgment. *Id.* The court also found petitioner's allegations of prosecutorial misconduct unpreserved for review, and his sentencing claim barred on account of the appeal waiver. *Id.* Finally, the court found petitioner's remaining claims "to be without merit." *Id.*

On July 6, 2010, petitioner sought leave to appeal to the New York Court of Appeals, raising the claims set forth in his counseled brief. Dkt. No. 8, Ex. E, Letter Requesting Leave to Appeal. The Court of Appeals denied petitioner's request. Dkt. No. 8, Ex. G, Certificate Denying Leave.

**C. The Petition**

Petitioner then timely filed this action, which raises the following grounds for habeas relief: (1) his guilty plea was not knowingly and voluntarily entered; (2) the trial court's sentence violated his double jeopardy rights; (3) he was improperly forced to waive his appellate rights; (4) the indictment was obtained through false evidence, obstruction of justice, and a coerced confession; (5) the conviction was supported by an invalid search and seizure; (6) ineffective assistance of trial counsel; and (7) ineffective assistance of appellate counsel. Pet. at 4–5, 13, 20–21, 24–25, 28, 36, 67–68.

**III. DISCUSSION**

**A. Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) was based on an unreasonable determination of the facts in light of the evidence presented. *Cullen v. Pinholster,* ––– U.S. ––––, 131 S.Ct. 1388, 1398–1400 (2011) (citing 28 U.S.C. §§ 2254(d)(1), (2)); *Premo v. Moore,* ––– U.S. ––––, 131 S.Ct. 733, 739 (2011); *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007). AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson,* ––– U.S. ––––, 131 S.Ct. 1305, 1307 (2011) (per curiam) (citation omitted). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro,* 550 U.S. at 473.

**\*4** When evaluating whether a state court decision is "contrary to" Supreme Court law, the habeas court must consider whether the decision under review "applies a rule that contradicts the governing law" or "confronts a set of facts that are materially indistinguishable" from precedent and

nonetheless arrives at a different result. *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (citation omitted). The Supreme Court has explained that "clearly established [f]ederal law" refers to the Supreme Court's holdings as of the time of the relevant state court decision. *See Williams v. Taylor,* 529 U.S. 362, 412 (2000).

A decision involves an "unreasonable application" of Supreme Court precedent when the state court either "identifies the correct governing legal rule" but "unreasonably applies it to the facts" of the case, or "unreasonably extends a legal principle ... to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002).

Moreover, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004); *see also Cullen,* 131 S.Ct. at 1400 ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."). Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with " "clear and convincing evidence." " *Schriro,* 550 U.S. at 473–74 (quoting § 2254(e)(1)).

Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo.' " *Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir.2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir.2006)).

**B. Petitioner's Guilty Plea**

Petitioner appears to argue, as he did on direct appeal, that his guilty plea is invalid because it was not knowingly and voluntarily entered. Pet. at 4, 20, 28–29. According to petitioner, defense counsel forced him to plead guilty by, among other things, commenting that he would surely lose if the case went to trial. Pet. at 24, 67. Petitioner also suggests

that his guilty plea was involuntary because it was a "take it or leave it" deal offered by the trial court. Pet. at 20. As discussed below, this claim is procedurally barred, and in any event, meritless.

**\*5** A federal court will not ordinarily review a federal claim presented in a habeas petition if it has been rejected by the state courts on an "independent and adequate" state law ground. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Murden v. Artuz,* 497 F.3d 178, 194 (2d Cir.2007); *see also Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.").

In its decision, the Appellate Division dismissed petitioner's claim attacking the validity of his guilty plea on state law preservation grounds. *Belle,* 74 A.D.3d at 1479. The court specifically held that "by failing to move to withdraw his plea or vacate the judgment of conviction, defendant failed to preserve his claim that his plea was involuntary."*Id.* It is well settled in this Circuit that this preservation rule provides an adequate and independent state ground on which to deny habeas relief, and this Court agrees with the analysis contained in these decisions. *See, e.g., Hunter v. McLaughlin,* No. 1:04–CV–4058, 2008 WL 482848, at \*1–4 (S.D.N.Y. Feb. 21, 2008); *Shanks v. Greiner,* No. 1:01–CV–1362, 2001 WL 1568815, at \*3–4 (S.D.N.Y. Dec. 10, 2001). Because the Appellate Division rejected this claim on independent and adequate state procedural grounds, federal review is barred unless petitioner establishes cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will result from the Court's failure to review the claim. *See Coleman,* 501 U.S. at 750.

Petitioner has failed to establish either of these mitigating factors in this case. Even if petitioner could demonstrate cause, which does not appear from the record, he cannot show prejudice insofar as this claim is meritless. *See infra* at 11–12; *Pettigrew v. Bezio,* No 1:10–CV–1053, 2012 WL 1714934, at \*4 (W.D .N.Y. May 15, 2012) (concluding that a petitioner cannot show actual prejudice where the underlying defaulted claim is meritless); *see also Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985) (noting that federal habeas relief is unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated).

Moreover, for purposes of the miscarriage of justice exception, petitioner has made no showing that he is "actually innocent." *Murray v. Carrier,* 477 U.S. 478, 496 (1986) (noting that the miscarriage of justice exception extends to cases of "actual innocence," that is, when a constitutional violation "has probably resulted in the conviction of one who is actually innocent [of the offense of which he has been convicted]"). The Supreme Court "has made clear that the concept of actual innocence is distinct from the concept of legal innocence."*Poindexter v. Nash,* 333 F.3d 372, 380 (2d Cir.2003). Actual innocence means that the petitioner "in fact [did] not commit[ ] the crimes on which the calculation or imposition of [his] sentence was based."*Poindexter, 333 F.3d at 381.* A petitioner whose "argument is a technical one" does not raise "a claim of 'actual innocence' as that term is used ... in habeas jurisprudence generally."*Poindexter, 333 F.3d at 380.* Here, petitioner raises several technical arguments contesting his conviction. For instance, he asserts that his conviction is the result of an invalid search and seizure. Pet. at 28. Petitioner does not, however, proffer any evidence that he is actually innocent of the acts on which his sentence is based. *See Williams v. Brown,* No. 1:08–CV–10044, 2010 WL 850182, at \*3 (S.D.N.Y. Mar. 11, 2010) (rejecting actual innocence claim where "[t]he evidence adduced by [the petitioner] in his petition solely concerns certain alleged procedural irregularities ... none of which casts any doubt on [the petitioner's] underlying guilt").

**\*6** Accordingly, petitioner's claim contesting the validity of his guilty plea is procedurally barred and is dismissed on that basis.

Even reaching the merits, however, petitioner cannot prevail. In order to comply with the requirements of due process, a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant."*North Carolina v. Alford,* 400 U.S. 25, 31 (1970). The Second Circuit has summarized the relevant factors as follows:

> [A] plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's

sheer inability to weigh his options rationally.

*Miller v. Angliker,* 848 F.2d 1312, 1320 (2d Cir.1988). Importantly, statements made by a defendant at a plea hearing constitute a "formidable barrier" that cannot be easily overcome in subsequent collateral proceedings because "[s]olemn declarations in open court carry a strong presumption of verity."*Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977).

At the plea hearing in this case, the court promised petitioner a six-year sentence in exchange for his plea of guilty to the entire indictment. Dkt. No. 8, Plea Transcript, April 7, 2008 ("Plea Tr.") at 2. After counsel indicated that petitioner wished to accept the offer, petitioner was sworn in and stated that he had a clear mind, was free from drugs, and understood the plea offer. *Id.* at 2, 5–9, 22.Petitioner affirmed that he had consulted with his lawyer about the case and that he understood the nature of the charges, the possible sentence, and the rights he was waiving. *Id.* The court then explained to petitioner that he would have to waive his right to appeal as a condition of the plea agreement, which petitioner agreed to do after the waiver was amended to permit the appeal of suppression issues. *Id.* at 9–22.Petitioner then reaffirmed that his plea to the entire indictment was voluntary. *Id.*

Petitioner has offered only conclusory allegations as proof that his plea was invalid. *See* Pet. at 20, 24, 27. Not only are these allegations insufficient to disturb the plea, *see Blackledge,* 431 U.S. at 73–74, they are directly contradicted by petitioner's sworn allocution discussed above. *See United States v.. Davis,* 48 F. App'x 809, 811–12 (2d Cir.2002) ("During his plea allocution, [defendant] admitted his guilt under oath and in his own words, and stated that his plea was free and voluntary, that no threats or untoward promises had been made to induce his plea, and that he was satisfied with the advice of counsel .... Although since his guilty plea [defendant] has consistently protested his innocence of the charges [and claims his counsel coerced him to plead guilty], a claim of innocence [and coercion by counsel] is not a basis for withdrawing a guilty plea unless supported by evidence.").

**\*7** Moreover, defense counsel's alleged statement that petitioner would lose if he went to trial does not render the resulting plea involuntary. *See Lightfoot v. Smith,* No. 1:05–CV–0444, 2008 WL 515051, at \*9 (S.D.N.Y. Feb. 25, 2008) (noting that truthful advice regarding the strength of the prosecution's case and the advisability of accepting a plea bargain does not constitute coercion). Nor does it matter

that the court offered petitioner a "take it or leave it" plea bargain. *See Izaguirre v. Lee,* 856 F.Supp.2d 551, 568–69 (E.D.N.Y.2012) (noting that under New York law trial judges are permitted to participate in plea negotiations with criminal defendants and there is no element of impropriety as long as the accused is free to accept of reject the offer). In sum, petitioner has provided no basis to refute the validity of his guilty plea.

### C. Effect of Petitioner's Guilty Plea

It is well settled that a guilty plea represents a "break in the chain of events which has preceded it in the criminal process," and a defendant "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."*Tollett v. Henderson,* 411 U.S. 258, 267 (1973).

The Court has concluded that petitioner's guilty plea is valid. *See supra* Section III(B). Consequently, petitioner is precluded from obtaining habeas relief on claims arising out of matters that occurred prior to the plea.*Tollett,* 411 U.S. at 267. Therefore, petitioner's claim that the indictment was obtained through false evidence, obstruction of justice, and a coerced confession must be denied. *See Crispino v. Allard,* 378 F.Supp.2d 393, 414 (S.D.N.Y.2005) ("[I]f [petitioner] entered a voluntary, knowing, and intelligent guilty plea, any and all non jurisdictional defects raised in the indictment are waived."). [3]

Additionally, petitioner's ineffective assistance of counsel claim only survives to the extent it challenges the voluntariness of the plea and the advice petitioner received from counsel. *Parisi v. United States,* 529 F.3d 134, 138 (2d Cir.2008); *see also Blackledge,* 417 U.S. at 29–30 (following a guilty plea, a defendant "is limited in a federal habeas corpus proceeding to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases"). To the extent petitioner contends that he received ineffective assistance outside of this scope, his claims are denied. *See Garver v. Superintendent Oneida Corr. Facility,* No. 6:10–CV–6142, 2011 WL 3236386, at \*3 (W.D.N.Y. July 28, 2011) (finding petitioner's ineffective assistance claim barred from habeas review where said claim alleged that counsel committed errors related to Fourth Amendment issues and did not relate to the voluntariness of the plea itself).

Petitioner's surviving claims are discussed below.

### D. Fourth Amendment Claim

**\*8** Petitioner alleges that his Fourth Amendment rights were violated because the police apprehended and searched him without probable cause. Pet. at 5, 27–28, 36, 47. According to petitioner, his conviction was supported by evidence from this illegal search and seizure. *Id.*

Respondent urges the Court to bar this claim as a result of petitioner's guilty plea. Resp't Mem. at 27. According to respondent, petitioner's Fourth Amendment claim is "unrelated to the voluntariness of his guilty plea" and is "therefore waived." *Id.* (citing *Tollett,* 411 U.S. at 267). This argument is unpersuasive.

In general, a defendant who pleads guilty to a charged offense "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."*Tollett,* 411 U.S. at 267. However, a relevant exception to this rule has been recognized: where a state permits appeal of a pre-plea constitutional ruling, federal courts will address such claims on habeas review notwithstanding the guilty plea. *Lefkowitz v. Newsome,* 420 U.S. 283, 293 (1975) ("[W]hen state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding."). Pursuant to New York Criminal Procedure Law § 710.70(2), a criminal defendant may appeal an adverse decision on a pretrial motion to suppress evidence, despite conviction upon a guilty plea. Accordingly, in New York, a guilty plea does not bar habeas review of constitutional claims arising from an illegal search provided the search was contested in state court. *Lugo v. Artus,* No. 1:05–CV–1998, 2008 WL 312298, at \*2–4 (S.D.N.Y. Jan. 31, 2008). Given petitioner unsuccessfully sought to suppress the evidence gained from his search and seizure, the guilty plea does not waive his right to challenge the admissibility of that evidence through a habeas corpus petition. *See, e.g., Perez v. Ercole,* No. 1:09–CV–2180, 2010 WL 2541974, at \*4 n. 3 (S.D.N.Y. June 22, 2010).

Nonetheless, review of petitioner's Fourth Amendment claim is precluded pursuant to *Stone v. Powell,* 428 U.S. 465 (1976). In *Stone,* the Supreme Court held that federal habeas review is unavailable for Fourth Amendment claims where the state has provided a full and fair opportunity to litigate such a claim. *Id.* at 494.It is well settled that New York

provides an adequate corrective procedure for such claims, and petitioner does not dispute that he had the opportunity to litigate his Fourth Amendment claims in state proceedings. *See, e.g., Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992); *Guzman v. Greene,* 425 F.Supp.2d 298, 318 (E.D.N.Y.2006). Accordingly, federal habeas relief is unavailable on this claim and it is dismissed. *See Brown v. New York,* No. 1:08–CV– 0582, 2012 WL 3597361, at \*2 (E.D.N.Y. Aug. 20, 2012).

### E. Appeal Waiver

**\*9** Petitioner argues, as he did on direct appeal, that he was coerced into waiving his appellate rights as part of the guilty plea. Pet. at 24, 67. In dismissing this claim, the Appellate Division concluded that petitioner's appeal waiver complied with New York law because it was knowing, voluntary, and intelligent. *Belle,* 74 A .D.3d at 1479. This decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

It is well settled that appeal waivers set forth in plea agreements are constitutional provided the waiver was knowing, voluntary and intelligent. *See Steele v. Filion,* 377 F.Supp.2d 332, 334–35 (W.D.N.Y.2005) (citations omitted). To be effective, a defendant must be informed of the nature of the right and must evidence a full understanding of the consequences of the waiver. *United States v. Ready,* 82 F.3d 551, 556–57 (2d Cir.1996).

Here, it is clear from the record that the trial court engaged in a thorough colloquy to ensure that petitioner made a knowing, voluntary, and intelligent waiver of his appellate rights. Plea Tr. at 9–22. During the plea proceedings, the court stated that petitioner would have to waive his right to appeal as a condition of the plea agreement. *Id.* at 9. Although petitioner initially protested, he subsequently agreed to the waiver after it was modified to permit the appeal of suppression issues. *Id.* at 14–15.Then, in response to the court's questions, petitioner affirmed that he understood the rights he was waiving. *Id.* at 13–22.The court further verified several times that petitioner understood the terms of the plea agreement and that he had discussed the matter fully with his attorney. *Id.*

While petitioner now contends that he was forced to waive his appellate rights, he has offered no evidence of this alleged coercion outside of conclusory allegations. *See* Pet. at 24, 67; *United States v. Walker,* 411 F.Supp.2d 336, 337 (W.D.N.Y.2006) (holding that a defendant cannot defeat an appeal waiver through conclusory allegations); *see also Harris v. Hulihan,* No. 1:11–CV–3019, 2012 WL 5265624,

at *17 (S.D.N.Y. Aug. 8, 2012) ("[I]t is clear that counsel did not act unreasonably in encouraging petitioner to accept the plea bargain containing a waiver of the right to appeal."). Indeed, petitioner's sentencing was postponed three times so he could consider whether to withdraw the plea and appeal waiver. Further, the court's position that the appeal waiver was required as part of the guilty plea does not render the waiver invalid under federal law. *See Nicholas v. Smith,* No. 1:02–CV–6411, 2007 WL 1213417, at *10 (E.D.N.Y. Apr. 24, 2007).

Accordingly, petitioner has not demonstrated that enforcement of the waiver deprived him of any rights under the federal Constitution. *See Salaam v. Giambruno,* 559 F.Supp.2d 292, 298 (W.D.N.Y.2008) (finding petitioner failed to show that the state court's enforcement of a valid appeal waiver infringed on his constitutional rights). This claim is therefore dismissed.

### F. Double Jeopardy Claim [4]

**\*10** While not entirely clear, it appears that petitioner is arguing that the trial court violated double jeopardy when it sentenced him as a predicate felony offender because the statute of limitations had already expired on his first felony offense. Pet. at 13. Petitioner also appears to argue that his double jeopardy rights were violated when the trial court refused a downward departure in his class B felony charge. *Id.* As set forth below, this claim is procedurally barred and meritless.

It is well settled that a petitioner must exhaust his state court remedies before seeking habeas relief. *See* 28 U.S.C. § 2254(b) (1). [5] This requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.' " *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir.1997) (citation omitted).

Petitioner's double jeopardy claim is unexhausted because he never presented it to the Appellate Division after the trial court rejected his arguments. *See* Dkt. No. 8, Ex. L, Application for Leave to Appeal; *Daye v. Attorney Gen. of N.Y.,* 696 F.2d 186, 190 n. 3 (2d Cir.1982) ("Exhaustion of available state remedies requires presentation of the claim

to the highest state court from which a decision can be had."(citation omitted)); *Deberry v. Spitzer,* No. 1:05–CV–5286, 2011 WL 1239999, at *6 (E.D.N.Y. Feb. 17, 2011) (noting that a claim asserted in a section 440 motion is only fully exhausted once it has been presented to the Appellate Division).

Because petitioner no longer has remedies available to pursue this unexhausted claim, *see Garner v. Superintendent,* No. 9:10–CV–1406 (GTS), 2012 WL 3929944, at *6 (N.D.N.Y. Sept. 10, 2012), it is also procedurally defaulted. *See Bossett v. Walker,* 41 F.3d 825, 828–29 (2d Cir.1994) (noting that if a petitioner has failed to exhaust his state court remedies, and no longer has remedies available to pursue his claims, they are deemed exhausted and are also procedurally defaulted).

Further review of this claim is therefore conditioned upon the Court finding cause and prejudice, or a fundamental miscarriage of justice. *Murden,* 497 F.3d at 194 (noting that a federal court may review a procedurally barred claim only if the petitioner demonstrates either cause for the default and actual prejudice, or a fundamental miscarriage of justice). Petitioner fails to allege, much less prove, that there was cause for his procedural default or that he has suffered prejudice as a result. *See* Pet. at 13. Indeed, petitioner offers no explanation for his failure to properly pursue this claim. *Id.* Moreover, as discussed above, petitioner has clearly failed to show a miscarriage of justice. *See supra* Section III(B). As such, this claim is subject to an unexcused procedural default and is dismissed.

**\*11** Even assuming this claim is not procedurally barred, petitioner's arguments have no support in the record. First, petitioner's contention that he was improperly sentenced as a predicate felony offender has no merit because he was not sentenced as such. *See* Plea Tr. at 6, 7–9. Additionally, no "downward departure" in petitioner's charge is required under these circumstances. *See* N.Y.Crim. Proc. Law §§ 220.10(2), (5)(a)(iii) ("Where the indictment charges any class B felony ... any plea of guilty ... must be or must include *at least* a plea of guilty of a class D felony."(emphasis added)). In any event, petitioner's assertions clearly do not suggest a violation of the Double Jeopardy clause. *See Ramos v. Racette,* No. 1:11–CV–1412, 2012 WL 12924, at *29 (E.D.N.Y. Jan. 4, 2012) ("It does not violate double jeopardy principles for a defendant's sentence to be enhanced for conduct for which the defendant was previously prosecuted, [and] Double Jeopardy protections are inapplicable to classifications under felony offender schemes because the determinations at issue do

not place a defendant in jeopardy for an offense."(citations omitted)).

### G. Ineffective Assistance of Trial Counsel
Petitioner alleges that trial counsel provided ineffective assistance by (a) failing to take action when the prosecution presented false testimony to the grand jury; (b) neglecting to contest fabricated evidence; (c) forcing petitioner to plead guilty and; (d) coercing petitioner to waive his appellate rights as part of the guilty plea. *See* Pet. at 67. As discussed below, these claims provide no basis for habeas relief.

An ineffective assistance of counsel claim survives a guilty plea only where the claim concerns the advice the defendant received from counsel by connecting the knowing and voluntary nature of petitioner's plea decision with the attorney's conduct. *Parisi,* 529 F.3d at 138–39. In other words, a defendant who has pled guilty "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards."*United States v. Coffin,* 76 F.3d 494, 497 (2d Cir.1996) (citation omitted). Therefore, as a result of petitioner's valid guilty plea, *see supra* Section III(B), the aforementioned ineffective assistance claims that relate to pre-plea events—i.e., counsel's failure to contest the false testimony and fabricated evidence—fail to state a violation of constitutional rights that this Court can consider. *See, e.g., Hill v. West,* 599 F.Supp.2d 317, 392–93 (W.D.N.Y.2009) (holding that petitioner's ineffective assistance claims relating to "pre-plea events, such as the failure to investigate potential witnesses, acquisition of discovery material, and his decisions regarding a psychiatric examination" were effectively waived as a result of a valid guilty plea). As such, these claims are dismissed.

Although petitioner's remaining ineffective assistance claims survive the guilty plea, they nonetheless do not entitle petitioner to habeas relief. *See Burnell v. United States,* Nos. 1:09–CV–0497, 1:09–CV–0375 (TJM), 2009 WL 3698386, at *2–6 (N.D.N.Y. Nov. 2, 2009) (noting that claims of improper coercion from defense counsel survive a guilty plea). Petitioner's allegations that counsel forced him to plead guilty and coerced him into waiving his appellate rights are barred under the independent and adequate state grounds doctrine. *Velasquez,* 898 F.2d at 9 ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."). On

direct appeal, the Appellate Division found these claims "unpreserved" given petitioner failed to move to withdraw his plea or vacate the judgment.*Belle,* 74 A.D.3d at 1480. This preservation rule is recognized as a firmly established and regularly followed state procedural rule that precludes habeas review. *See, e.g., Escalante v. Smith,* No. 9:06–CV–1506 (LEK/RFT), 2009 WL 1405440, at *5–6 (N.D.N.Y. May 18, 2009) (concluding that the Appellate Division's ruling that petitioner's claim was unpreserved constituted an independent and adequate state barrier to habeas review).

**\*12** Although the Court is aware that it may excuse petitioner's default, it declines to do so. *See Coleman,* 501 U.S. at 750 (holding that a procedural default may be excused if the petitioner demonstrates cause for the default and actual prejudice, or that the failure to consider the claims will "result in a fundamental miscarriage of justice"). As discussed above, petitioner offers no viable explanation for his failure to move to withdraw his plea or vacate the judgment. *See supra* Section III(B). Further, petitioner has clearly failed to allege a miscarriage of justice. *Id.* Accordingly, these claims are subject to an unexcused procedural default and are dismissed.

Even reaching the merits, however, petitioner cannot prevail. In order to maintain a claim of ineffective assistance of counsel following a guilty plea, a petitioner must show (1) that his attorney's advice to plead guilty was not "within the range of competence demanded of attorneys in criminal cases," and (2) that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."*Hill v. Lockhart,* 474 U.S. 52, 56 (1985); *see also Roe v. Flores–Ortega,* 528 U.S. 470, 485 (2000). Improper coercion from defense counsel to accept a guilty plea can constitute ineffective assistance. *See Davis,* 48 F. App'x at 811–12.

Petitioner, however, has offered nothing except conclusory allegations as proof that his plea and appeal waiver were the result of coercion. Where, as here, a defendant "has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on habeas review may rely on the defendant's sworn statements and hold him to them."*Padilla v. Keane,* 331 F.Supp.2d 209, 217 (S.D.N.Y.2004) (citing *Blackledge* 431 U.S. at 74);*see also United States v. Torres,* 129 F.3d 710, 715 (2d Cir.1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea."). Nor can petitioner maintain that trial counsel improperly

pressured him into pleading guilty by providing a truthful assessment that the prosecution would ultimately prevail at trial. *See United States v. Juncal,* 245 F.3d 166, 172 (2d Cir.2001) ("[D]efense counsel's blunt rendering of an honest but negative assessment of [defendant's] chances at trial, combined with advice to enter the plea, [does not] constitute improper behavior or coercion that would suffice to invalidate a plea.").

Moreover, the overall favorable disposition of petitioner's case belies his ineffective assistance claims. *See Seifert v. Keane,* 74 F.Supp.2d 199, 206 (E.D.N.Y.1999) ("Given the favorable nature of petitioner's plea, the court cannot say that counsel's performance was deficient[.]"), *aff'd,*205 F.3d 1324 (2d Cir.2000). Defense counsel successfully negotiated a favorable plea bargain directly with the court after the prosecution refused to extend any plea offers. *See* Plea Tr. at 9. In light of the fact that petitioner was charged with several violent felonies and admittedly had no viable defense, *see* Pet. at 37, the sentence promise of six years offered by the court is a highly favorable outcome. Moreover, counsel negotiated an amendment to the appeal waiver that reserved the right to appeal suppression issues, which was a major concern for petitioner. *See* Plea Tr. at 23.

 **\*13** Even assuming that counsel's performance somehow fell below an objective standard of reasonableness, habeas relief would not be warranted because petitioner has failed to satisfy the prejudice prong. In the context of a guilty plea, the defendant must show a reasonable possibility that but for counsel's errors the outcome would have been different—i.e., the accused would not have pled guilty and would likely have been acquitted at trial, or would have received a significantly more favorable sentence. *See Hill,* 474 U.S. at 59–60; *Pham v. United States,* 317 F.3d 178, 182 (2d Cir.2003) (citations omitted). There is no support for the conclusion that, but for counsel's allegedly deficient representation, petitioner would have proceeded to trial or obtained a more favorable result. As noted above, counsel obtained a highly favorable sentence for petitioner notwithstanding the fact that he had no viable defense. Further, it is clear from the plea colloquy that petitioner had little intention, if any, of proceeding to trial in light of the charges he faced. *See*Dkt. No. 8, Sentencing Transcript, Aug. 22, 2008 at 12.

For the reasons set forth above, petitioner's ineffective assistance of counsel claim is denied and dismissed.

## H. Ineffective Assistance of Appellate Counsel

Petitioner alleges, for the first time in this petition, that his appellate counsel provided ineffective assistance by citing incorrect facts in her brief and raising issues other than those petitioner intended to raise on appeal. *See* Pet. at 68. Petitioner further argues that appellate counsel was ineffective because the Appellate Division chose not to address the claims raised in his pro se brief. *Id.*

This claim is unexhausted because petitioner has never raised these arguments in any state court proceeding. *See Daye,* 696 F.2d at 191 ("[T]he exhaustion doctrine provides that a habeas petitioner seeking to upset his state conviction on federal grounds must first have given the state courts a fair opportunity to pass upon his federal claim."). Nonetheless, petitioner may still bring these allegations to the state courts' attention through a writ of error coram nobis. *See Boynton v. Hicks,* No. 1:02–CV–1439, 2003 WL 22087634, at \*3 (S.D.N.Y. Sept. 9, 2003) ("In New York, a common law writ of error coram nobis is the proper vehicle for bringing a claim of ineffective assistance of appellate counsel[.]"); *Rodriguez v. New York,* No. 1:00–CV–1399, 2000 WL 962748, at \*2–3 (S.D.N.Y. July 11, 2000) (noting that there is no time limit for filing a writ of error coram nobis, and such a motion may be filed after direct appeal).

Because petitioner still has state court remedies available to pursue this unexhausted claim, his habeas petition is considered "mixed" inasmuch as it includes both exhausted and unexhausted claims. *Pratt v. Greiner,* 306 F.3d 1190, 1197 (2d Cir.2002). When faced with a mixed petition such as this, a district court may: (1) dismiss the petition in its entirety without prejudice; (2) consider the unexhausted claim and deny the entire petition on the merits; (3) allow the petitioner to delete the unexhausted claims and proceed only with his exhausted claims; or (4) in limited circumstances, stay the petition to allow petitioner to exhaust his unexhausted claims. *See*28 U.S.C. § 2254(b)(2); *Rhines v. Weber,* 544 U.S. 269, 273–74 (2005); *Manzullo v. New York,* No. 1:07–CV–0744, 2010 WL 1292302, at \*3 (E.D.N.Y. Mar. 29, 2010). In the interest of judicial efficiency, the Court elects to consider this unexhausted claim and deny the petition in its entirety. [6]

 **\*14** A criminal defendant has the right to the effective assistance of counsel on direct appeal of his conviction. *Evitts v. Lucey,* 469 U.S. 387, 395–96 (1985). A petitioner alleging ineffective assistance of appellate counsel must prove (1) that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and (2) that, absent counsel's deficient performance, there was a reasonable probability that

the defendant's appeal would have been successful. *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir.2001).

Appellate counsel's failure to raise any particular claim does not, by itself, demonstrate ineffectiveness. The Supreme Court has clearly stated that appointed counsel is not required to "press [even] nonfrivolous points" if, as a matter of "professional judgment," counsel opts against such a strategy.*Jones v. Barnes,* 463 U.S. 745, 751 (1983). Counsel is entrusted with discretion to decide which points to argue because effective appellate advocacy involves focusing on a few key issues and "winnowing out weaker arguments" that may detract from those claims. *Id.* at 751–52.Just as a trial counsel's strategic choices deserve deference, an appellate counsel's strategy in the selection of issues should not be second-guessed based on hindsight. *McKee v. United States,* 167 F.3d 103, 106 (2d Cir.1999).

A review of the appellate brief filed on behalf of petitioner indicates that appellate counsel's strategy was reasonable and sound, and the claims asserted in her brief were cogently argued. *See*Dkt. No. 8, Ex. A, Appellant's Br. at 12–31. Appellate counsel raised three colorable arguments on appeal, all of which, if successful, would have resulted in vacatur of petitioner's guilty plea or reduction of his sentence. *Id.* Her decision to focus on the validity of petitioner's guilty plea was certainly reasonable. *See Belle,* 74 A.D.3d at 1479–80.

Petitioner, nonetheless, contends that appellate counsel was ineffective for failing to argue the claims raised in his pro se brief. Pet. at 68. However, as the Appellate Division correctly determined, these claims were either meritless or unpreserved for review. *See Belle,* 74 A.D.3d at 1479–80. For instance, petitioner's Fourth Amendment argument was flatly contradicted by the evidence. *Id.* at 1479 ("[B]ased on the caller's description of the shooter and upon [petitioner's] act in fleeing upon being confronted, ... the police had reasonable suspicion to believe a crime had been committed such that [petitioner's] pursuit and detention were justified."). It is well settled that appellate counsel is not required to raise every conceivable issue, especially claims that have little or no chance of success. *See Jones v. Barnes,* 463 U.S. 745, 751–52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Aparicio,* 269 at 99 (holding that it is not ineffective assistance for counsel to omit meritless claims).

**\*15** Moreover, despite petitioner's contention otherwise, appellate counsel's mistake in stating that a *Wade* had hearing

occurred in this case does not evidence ineffective assistance. *See* Pet. at 68; Dkt. No. 8, Ex. A, Appellant's Br. at 9. To the extent appellate counsel erred, it was harmless. The Appellate Division was aware that such a hearing never occurred because it rejected petitioner's pro se argument that the trial court improperly failed to conduct such a hearing. *See Belle,* 74 A.D.3d at 1479. Inconsequential drafting errors do not result in ineffective assistance. *See Clarke v. Poole,* 440 F.Supp.2d 235, 242 (W.D.N.Y.2006) (rejecting ineffective assistance claim where, although motion papers were "inartfully drafted," the state court considered the underlying argument); *Boyd v. Hawk,* 965 F.Supp. 443, 452 (S.D.N.Y.1996) (rejecting ineffective assistance claim where, despite sloppy drafting, the motion submitted was not alleged to have "omitted any issues that should have been raised").

Petitioner's argument that counsel was ineffective because the Appellate Division did not address the claims raised in his pro se brief is equally meritless. First, it appears the Appellate Division did in fact address the claims advanced by petitioner. *See Belle,* 74 A.D.3d at 1479–80. In any event, it is within the court's discretion to respond specifically, or not at all, to arguments made by the parties. *See Bennett v. United States,* No. 1:05–CV–3666, 2013 WL 139551, at \*4 (S.D.N.Y. Jan. 13, 2013). Counsel can hardly be faulted for the Appellate Division exercising its discretion in addressing petitioner's arguments.

The record in this case is clear that there was no deficiency in appellate counsel's representation, and even if there was, there is no reasonable probability that the result of the proceedings would have been different. Habeas relief on this ground is therefore denied.

**IV. CONCLUSION**
**WHEREFORE,** it is

**ORDERED** that the petition for a writ of habeas corpus, Dkt. No. 1, is **DENIED** in its entirety and **DISMISSED;** and it is further

**ORDERED** that the Clerk is directed to serve a copy of this Decision and Order on the parties in accordance with the Local Rules; and it is further

**ORDERED** that no certificate of appealability shall be issued in this case because petitioner has failed to make a

"substantial showing of the denial of a constitutional right" pursuant to 28 U.S .C. § 2253(c)(2). [7]

**All Citations**

Slip Copy, 2013 WL 992663

**Footnotes**

1   For the sake of clarity, the cited page numbers refer to the electronically generated numbers at the top right hand corner of each page of the petition.

2   Online records from the New York State Department of Corrections indicate that petitioner was released from custody in December 2012, after serving five years, and that he remains on parole until 2016. Because petitioner is on parole and was incarcerated at start of this action, this case remains justiciable by this Court. *See Ruddy v. Bocaud,* No. 9:08–CV–1319 (LEK), 2009 WL 5030790, at *2 (N.D.N.Y. Dec. 14, 2009) (citing *Spencer v. Kemna,* 523 U.S. 1, 6–7 (1998)).

3   In any event, Petitioner's claim attacking the indictment is not cognizable on federal habeas review. *See, e.g., Brazeau v. Zon,* No. 1:04–CV–0031, 2007 WL 2903617, at *7 (W.D.N.Y. Oct. 1, 2007) (holding that claims attacking the indictment process are not reviewable in a federal habeas action).

4   Although a valid guilty plea can foreclose habeas review of a double jeopardy claim under appropriate circumstances, *compare Menna v. New York,* 423 U.S. 61, 62 (1975) (holding that otherwise valid guilty pleas can be set aside where the charges violate double jeopardy), *with Hall v. Conway,* 630 F.Supp.2d 283, 291 (W.D.N.Y.2009) (finding that petitioner's guilty plea foreclosed review of his double jeopardy claim), the lack of clarity with respect to petitioner's double jeopardy arguments precludes the Court from determining whether this bar is appropriate here. As such, the Court declines to find that petitioner's double jeopardy claim is barred by the guilty plea.

5   A petitioner need not exhaust available state remedies if there is no opportunity to obtain redress in state court, or if the corrective process is so clearly deficient as to render futile any effort to obtain relief. *See* 28 U.S.C. § 2254(b)(1). Petitioner does not contend, nor does the Court find, that New York's post-conviction procedures are inadequate to adjudicate this claim.

6   The Second Circuit and the Supreme Court have not yet established a standard for denying unexhausted claims under 28 U.S.C. § 2254(b)(2). Some lower federal courts have expressed the test as whether it is "perfectly clear" that the petitioner does not raise even a colorable federal claim, while others have asked whether the petitioner's unexhausted claims are "patently frivolous ." *See Morgan v. Lee,* No. 1:11–CV–0390, 2012 WL 5336167, at *7 (W.D.N.Y. Oct. 26, 2012) (collecting and comparing cases). The Court need not decide which standard is appropriate, as the unexhausted claim presented here does not warrant habeas relief under any possible standard of review.

7   *See Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003) ( "[Section] 2253 permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right' " (citation omitted)).

2010 WL 1875636
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Hector GARCIA, Petitioner,
v.
Anthony BOUCAUD, Respondent.

No. 09 Civ. 5758(RJH)(GWG).  |  May 11, 2010.

### REPORT AND RECOMMENDATION

GABRIEL W. GORENSTEIN, United States Magistrate Judge.

 *1  Hector Garcia, proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction in the Supreme Court of New York County, following his plea of guilty to Conspiracy in the Second Degree under New York Penal Law ("N.Y.P.L.") § 105.15. He was sentenced to a term of 7 to 21 years' imprisonment. Garcia is currently released on parole. For the reasons stated below, the petition should be denied.

### I. BACKGROUND

#### A. Indictment

By indictment filed on February 22, 2005, Garcia was charged with Conspiracy in the Second Degree, Criminal Possession of a Controlled Substance in the First Degree, and Criminal Possession of a Controlled Substance in the Third Degree. *See* Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus, filed Dec. 17, 2009 (Docket # 13) ("Resp.Mem."), at 2. The charges were based on an investigation by the New York Drug Enforcement Task Force, which concluded that Garcia was part of a narcotics organization importing cocaine from Cali, Columbia to New York City. *Id.* Garcia's role included negotiating with suppliers to receive cocaine. *Id.* The investigation culminated in the seizure of approximately 25 kilograms of cocaine from Garcia's associate and another 25 kilograms of cocaine from a residence that belonged to Garcia's sister-in-law. *Id.*

#### B. Pre-plea Proceedings

On February 22, 2005, the same day the indictment was filed, Garcia, represented by attorney Ted Del Valle, appeared before Justice William Wetzel and pled not guilty. (*See* 2/22/05 Tr. 1–2).[1] Garcia appeared before Justice Wetzel again on June 20, 2005, and the court indicated that Garcia should "tell ... definitively and finally, whether or not [he was] interested in pleading guilty ... or going to trial."(6/20/05 Tr. 2). At that point, the prosecution had made an offer for a plea deal including a proposed sentence of seven years to life in prison. (6/20/05 Tr. 2–3). Garcia stated that he wanted to go to trial. (6/20/05 Tr. 2).

Garcia next appeared before the court on September 12, 2005 with new counsel, Andres Aranda. The judge made a lengthy statement to Garcia in which he noted that Garcia had declined prior offers of 10 years to life and nine years to life. He adverted to the fact that the People had a "good case," and that Garcia himself was aware of a tape-recording reflecting his involvement in the case. He stated that he would give Garcia a date prior to the trial date for a potential plea but that there would be no plea afterwards because the court wanted "the People to get their case ready."He also stated that he did not care if Garcia pled; that he thought the system would be "better served" if Garcia went to trial; and that Garcia could ask his counsel what a sentence after trial would look like. The judge set a new court date of September 19 "as a courtesy" and a trial date of October 11. (9/12/05 Tr. 2–5).

 *2  The next transcript provided is for October 11, 2005, at which time the court noted that Garcia "previously indicated that he's adamant that he will go to trial and does not wish to plead guilty."(10/11/05 Tr. 1–2). A trial date was set for November 7, 2005. (10/11/05 Tr. 2). The court stated that it would not "accept any plea at this time, other than a plea to the charge."(10/11/05 Tr. 3).

#### C. The Plea and Sentencing

Another court proceeding took place on January 27, 2006. Garcia's counsel informed the court that he had gone to Rikers Island to speak to Garcia regarding the Government's evidence; that he had spoken to Garcia's wife; and that Garcia wished to plead to Conspiracy in the Second Degree, a Class B Felony in exchange for a sentence of 7 to 21 years' imprisonment, (1/27/06 Tr. 2), which was one of the three charges in the indictment.

During the plea allocution, Garcia assented when asked whether he had discussed the case with his attorney and if he

understood that he was agreeing to a sentence of 7 to 21 years' imprisonment. (1/27/06 Tr. 3). Garcia stated he understood that, in the absence of the plea, he faced a sentence of 15 years to life. (1/27/06 Tr. 3). The court asked if Garcia was satisfied with the advice he received from counsel, and he replied that he was. *Id.* Garcia admitted to engaging in a conspiracy whose goal was to "obtain and ultimately to sell" 50 kilograms of cocaine. (1/27/06 Tr. 3–5). Garcia stated that he understood that in pleading guilty, he was forfeiting his right to a trial by jury and his right to appeal "any and all issues arising out of [his] indictment."(1/27/06 Tr. 5). Specifically, the court told Garcia that this was the "absolute end of this case because you're not only giving up your right to a trial by jury ... this case is finished, you can't appeal."*Id.* Finally, he answered that his plea was voluntary and that he was not being forced by anyone to enter a guilty plea. (*See* 1/27/06 Tr. 6).

On the same date as his plea, Garcia executed a document entitled "Waiver of Right to Appeal," which stated that he was forfeiting his right to appeal from the judgment of conviction except for claims as to the right to a speedy trial, the legality of the sentence promised by the judge, his competency to stand trial, and the voluntariness of his waiver of appellate rights. *See* Waiver of Right to Appeal, dated Jan. 27, 2006 (annexed as Ex. A to Declaration in Opposition to the Petition for a Writ of Habeas Corpus, filed Dec. 17, 2009 (Docket # 14) ("Resp.Decl.")). The waiver document also stated that Garcia signed the document "knowingly and voluntarily after being advised by the Court and after consulting with [his] attorney," and that he had a "full opportunity to discuss these matters with [his] attorney and any questions [he] may have had have been answered to [his] satisfaction ."*Id.*

On February 16, 2006, Justice Wetzel sentenced Garcia to a prison term of 7 to 21 years. (2/16/06 Tr. 2).

### D. *Post–Conviction Motion*

**\*3** Almost three months later, on May 12, 2006, Garcia filed a pro se motion under New York Criminal Procedure Law ("N.Y.C.P.L.") § 440.20 to set aside or reduce his sentence under the 2005 Drug Law Reform Act. *See* Notice of Motion to Set Aside Sentence, dated May 12, 2006 (annexed as Ex. B to Resp. Decl.). The court denied Garcia's motion, finding that he was not eligible to be sentenced under the Drug Law Reform Act because he had pled guilty to Conspiracy, and not a narcotics offense. [2] Order, dated June 5, 2006 (annexed as Ex. C to Resp. Decl.).

Garcia sought leave to appeal the denial of his motion, asserting that because he was a first time offender, his sentence should have been reduced to three to nine years' imprisonment in the interest of justice. *See* Application for Leave to Appeal, dated June 21, 2006 (annexed as Ex. D to Resp. Decl.), at 1–9. [3] The Appellate Division, First Department, denied leave to appeal because there was "no question of law or fact presented which ought to be reviewed."Certificate Denying Leave, dated Aug. 10, 2006 (annexed as Ex. F to Resp. Decl.).

### E. *State Court Appeals*

Garcia, represented by counsel, appealed his conviction to the Appellate Division, First Department, on the grounds that: (1) his waiver of appeal was not knowing, voluntary, and intelligent because (a) the trial court's statements regarding the all-encompassing nature of the waiver were misleading and (b) the trial court failed to discuss the waiver of appeal during the plea hearing and there was no way to know if it was translated and explained to Garcia; (2) Garcia's guilty plea was not properly entered because (a) he did not recite the elements of the crime charged but merely stated "yes" in response to questions from the court, (b) the trial court failed to pose clarifying questions when Garcia stated that he did not know the value of the cocaine at issue, (c) the trial court's explanation that Garcia was giving up his right to a jury trial and that he was waiving his appeal was deficient and did not ensure a knowing, voluntary, and intelligent plea, (d) the trial court should not have continually adjourned the trial dates after it was convinced that Garcia was "adamant" about his innocence, and (e) the trial court verbally "abused" Garcia, refused to accept his assertion of innocence, and was abruptly willing to accept a guilty plea, confusing Garcia; and (3) the sentence was harsh and excessive because Garcia was eligible for a minimum sentence of one year, and in sentencing him, the trial court failed to consider factors such as his family, lack of a prior criminal record, lack of psychiatric and substance abuse issues, his employment, and his remorsefulness. *See* Brief for Defendant–Appellant, dated Jan. 29, 2008 (annexed as Ex. G to Resp. Decl.) ("Appellate Brief"), at 8–23.

The Appellate Division affirmed the conviction on October 14, 2008. *See People v. Garcia,* 55 A.D.3d 368 (1st Dep't 2008). In its decision, the court stated that Garcia's voluntariness argument was unpreserved because he failed to move to withdraw his plea prior to sentencing and his case did not fit into the narrow exception to the preservation requirement, which is set forth in *People v. Lopez,* 71 N.Y.2d

662 (1988). [4] *Id.* at 369.It held in the alternative on the merits that the record established "that defendant's plea was knowing, intelligent and voluntary."*Id.* The court also stated that "[a] colloquy between defendant and the plea court that occurred months before the plea was not coercive" and "the court emphasized defendant's right to proceed to trial."*Id.* Finally, the court rejected Garcia's excessive sentence claim because it was precluded by the valid waiver of his right to appeal, and there was no basis, in any event, for reducing the sentence. *Id.*

**\*4** Through counsel, Garcia sought leave to appeal to the New York Court of Appeals claiming that the plea was invalid because (1) Garcia "never recited the underlying facts of the alleged crime," (2) "the trial court never sought to clarify defendant's ambiguous answer to its question," and (3) "the trial court's pre-plea proceeding colloquies were coercive."Letter Application Seeking Leave to Appeal, dated Nov. 26, 2008 (annexed as Ex. K to Resp. Decl .), at 2. The Court of Appeals denied leave to appeal. *People v. Garcia,* 12 N.Y.3d 757 (2009).

### F. *The Instant Petition for Writ of Habeas Corpus*

Garcia filed this petition for writ of habeas corpus on April 27, 2009, *see* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed Apr. 27, 2009 (Docket # 2) ("Pet."), and raised two grounds for relief: (1) his plea and waiver of his right to appeal were not made knowingly, voluntarily, or intelligently because the trial court (a) "failed in its duty to ensure that Petitioner had a full understanding of his guilty plea [including the nature of the charge], and waiver [of appeal], and its consequences," (b) disregarded statements that Garcia did not know the value of the cocaine at issue, (c) was deficient in explaining that Garcia gave up his right to a jury trial and right to appeal, (d) was verbally abusive, and (e) such abuse, in conjunction with its refusal to accept Garcia's assertion of innocence and sudden willingness to accept a guilty plea confused him; and (2) trial counsel was ineffective because he remained silent during the plea allocution as the trial court misinformed Garcia, particularly with respect to his plea and the waiver of the right to appeal. *See* Memorandum (annexed to Pet.) ("Mem."), at 1–4; Pet. ¶¶ 12(A), 12(B). The respondent submitted papers in opposition. Resp. Mem.; Resp. Decl.

## II. *GOVERNING LEGAL PRINCIPLES*

Habeas corpus relief under 28 U.S.C. § 2254 is available to a petitioner held in state custody in violation of the Constitution or a federal law or treaty. *See*28 U.S.C. § 2254(a). To be entitled to habeas relief, a petitioner must demonstrate that the conviction resulted from a state court decision that violated federal law. *See, e.g., Estelle v. McGuire,* 502 U.S. 62, 68 (1991)."Before a federal court may grant habeas relief to a state prisoner," however, "the prisoner must exhaust his remedies in state court."*O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999); *see*28 U.S.C. § 2254(b)(1)(A). The Supreme Court has held that:

> [b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, ... state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

**\*5** *O'Sullivan,* 526 U.S. at 845;*accord Smith v. Duncan,* 411 F .3d 340, 347 (2d Cir.2005). Thus, a petitioner is required to have presented each claim to all available levels of the state courts. *See, e.g., Baldwin v. Reese,* 541 U.S. 27, 29 (2004) ("the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review)") (citations and internal quotation marks omitted).

Even where a claim has been exhausted, it may not be reviewed if the claim has been rejected based on a state procedural rule that constitutes an adequate and independent ground for the decision. The Second Circuit has summarized the law governing habeas review of claims dismissed under state procedural law as follows:

> This court is generally procedurally barred from considering a ruling that "fairly appear[s] to rest primarily on state procedural law."*Jimenez v. Walker,* 458 F.3d 130, 138 (2d Cir.2006) (citation omitted). Even where the state court has ruled on the merits of a federal claim "in the alternative," federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default. *Green v. Travis,* 414 F.3d 288, 294 (2d Cir.2005) (citation omitted). To bar federal habeas review, however, the state court's decision must rest not only on an independent procedural bar under state law, but also on one

that is "adequate to support the judgment." *Jimenez,* 458 F.3d at 138.

A state procedural bar is "adequate" if it "is firmly established and regularly followed by the state in question" in the specific circumstances presented in the instant case. *Monroe v. Kuhlman,* 433 F.3d 236, 241 (2d Cir.2006) (citation omitted). The "guideposts" for analyzing the issue of adequacy, articulated in the context of a procedural default occurring at trial, are:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir.2003) (citation omitted). The *Cotto* guideposts also apply to testing the adequacy of a procedural default raised in a state collateral proceeding. *See, e.g., Clark v. Perez,* 450 F.Supp.2d 396, 426 (S.D.N.Y.2006). Because of comity concerns, a decision that a state procedural rule is inadequate should not be made "lightly or without clear support in state law."*Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir.1999) (citation omitted).

*Murden v. Artuz,* 497 F.3d 178, 191–92 (2d Cir.2007), *cert. denied,*552 U.S. 1150 (2008). The Second Circuit has cautioned, however, that "the *Cotto* factors are not a three-prong test: they are guideposts to aid inquiry ... there is no need to force square pegs into round holes."*Clark,* 510 F.3d at 391.

**\*6** If a claim is procedurally barred, a petitioner may obtain review of the claim only if he demonstrates "cause and prejudice for the procedural default," or that the "constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense."*Dretke v. Haley,* 541 U.S. 386, 393 (2004) (citations and internal quotation marks omitted); *accord Murden,* 497 F.3d at 194; *Doe v. Menefee,* 391 F.3d 147, 159–63 (2d Cir.2004), *cert. denied,*546 U.S. 961 (2005).

**III.** *DISCUSSION*

### A. *Voluntary Plea*

Garcia has exhausted his claim that his plea was not entered into knowingly, voluntarily, and intelligently. Pet. ¶ 12(A), Mem. at 1–3. He presented his arguments on this point in his brief on appeal to the Appellate Division. *See* Appellate Brief, at 8–19. [5] However, the Appellate Division held that his claim was unpreserved "because he did not move to withdraw his plea," and his case did not come within the "narrow" *Lopez* exception. *Garcia,* 55 A.D.3d at 369.

Garcia has submitted no papers contesting that this claim is procedurally barred. And none of the *Cotto* guideposts suggest that the New York state's reliance on the procedural bar was not an adequate state ground. As to the first *Cotto* factor, the question of whether the bar was actually relied on by the trial court, "is not applicable because the lack of any motion to withdraw the guilty plea on the specific ... basis asserted by Petitioner could not possibly have been mentioned by the trial court, because the trial court could not have known that the issue existed."*Hunter v. McLaughlin,* 2008 WL 482848, at *2 (S.D.N.Y. Feb. 21, 2008). With respect to whether "perfect compliance" would have changed the trial court's decision, application of this factor necessarily involves "speculation," *Cotto,* 331 F.3d at 243.Here, the trial court was denied the opportunity to consider Garcia's claim regarding his plea before he was sentenced, and thus perfect compliance would likely have caused the state court to rule on his challenge to the plea on the merits. *Accord Hunter,* 2008 WL 482848, at *3.

As for the second guidepost, state case law indicates that compliance with the rule is demanded in the specific circumstances presented in Garcia's case. *See, e.g., People v. Johnson,* 82 N.Y.2d 683, 685 (1993); *People v. Claudio,* 64 N.Y.2d 858, 858–59 (1985); *People v. Pellegrino,* 60 N.Y.2d 636, 637 (1983); *People v. Bell,* 47 N.Y.2d 839, 840 (1979); *People v. Ambrose,* 266 A.D.2d 26, 27 (1st Dep't 1999). Importantly, Garcia's plea did not negate any elements of the conspiracy charge, (1/27/06 Tr. 3–4), which might have made the *Lopez* exception applicable. *Cf. Lopez,* 71 N.Y.2d at 666 ("where a defendant's factual recitation negates an essential element of the crime pleaded to, the court may not accept the plea without making further inquiry to ensure that defendant understands the nature of the charge and that it is intelligently entered"). In any event, the record reflects that the court made inquiry to ensure that the plea was knowingly and intelligently entered into. (1/27/06 Tr. 3–6).

**\*7** As for the third factor, Garcia did not substantially comply with the rule requiring him to move to withdraw his plea.

Consistent with this analysis, other habeas courts have recognized that a failure to withdraw a guilty plea before sentencing constitutes an independent and adequate ground for the state court decision. *See Luster v. Molihan,* 2009 WL 2015074, at \*3 (E.D.N.Y. July 14, 2009) ("In this case, the state court concluded that Luster had failed to preserve his argument that his guilty plea was invalid because he failed to seek to vacate or withdraw his plea before sentencing. This is clearly a procedural default."); *see also Fuller v. Schultz,* 572 F.Supp.2d 425, 438 (S.D.N.Y.2008) (rule requiring a motion to withdraw is "firmly established and regularly followed.") (quoting *Cotto,* 331 F.3d at 239–41) (internal citations omitted); *Hunter,* 2008 WL 482848 (petitioner's failure to properly challenge voluntariness of guilty plea rendered claim procedurally barred).

As a result, Garcia's claim is procedurally barred, and we may review this claim only if he is able to establish either cause and prejudice or actual innocence. *See, e.g., Harris v. Reed,* 489 U .S. 255, 262 (1989); *Murray v. Carrier,* 477 U.S. 478, 495–96 (1986); *Dunham v. Travis,* 313 F.3d 724, 730 (2002). Whether there is cause "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753 (1991) (citation omitted). No such cause has been shown here, however, inasmuch as Garcia has not given any reason for the failure. Nor has he provided any evidence of actual innocence. Accordingly, Garcia's claim that his plea was not entered into voluntarily should be denied. [6]

**B.** *Ineffective Assistance of Counsel Claim*
Garcia contends that his trial counsel was ineffective because counsel was silent when the court erroneously told Garcia "that he had absolutely no right to appeal anything." Pet. ¶ 12(B). In fact, the written appeal waiver contained some narrow exceptions to the appeal waiver. *See* Waiver of Right to Appeal. As the respondent notes, this claim was raised for the first time in Garcia's federal habeas petition and is thus unexhausted. *See* Resp. Mem. at 13–15.

Garcia's failure to exhaust means that the claim cannot be reviewed here. Garcia cannot now return to the state courts to exhaust this claim because it is too late to raise it on appeal.

*See, e.g.,* N.Y. Court Rules § 600.11. Nor could he raise this issue in a new section 440.10 motion inasmuch as the claim is record-based, and Garcia's failure to raise the issue in the Appellate Division was "unjustifiable." *See* N.Y.C.P.L. 440.10(2)(c). Because of the failure to exhaust, Garcia's claim as to ineffective assistance of counsel is procedurally barred under New York State law. *See, e.g., Jimenez v. Walker,* 458 F.3d 130, 149 (2d Cir.2006) ("[Petitioner's] claim is now exhausted because state remedies are no longer available. [Petitioner] has already taken his one direct appeal, and this claim is procedurally barred from consideration in a collateral attack on his conviction.... [Therefore, petitioner] has procedurally defaulted his ... claim .") (internal citations omitted).

**\*8** In such a situation, case law reflects that the unexhausted claim will be "deemed exhausted." *St. Helen v. Senkowski,* 374 F.3d 181, 183 (2d Cir.2004) (citing *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991)), *cert. denied,* 543 U.S. 1058 (2005); *accord Coleman,* 501 U.S. at 735 n. 1. "However, the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." *Gray v. Netherland,* 518 U.S. 152, 162 (1996). "In the case of procedural default (including where an unexhausted claim no longer can proceed in state court), we may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent.' " *St. Helen,* 374 F.3d at 184 (quoting *Bousley v. United States,* 523 U.S. 614, 622 (1998)). Garcia has provided no cause for his failure to raise this claim. Nor has he provided evidence that he is actually innocent. Accordingly, Garcia's ineffective assistance of counsel claim is procedurally defaulted.

### IV. *CONCLUSION*

For the foregoing reasons, the petition should be denied.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from service of this Report and Recommendation to serve and file any objections. *See also* Fed.R.Civ.P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to

the Hon. Richard J. Holwell, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Holwell. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins,* *Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir.2010).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 1875636

Footnotes

1    "Tr." refers to the transcripts of proceedings in Garcia's case, which are dated between February 22, 2005 and February 16, 2006. Because multiple days of transcripts are contained within a single volume, *see* Trial Transcript, filed Dec. 17, 2009 (Docket # 12), we identify each transcript citation by date.

2    The Drug Law Reform Act of 2004 (L.2004, ch. 738) and the Drug Law Reform Act of 2005 (L.2005, ch. 643, § 1) do not apply to N.Y.P.L. § 105.15, Conspiracy in the Second Degree, a non-narcotic, Class B felony. *See People v. Diaz,* 68 A.D.3d 497, 498 (1st Dep't 2009).

3    Where necessary, the Court has added page numbers to this document and other documents.

4    That exception states that "in that rare case, ... where the defendant's recitation of the facts underlying the crime pleaded to clearly casts significant doubt upon the defendant's guilt or otherwise calls into question the voluntariness of the plea, ... the trial court has a duty to inquire further to ensure that defendant's guilty plea is knowing and voluntary." *Lopez,* 71 N .Y.2d at 666.

5    Garcia did not, however, present all grounds raised in his petition that underlie this claim to the Court of Appeals. *See* Letter Application Seeking Leave to Appeal at 2. But inasmuch as the respondent has failed to raise this partial failure to exhaust, we do not consider it further.

6    While he does not list it as a ground for relief in his habeas petition, Garcia's memorandum of law states that he did not understand "the true consequences of the waiver of the right to appeal" and that the waiver was not "knowing, voluntary and intelligent." *See* Mem. at 1. Assuming *arguendo* that this claim may be considered as part of his petition, the Appellate Division properly rejected this claim because it found that the waiver of Garcia's right to appeal was "valid." *Garcia,* 55 A.D .3d at 369.There is nothing to suggest that the Appellate Division's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."28 U.S.C. § 2254(d)(2). Garcia signed a waiver agreement expressly giving up his right to appeal, *see* Waiver of Right to Appeal, and indicated during his plea allocution that he understood the waiver of appeal as explained by the trial court (1/27/06 Tr. 5).

---

**End of Document**                                              © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 791457
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Ronald HAYNES, Petitioner,

v.

John W. BURGE, Superintendent,
Elmira Correctional Facility, Respondent.

No. 05 CV 5997(RJD).  |  Signed Feb. 25, 2015.

**Attorneys and Law Firms**

Ronald Haynes, Otisville, NY, pro se.

Karol Baird Mangum, Jodi Lynne Mandel, Brooklyn, NY, for
Respondent.

### MEMORANDUM & ORDER

DEARIE, District Judge.

**\*1** Petitioner Ronald Haynes was apprehended in his vehicle
just after purchasing marijuana from an undercover. As he
was being stopped, he was observed closing the car's center
console, and in the ensuing search police found a loaded .25
caliber pistol there as well as marijuana on the passenger
seat and in Haynes's pants pocket. Haynes was indicted for
criminal possession of a weapon in the third and fourth
degrees and unlawful possession of marijuana. Following his
plea of guilty to the third degree weapons possession count,
Haynes was adjudicated a persistent violent felony offender
on the basis of two prior convictions and sentenced to the
negotiated term of thirteen years to life.

In his application for a writ of habeas corpus pursuant to 28
U.S .C. § 2254, Haynes claims (i) that he was improperly
adjudicated a persistent violent felony offender on the ground
that one of the two predicate convictions is not a valid
qualifying felony, (ii) that New York's persistent violent
felony offender statute violates *Apprendi v. New Jersey,* 530
U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and (iii)
that his attorney rendered ineffective assistance in connection
with his plea and sentence. For the reasons that follow, the
application is denied and the petition is dismissed.

### BACKGROUND

**A. Plea and Persistent Violent Felony Adjudication**

At the first calendar call on March 23, 2004, Haynes turned
down an offer to plead to the third-degree weapons count in
exchange for a recommended sentence of 12 years to life.
On April 20, 2004, defense counsel advised the court that his
client was reconsidering the plea offer and wished to confer
before proceeding with the suppression hearing scheduled
for that day. Granting a brief recess, the court also reviewed
with Haynes the strength of the evidence against him and his
sentencing exposure. Defense counsel then advised the court
that he had "spent 15 minutes" with Haynes and his wife
"discuss[ing] all of the options that he has."Counsel said that
he "indicated to [Haynes] what his exposure would be" and
"what [he] thought his chances were at the hearings and trial,"
and that Haynes had now elected to take the offer. During the
allocution, however, Haynes did not admit his factual guilt so
the plea was aborted and the hearing commenced. [1]

Following the testimony of the prosecution's first witness,
defense counsel told the court that his client again wished to
plead. The court stated that the sentencing minimum would
be increased to 13 years from the pre-hearing offer of 12,
and Haynes agreed. The court advised Haynes of the various
constitutional rights he would be forfeiting, including the
right to appeal; Haynes stated that he understood, and that
he had reviewed the plea agreement with his attorney and
understood it; and Haynes admitted that he placed the loaded
gun in his car's console.

Upon the court's acceptance of the plea, the parties proceeded
to the persistent violent felony adjudication. The prosecution
furnished the CPL Article 400 statement listing the prior
felony convictions alleged to qualify as predicates, which
provided as follows:

> **\*2**  PLEASE TAKE NOTICE that
> upon information presently available
> the District Attorney of the County of
> Kings hereby charges that [Haynes]
> has previously been convicted of:

| CRIME | PREDICATE VFC | DATE OF SENTENCE | JURISDICTION |
|---|---|---|---|

| CPW 3 D | N | 05/02/90 | Supreme Court Kings |
| *MANSLAUGHTER BFEL* | Y | 09/22/92 | Supreme Court Kings |

It is not disputed that the entries refer to a 1990 conviction for criminal possession of a weapon in the third degree—a D felony, according to the statement—and a 1992 conviction for manslaughter in the first degree—a B felony. The statement also provides that "[e]ach conviction shown above which occurred within the State of New York is a felony," and that "[e]ach conviction designated above as a 'Predicate VFC' is a predicate violent felony conviction as defined in paragraph (b) of subdivision one of Penal Law Section 70.04." [2]

The gravamen of this application for habeas relief, and the driving force of years of post-conviction litigation in the state courts (to be addressed shortly), is the "N" beside the weapons possession conviction, which on its face indicates that that crime is *not* a violent felony under New York law.

During the Article 400 examination, however, both convictions were referred to as "violent" felonies without remark or mention of the "N":

> CLERK: Mr. Haynes, you have been provided with a statement by the District Attorney according to Article 400 Criminal Procedure Law and Article 70 of the Penal Law which states that you have been convicted and sentenced on prior violent felonies ... [namely] on May 2nd, 1990, you were convicted of Criminal Possession of a Weapon in the Third Degree ... [a]nd on September 22, 1992, you have a judgment against you on Manslaughter in [the] First Degree
>
> ... you may admit, deny or stand mute as to whether you're the person that was convicted and sentenced on those felonies as recited in the statement.
>
> If you wish to controvert that statement, including any violation of your constitutional rights, you may state your grounds and you will be entitled to a hearing before this Court ...
>
> Have you received a copy of that statement Mr. Haynes?
>
> HAYNES: Yes.
>
> CLERK: Have you discussed that with your attorney?

> HAYNES: Yes.
>
> CLERK: Do you admit that you are the person convicted of those felonies?
>
> HAYNES: Yes.
>
> CLERK: Finally, do you wish to challenge the constitutionality of the prior convictions in any way?
>
> HAYNES: No.

The court then stated that it "finds, by the defendant's admission in open Court, upon the advice of counsel[,] that he is a mandatory persistent violent felony offender." At sentencing on May 13, 2004, the district attorney, defense counsel and Haynes each declined to make a statement, and the court imposed the "promised sentence of 13 years to life." [3]

**B. Procedural History**
 **\*3** The claims that Haynes advances in his habeas petition have received considerable attention in the state court.

1. *Commencement of His Direct Appeal.* On June 3, 2004 and again on November 16, 2004, Haynes filed notices of appeal with the Second Department that were timely or deemed so. [4] Three years would pass, however, before the appeal was perfected.

2. *The First Application for State Post–Conviction Relief.* Meanwhile, on January 13, 2005, Haynes filed a motion in the trial court for post-conviction relief under New York Criminal Procedure Law § 440—the first of what would eventually be four such motions—raising two of the three claims he raises here, *viz,* that (i) his 1990 weapons possession conviction was not for a violent felony and, therefore, that his adjudication as a persistent violent felon was improper, and (ii) his lawyer rendered ineffective assistance in connection with his plea and sentence in that he failed to correctly advise him of his repeat-offender status and exposure, failed to adequately investigate the case, and failed to object to the apparent error on the predicate felony statement. The court

rejected each of the claims on the merits. *People v. Haynes,* Ind. No. 6705/03, Slip. Op. (Kings Cty. Sup.Ct. Apr. 28, 2005) (Del Giudice, J.)

Addressing the fact that "the letter 'N' (apparently denoting 'No') is typed in the 'Predicate VFC' column next to the listed May 2, 1990 conviction of Criminal Possession of a Weapon in the Third Degree," the 440 court concluded that the notation "appears to be a clerical error."*Id.* at 4, 806 N.Y.S.2d 172, 840 N.E.2d 141. The court specifically found that, "[n]otwithstanding that apparent clerical error, all relevant court records, including the indictment and the plea and sentence minutes in connection with [Haynes's] May 2, 1990 conviction, confirm that the court, the prosecutor, defense counsel and [Haynes] were aware that [the] May 2, 1990 conviction of Criminal Possession of a Weapon in the Third Degree, under Penal Law Section 265.02(4), *i.e.,* possession of a loaded firearm, not in defendant's home or place of business, constituted a prior violent felony conviction."*Id.* [5] The court concluded, therefore, that "the negotiated sentence of 13 years to life ... is both lawfully imposed and valid as a matter of law."*Id.*

The 440 court also rejected Haynes's ineffectiveness claims. In its decision, the court first furnished a two-page factual synopsis of the proceedings over which it presided, *id.* at 2–3, and then concluded that, "the record is clear that [Haynes] received effective assistance of counsel in connection with the negotiated plea agreement, was adequately advised of his 'true status' as a mandatory persistent violent felony offender, and received the benefit of an advantageous plea bargain."*Id.* at 5.

3. *Motion to Re-argue the First 440.*Approximately a year later, by papers dated April 19, 2005, Haynes moved to re-argue the 440 motion. The 440 court denied the motion, concluding that Haynes failed to show that the denial of 440 relief involved "any misapprehension of issues of fact or misapplication of controlling legal principles."*People v. Haynes, Ind.* No. 6705/03, Slip. Op. (King Cty. Sup.Ct. June 6, 2005). The Appellate Division, Second Department denied Haynes's application for leave to appeal, *Peopl. v. Haynes,* 2005–05143 (2d Dep't July 20, 2005), and the New York Court of Appeals denied leave to appeal that denial. *People v. Haynes,* 5 N.Y.3d 852, 806 N.Y.S.2d 172, 840 N.E.2d 141 (Oct. 27, 2005).

**\*4** 4. *The First Federal Habeas Petition.*Approximately two months later, in late 2005, Haynes filed a petition for

habeas relief in this Court. [6] By letters dated January 17, 2006 and May 18, 2006, however, Haynes sought to withdraw the petition as premature on the ground that he had not yet perfected his direct appeal. By order dated June 28, 2006, this Court granted the request, and this civil matter was administratively closed. [7]

5. *The Transferred Second Federal Petition.*This Court next heard from Haynes more than seven years later: on October 15, 2013, the United States Court of Appeals for the Second Circuit issued an order transferring here a proposed section 2254 petition that Haynes had filed there on September 5, 2013 with a motion for leave to file a successive habeas petition. The Circuit denied the motion as unnecessary on the ground that Haynes had withdrawn his prior petition in order to exhaust his state remedies. Upon issuance of the Circuit's mandate on December 9, 2013, our Clerk's office re-opened the matter. [8]

6. *The Second State–Court 440.* [9] After withdrawing his first federal petition, Haynes commenced a second 440 in state court in which he claimed that his plea was not knowing and voluntary and that his attorney was ineffective. The 440 court denied the motion "in all respects, on the ground that the issue of effective assistance of counsel was previously determined on the merits upon [Haynes's] prior motion."*People v. Haynes,* Ind. 6705/03, Slip. Op. (Kings Cty. Sup.Ct. Sept. 19, 2007) at 1. The court also concluded, in any event, that Haynes "was in a position to raise the grounds or issues underlying the instant motion upon his prior CPL 440 motion" and further, "that the judgment [was then] pending on appeal and sufficient facts appear on the record to permit" adequate appellate review. *Id.* at 1–2, 806 N.Y.S.2d 172, 840 N.E.2d 141.

7. *Perfecting of the Direct Appeal.*Approximately a month before the denial of Haynes's second 440, activity resumed in his appeal. In August 2007, Lynn W.L. Fahey, Esq. of Appellate Advocates filed a brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), on Haynes's behalf. The *Anders* brief argued (i) that Haynes's guilty plea was validly entered, (ii) that he was validly adjudicated a persistent violent felony offender, and (iii) that his waiver of his right to appeal precluded any challenge to his sentence as excessive. On the subject of the "N" beside the 1990 weapons conviction on the predicate felony statement, Fahey advised the Second Department that she had examined the original court records, including

the indictment and plea minutes, and determined that, notwithstanding the "N," "there is no question" that Haynes had been convicted under the particular subdivision of the weapons possession statute that qualified as a "violent felony offense" under New York law.

Haynes filed a *pro se* supplemental appellate brief in which he challenged his guilty plea and adjudication as a persistent violent felon on the grounds raised in his first two 440 motions. His one new argument was that the 1990 weapons possession conviction did not qualify as a violent felony for the additional reason that he had been sentenced to probation on that conviction rather than to a sentence in excess of one year.

**\*5** The Appellate Division, Second Department unanimously affirmed Haynes's conviction by summary order. *People v. Haynes,* 51 A.D.3d 945, 856 N.Y.S.2d 886 (2d Dep't May 20, 2008). The appellate court "agree[d] with [Haynes's] assigned counsel that there are no nonfrivolous issues which could be raised on appeal," and that "[t]he issues raised by [Haynes] in his supplemental pro se brief are precluded by his knowingly, intelligently and voluntarily executed waiver of his right to appeal." *Id.* at 886. Haynes did not seek leave to appeal to the New York Court of Appeals.

8. *The Third 440.* More than a year later, in September 2009, Haynes filed his third 440 motion in state court in which he re-asserted the claim that he was improperly adjudicated a persistent violent felony offender and also argued that his sentence was excessive. The court denied the motion on the ground that all the claims then raised had been previously determined on prior motions, but in any event re-affirmed that Haynes was "preclude[ed] from arguing that his sentence was unduly harsh or excessive" because he had "knowingly and voluntarily waived his right to appeal his plea and sentence." *People v. Haynes,* Ind. 6705/03, Slip. Op. (Kings Cty. Sup.Ct., Nov. 10, 2009) at 2. The court further concluded that "even if [it] were to consider" the claims on the merits, the motion was denied because Haynes's sentence was lawful. *Id.* at 3, 806 N.Y.S.2d 172, 840 N.E.2d 141. The Appellate Division denied leave to appeal on October 14, 2010.

9. *The Fourth 440 Motion and Appeal.* Three months later, Haynes filed a fourth 440 motion in state court in which he again advanced his previously-advanced challenges to his adjudication as a persistent violent felon and the quality of his legal representation, and made the new claim that the sentencing scheme as applied to him violates *Apprendi v.*

*New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The court denied the motion on the ground that the issues raised had been previously determined, without reaching the *Apprendi* claim. *People v. Haynes,* Ind. 6705/03, Slip. Op. (Kings Cty. Sup.Ct., March 1, 2011). The Appellate Division granted leave to appeal, and in a 17–page brief Haynes again presented his challenge to his adjudication as a persistent violent felon. In a unanimous decision affirming the denial of Haynes's fourth 440 motion, the Appellate Division rejected Haynes's challenge to his persistent violent felony adjudication on the merits. *People v. Haynes,* 92 A.D.3d 695, 937 N.Y.S.2d 891 (2d Dep't 2012). The Appellate Division held that "Penal Law § 70.08, New York's persistent felony offender statute pursuant to which [Haynes] was sentenced, is not unconstitutional," and that "[Haynes's] remaining contentions are without merit." *Id.* at 695, 937 N.Y.S.2d 891. The New York Court of Appeals denied leave to appeal. *People v. Haynes,* 19 N.Y.3d 961, 950 N.Y.S.2d 113, 973 N.E.2d 211 (June 12, 2012).

## DISCUSSION

### A. Basic Federal Habeas Corpus Standards

Because Haynes's claims have been adjudicated on the merits in state court, to obtain federal habeas relief he must make one of the difficult showings required by the Antiterrorism and Death Penalty Act of 1996 ("AEDPA"). *See generally* 28 U.S.C. § 2254(d). The Supreme Court recently re-affirmed that "AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights ... and are presumptively competent[ ] to adjudicate claims arising under the laws of the United States." *Burt v. Titlow,* —— U.S. ——, 134 S.Ct. 10, 15, 187 L.Ed.2d 348 (2013). For this reason, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.* at 16.

**\*6** If advancing a claim of *legal* error, a federal habeas applicant must show that, in rejecting his claims, the state court either "directly contradict [ed] a holding of the Supreme Court," *Evans. v. Fischer,* 712 F.3d 125, 132 (2d Cir.) (internal quotation and citation omitted), *cert. denied,* —— U.S. ——, 134 S.Ct. 238, 187 L.Ed.2d 177 (2013), or considerably misapplied an explicitly on-point Supreme Court holding. *Burt,* 134 S.Ct. at 16 ("AEDPA requires a state prisoner to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error ... beyond any possibility

for fairmindied disagreement") (internal quotation, citations and alterations omitted). The Supreme Court has made clear that, "[i]f this standard is difficult to meet—and it is—that is because it was meant to be," because federal courts "will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy."*Id.* (internal quotations, citations and alterations omitted).

Alternatively, "AEDPA instructs that, when a federal habeas petitioner challenges the *factual* basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings.'"*Id., at 15* (emphasis added) (quoting 28 U.S.C. § 2254(d)(2)). Further, "[t]he prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.' "*Id.* (quoting 28 U.S.C. § 2254(e) (1)).

## B. Analysis

### 1. Threshold Question: Timeliness

Respondent understandably argues that the 2013 petition is untimely. Although the one-year limitations period is tolled during the time a properly filed application for state post-conviction review is pending, 28 U.S.C § 2244(d)(2), Haynes nevertheless allowed too much time to pass at a critical point in his litigation journey. Following the Appellate Division's May 20, 2008 affirmance of his judgment of conviction, Haynes did not file an application for leave to appeal to the New York Court of Appeals, so his judgment of conviction became final on or about July 9, 2008 (thirty-five days after the State mailed notice of entry of the Appellate Division's decision, when the time for seeking such review expired, N.Y. CPL § 460.10(5)).*See Gonzalez v. Thaler,* —— U.S. ——, ——, 132 S.Ct. 641, 653–54, 181 L.Ed.2d 619 (2012) (when prisoner does not pursue review in state's highest court, conviction becomes final when the time for seeking such review expires). Haynes did not file his next application for state post-conviction relief (which would have the effect of tolling the limitations period) until September 2009, more than a year after his conviction became final and the one-year limitations period expired. The current petition, filed in September 2013, is therefore patently untimely.

**\*7** In any event, the procedural history of this case speaks for itself and so in the interests of justice the Court will nevertheless proceed to the merits with the hope of bringing closure to the claims that have fueled a decade of litigation. AEDPA's deferential requirements and the state court's decisions on Haynes's claims, however, obviate the need for an extensive merits discussion.

### 2. Persistent Violent Felony Adjudication

Haynes's principal challenge to his persistent felony offender adjudication is essentially a factual claim within the meaning of 28 U.S.C. § 2254(d)(2). As discussed, this Court's role when presented with such a claim is not to find facts *de novo* but instead to decide whether the petitioner has shown that the state court's findings are unreasonable or has rebutted their statutory presumption of correctness by clear and convincing evidence. [10] The Court concludes that Haynes has not made the showing AEDPA requires for habeas relief on this claim. Indeed, nothing in the extensive record—which includes all the referenced documents relating to the 1990 conviction and 2004 persistent felon adjudication—suggests a basis for disturbing the state court's finding that Haynes's 1990 conviction was for a violent felony. Haynes's reliance on a Certificate of Disposition for his 1990 conviction that he obtained in 2006 from the Kings County Clerk's office, which has the numbers "01" beside section 265.02, is not to the contrary. Although the certificate understandably fuels Haynes's claim that he was convicted under the former section 265.02(1) (simple possession in the fourth degree and not a felony), the certificate does not alter the conviction documents (the plea minutes and indictment), which control. The presence of "01" on the certificate appears to reflect a record-keeping fortuity in the state system with which this Court is already familiar. *See Green v. Walsh,* 2010 WL 3037000 (E.D.N.Y. Aug 3, 2010), *aff'd,*460 Fed. App'x 71 (2d Cir.), *cert. denied,* —— U.S. ——, 132 S.Ct. 2695, 183 L.Ed.2d 55 (2012).

To the extent Haynes's challenge to New York's interpretation and application of its own sentencing laws is a claim of legal error within the meaning of 2254(d)(1), it is doubtful that the claim is even cognizable. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); 28 U .S.C. § 2254(a) (federal courts may entertain a state prisoner's application for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). In any event, Haynes has not shown that the state court's rejection of his challenge

to his persistent felon adjudication directly contravened, or unreasonably applied, the holding of any Supreme Court case.

To the extent Haynes is continuing to press his claim that the 1990 conviction does not count as a violent felony because he received only a probationary sentence instead of a term of incarceration of one year or more, that claim likewise fails to present a basis for federal habeas relief. [11]

**3.** *Apprendi*

 **\*8** The Appellate Division's rejection of Haynes's *Apprendi* claim is not contrary to or an unreasonable application of Supreme Court law. To the contrary, it is entirely consistent with *Apprendi*, which expressly excludes "the fact of a prior conviction" from its rule requiring that certain penalty-enhancing facts be submitted to a jury and proved beyond a reasonable doubt. *Apprendi,* 530 U.S. at 490. *See also Kelly v. Lee,* 2014 WL 4699952 at \*13 n. 12 (E.D.N.Y. Sept.22, 2014) ("The Court notes that courts in this Circuit routinely reject *Apprendi* challenges to New York's persistent violent felony offender statute") (collecting cases).

**4. Ineffective Assistance of Counsel**

To prevail on an ineffectiveness claim, a criminal defendant must show that counsel's performance fell below an objective standard of reasonableness and that the alleged deficiency affected the outcome of the proceeding. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on such a claim in a federal habeas petition is especially difficult where, as here, the state court has rejected the ineffectiveness claim on the merits, because the applicant must overcome the double deference that *Strickland* and AEDPA together require. *See e.g., Cullen v. Pinholster,* —— U.S. ——, ——, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011) ( "review of [state court]'s decision is thus doubly deferential [because] [w]e take a highly deferential look at counsel's performance [under *Strickland* ] through

the deferential lens of § 2254(d)") (internal quotations and citations omitted).

Haynes has not made the factual or legal showing required for the issuance of the writ on the basis of his ineffectiveness claims. He has shown neither that the state court's view of the facts relating to counsel's performance was unreasonable within the meaning of Section 2254(d)(2), nor that the state court's rejection of his ineffectiveness claim was contrary to or an unreasonable application of *Strickland's* standards. Based on the facts, Haynes could not possibly show that any allegedly defective act, omission or decision of his attorney prejudiced the outcome of his criminal case.

**5. Request for a Stay**

By letter dated October 27, 2014, Haynes requests that his petition be stayed again in order to allow him to exhaust additional claims in state court. Additional litigation on this matter, however, would be redundant and futile, so the request is denied.

## CONCLUSION

For the reasons discussed, Ronald Haynes's application for relief under 28 U.S.C. § 2254 is denied as untimely and in any event as lacking in merit. His request for a stay to pursue additional state court litigation is denied as futile and redundant. Because Haynes has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue.

SO ORDERED.

**All Citations**

Slip Copy, 2015 WL 791457

Footnotes

1    The fact that the gun was recovered from the vehicle rather than Haynes's person was apparently the obstacle, leading the court to review with Haynes the concept of constructive possession, but Haynes still did not admit that he placed the gun in the car.

2    The relevant statutory scheme is discussed *infra* at note 5.

3    At sentencing, Philip B. Stone stood in for Robert DiDio, counsel at all prior appearances. Stone told the Court, "I have asked Mr. Haynes if I may stand up on the sentence under the circumstances and he's indicated ... that he agrees that I may do so."The Court made separate inquiry—"Mr. Haynes, you do in fact consent to Mr. Stone standing in as your attorney for the sentence?"—and Haynes replied, "Yes." The "circumstances" are not described.

4    The parties' papers reference a notice of appeal from the May 13, 2004 conviction dated June 3, 2004, and but also a November 16, 2004 motion for permission to file a late notice of appeal that was granted in January 18, 2005. Neither of the notices is part of the state court record but it is not disputed that Haynes's direct appeal was treated as timely.

5    To place these findings in context: at the relevant time, subdivision 4 of section 265 defined, as a category of third degree criminal possession of weapon, the possession of a loaded firearm outside one's home or business, and for sentencing purposes, a that offense was a class D violent felony under the version of N.Y. Penal Law § 70.02(1)(c) then in effect. By contrast, subdivision (1) of section 265.02 defined simple possession of a weapon in the fourth degree and was not a violent felony. *Id.* Subdivision 4—but not the entire section—was repealed November 1, 2006, *see* L.2006 c. 742 S. 8467, and the crime formerly defined there was upgraded from third-degree to second-degree criminal possession of a weapon, *see* N.Y. Penal Law § 265.03(3), and from a D to a C felony. *See* N.Y. Penal Law § 70.02(l)(b).

6    Both November 23, 2005 and November 29, 2005 are cited in various papers as the date of filing, though the documents themselves bear "filed and received" stamps from the Clerk's office of December 9 and December 23, 2005. These minor discrepancies, however, do not affect the timeliness analysis. *See infra* at pp. 12–13.

7    As her June 28, 2006 order explains, Magistrate Judge Bloom denied Haynes's initial application to withdraw out of an abundance of caution. Apparently it was not clear whether he had filed his notice of appeal in the appropriate department of the Appellate Division and Judge Bloom feared Haynes might leave himself without any forum.

8    A minor wrinkle in the record requires brief remark. Two weeks after the Circuit's order transferring the 2013 petition to this Court—but before the issuance of the mandate pursuant to which the Clerk's office reopened the case—Haynes wrote this Court asking that "the Court not consider the petition before the Court as a second successive petition but, view it as the original petition." This Court responded to Haynes by letter advising him to specify whether he wished the Court to review his original, withdrawn petition or a new one, and if the latter, that he should arrange to send it to us; apparently, although the Court's letter *post* dates the Circuit's order transferring the "new" petition, it *pre* dates the mandate and the Court's actual possession of the new petition. Haynes has not responded to the letter but the Court treats the 2013 petition as reflective of Haynes's most current intentions and treats that document as the petition to be adjudicated. In any event, the Court has compared the 2005 and 2013 petitions concludes that they differ only in immaterial ways (format and wording) but not in the essential claims they advance. Finally, although the 2013 petition led to the re-opening of *this* 2005 civil matter rather than, as required by Magistrate Bloom's 2006 order, the opening of a new civil docket, the Court believes that directing the Clerk's office to open a new matter at this point in the proceedings would serve no valid end.

9    Following the reopening of the case and at the Court's request, respondent furnished a supplemental affidavit updating the Court on the litigation Haynes undertook since withdrawing his 2005 petition, along with the records of those state proceedings.

10    In *Wood v. Allen,* 558 U.S. 290, 293, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010), the Supreme Court declined to address the relationship between the standard of section 2254(d)(2)—which requires a petitioner to show that the state court decision was "based on an unreasonable determination of the facts"—and the standard of 2254(e)(1)—which requires a petitioner to overcome a factual finding's presumption of correctness by clear and convincing evidence, and two years later, in *Burt,* the Court again declined to "define[ ] the precise relationship between § 2254(d)(2) and § 2254(e)(1)." 134 S.Ct. at 15. The Second Circuit, likewise, has twice declined to reach the issue. *See Jones v. Murphy,* 694 F.3d 225, 238 n. 4 (2d Cir.2012), *cert. denied,* ––– U.S. ––––, 133 S.Ct. 1247, 185 L.Ed.2d 192 (2013) and *Garguilio v. Heath,* 586 Fed. App'x 764, 766 n. 1 (2d Cir. Oct.10, 2014). The outcome here, however, does not depend on choice of standard.

11    As noted above, Haynes presented this claim on direct appeal. The Appellate Division's rejection of the claim on the ground that Haynes's waiver of his right to appeal barred the sentencing challenge is an independent and adequate state law ground likewise barring federal habeas review except in limited circumstances not present here. *See generally Walker v. Martin,* 562 U.S. 307, 131 S.Ct. 1120, 1127, 179 L.Ed.2d 62 (2011) (habeas court may not review a state prisoner's federal claim denied in state court on an independent and adequate state law ground); *Coleman v. Thompson,* 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (such claims reviewable only if prisoner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," i.e., that he is actually innocent); *Alvarez v. Yelich,* 2012 WL 2952412, at *5 (E.D.N.Y. July 17, 2012) ("Courts in this circuit have consistently held that a petitioner's waiver of the right to appeal is an adequate and independent state ground for denying habeas corpus relief") (collecting cases). Although the Appellate Division's adoption of the *Anders* brief's assertion that the appeal did not present any non-frivolous issues could be interpreted as a rejection of the claim on the merits, the claim is, in any event, a non-starter: the language in the Penal Law on which Haynes relies, which defines a violent felony as one for which a term of imprisonment of one year

or more is authorized, applies only to the branch of the definition addressing convictions, unlike Haynes's, which were obtained *outside* New York State. *See* P.L. § 70.04(1)(b)(i).

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1931229
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Herbert JUNIOR, Petitioner,

v.

WARDEN, Respondent.

No. 13–cv–9164 (NSR)
(PED). | Signed April 28, 2015.

**ORDER ADOPTING REPORT
AND RECOMMENDATION**

NELSON S. ROMÁN, District Judge.

 **\*1** Herbert Junior ("Petitioner"), currently an inmate at the Great Meadow Correctional Facility in Comstock, New York, proceeding *pro se*, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Now pending before the Court is a Report and Recommendation ("R & R") issued by Magistrate Judge Paul E. Davison, pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), recommending that the petition be denied. Petitioner has filed no objections to the R & R. For the following reasons, the Court adopts the R & R, and the petition is DENIED.

**I. BACKGROUND**
Petitioner entered a plea of guilty to one count of murder in the second degree and one count of criminal possession of a weapon in the third degree in New York County Court, Sullivan County, on July 27, 2010. On September 21, 2010, he was sentenced to an indeterminate term of incarceration of 23 years to life, as a second felony offender. The Court presumes familiarity with the factual and procedural background of this case, including the underlying criminal proceedings and Petitioner's appellate challenges to his conviction. Further details, can be found in the R & R, which this Court adopts.

Petitioner timely filed the instant Petition for a Writ of Habeas Corpus on or about December 23, 2013. He seeks habeas relief on the ground that his confession was not voluntarily given.

**II. STANDARDS OF REVIEW**

*A. Habeas Petition Reviewing a State Court Decision*
"Habeas review is an extraordinary remedy," *Bousley v. United States,* 523 U.S. 614, 621 (1998). When a claim has been adjudicated on the merits in a state court proceeding, a prisoner seeking habeas relief must establish that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2); *Cousin v. Bennett,* 511 F.3d 334, 337 (2d Cir.2008). A state court's findings of fact are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Nelson v. Walker,* 121 F.3d 828, 833 (2d Cir.1997).

*B. Magistrate Judge's Report and Recommendation*
A magistrate judge may "hear a pretrial matter [that is] dispositive of a claim or defense" if so designated by a district court. Fed.R.Civ.P. 72(b)(1); *accord* 28 U.S.C. § 636(b)(1) (B). In such a case, the magistrate judge "must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed.R.Civ.P. 72(b)(1); *accord* 28 U.S.C. § 636(b)(1). Where a magistrate judge issues a report and recommendation,

> [w]ithin fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings or recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

 **\*2** 28 U.S.C. § 636(b); *accord* Fed.R.Civ.P. 72(b)(2), (3). However, " '[t]o accept the report and recommendation of a magistrate, to which *no timely objection* has been made, a district court need only satisfy itself that there is *no clear error* on the face of the record.' " *Wilds v. United Parcel Sev., Inc.,* 262 F.Supp.2d 163, 169 (S.D.N.Y.2003) (emphasis

added) (quoting *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985); *accord Feehan v. Feehan,* No. 09 Civ. 7016(DAB), 2011 WL 497776, at *1 (S.D.N.Y. Feb. 10, 2011); *see also*Fed.R.Civ.P. 72 advisory committee note (1983 Addition, Subdivision (b)) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

**III. DISCUSSION**

Here, the R & R was issued on March 5, 2015, and the deadline for filing objections was March 23. Since Petitioner failed to file any objections, the Court has reviewed Magistrate Judge Davison's R & R for clear error and found none. It is clear from the record that Petitioner's confession was found to be voluntary and admissible by the state courts and that Petitioner waived his right to appeal when he entered into the plea agreement. This waiver of appeal provides an independent and adequate state procedural bar to habeas relief.

**IV. CONCLUSION**

For these reasons, the Court adopts Magistrate Judge Davison's R & R in its entirety. The petition for a writ of habeas corpus is therefore denied. The Clerk of Court is directed to enter judgment accordingly and close this case.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See*28 U.S.C. § 2253(c)(2); *Love v. McCray,* 413 F.3d 192, 195 (2d Cir.2005); *Lozada v. United States,* 107 F.3d 1011, 1017 (2d Cir.1997), *abrogated on other grounds by*United States v. Perez, 129 F.3d 225, 259–60 (2d Cir.1997). The Court certifies pursuant to 18 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purposes of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED:

*REPORT AND RECOMMENDATION*

PAUL E. DAVISON, United States Magistrate Judge.

TO THE HONORABLE NELSON STEPHEN ROMÁN, United States District Judge:

**I. INTRODUCTION**

Petitioner Herbert Junior ("petitioner" or "defendant"), acting pro se, seeks a writ of habeas corpus with respect to his guilty plea and conviction of murder in the second degree and one count of criminal possession of a weapon in the third degree. Petitioner fatally stabbed Ashley Osbourne at her home in the Town of Fallsburgh, Sullivan County. New York and thereafter made statements and a confession concerning the incident to police.

Presently before this Court is petitioner's *prose* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This petition is before me pursuant to an Order of Reference dated February 26, 2014. For the reasons set forth below. I respectfully recommend that Your Honor deny the petition in its entirety.

**II. BACKGROUND** [1]

**A.** *Procedural History*
**\*3** On December 30, 2009 a Sullivan County Grand Jury returned an indictment charging petitioner with murder in the second degree (N.Y. Penal Law § 125.25) and criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02). A special information also charged defendant with having been previously convicted of criminal sale of a controlled substance in the third degree (N.Y. Penal Law § 220.39) on August 27, 2003 having been sentenced to an indeterminate term of 2 1/3 to 7 years incarceration. On December 31, 2009 petitioner was arraigned on the indictment and pled not guilty. On March 31, 2010 the Sullivan County Grand Jury returned a superceding indictment charging defendant with murder in the first degree (N.Y. Penal Law § 125.27), criminal sexual act in the first degree (N.Y. Penal Law § 130.50). murder in the second degree (N.Y. Penal Law § 125.25), and criminal possession of a weapon in the third degree (N.Y. Penal § 265.02). Again, a special information also charged defendant with having been previously convicted of criminal sale of a controlled substance in the third degree (N.Y. Penal Law § 220.39) on August 27, 2003 having been sentenced to an indeterminate term of 2 1/3 to 7 years. On April 1, 2010 Petitioner was arraigned on the superseding indictment and pled not guilty to all charges.

A *Huntley* hearing was held on May 17 and May 20, 2010 and a *Mapp* hearing was held on June 8.2010. Following the conclusion of these hearings, the court orally held that all statements made by the defendant were admissible and all evidence seized pursuant to search warrants were also admissible. On June 15, 2010 a *Wade* hearing was held and the court found that there were no impressible identification procedures used.

The District Attorney and petitioner negotiated a plea, which included the condition that defendant waive his right to appeal from any of the orders of the court, including but not limited to, the *Huntley, Mapp,* and *Wade* decisions, all suppression issues, the voluntariness of his statements, and his right to file a habeas corpus petition. On July 27, 2010 petitioner pled guilty to murder in the second degree (reduced from murder in the first degree) and one count of criminal possession of a weapon in the third degree. In accordance with the plea agreement, petitioner was sentenced on September 21, 2010 to an indeterminate term of incarceration of 23 years to life, as a second felony offender. Petitioner is currently incarcerated at Great Meadow Correctional Facility in Comstock, New York.

**B. *Huntley* Hearing**
On May 17 and May 20, 2010 a *Huntley* hearing was held to assess the voluntariness of petitioner's statements made to police the night of October 10, 2009 and statements made the following day of October 11, 2009. In brief, the evidence at the hearing established the following facts.

On October 10, 2009 at approximately 10:30 p.m., Investigator Fiordaliso and Investigator Nicholas went to petitioner's apartment to ask him about a fight that occurred the previous night. Petitioner agreed to be brought down to the Village of Monticello Police

 **\*4** Department for further conversation. Investigator Fiordaliso advised petitioner of his *Miranda* rights, which petitioner waived. Initially they discussed the fight which occurred the previous night and then began to speak about the murder of Ashley Osbourne.

Petitioner maintained he had met the victim a few weeks prior while at Bum and Kel's, a bar in Loch Sheldrake. Petitioner stated the victim was sick and wanted heroin. He stated that the victim did not enter the bar but rather left with two Hispanic males and petitioner did not know what happened to her after that. During the hearing the

investigators contended that petitioner was free to leave at this point of their questioning, was provided a drink, was able to make a phone call to his wife, and was given cigarettes to smoke.

At approximately 4:38 a.m. petitioner was asked, and he agreed, to submit to a polygraph examination because of several discrepancies in his statements. The investigators drove petitioner to the New York State Police barracks in Liberty. On the way, the investigators provided petitioner with food from McDonald's, cigarettes, and petitioner was not restrained nor questioned in any way. Once at the barracks, the investigators gave petitioner a blanket, additional cigarettes, and allowed petitioner to sleep.

At approximately 10:36 a.m. petitioner began to confess to killing the victim. Petitioner stated he was at the victims residence, they were both naked, and he wanted oral sex. However, he stated the victim did not want to give him oral sex but rather wanted to know if he would provide her with heroin after having sex. Petitioner stated the victim became irate and stabbed him in his leg with a small knife. As petitioner was being attacked he was able to get the knife away from her and then stabbed the victim in the eye. He began wailing and hacking her. hit her with a mirror, became enraged and angry, and stuck the victim in the back of the neck with a screwdriver. Petitioner made these statements at approximately 11:19 a.m. The investigators gave petitioner lunch after he made the above statements. The investigator again advised petitioner of his *Miranda* rights, which he once again waived. Petitioner memorialized his statements on audio tape.

At the conclusion of the hearing the court orally concluded that petitioner's statements were voluntary and admissible.

THE COURT: ... the State Police, in this case, took every effort to make sure that Kato, now known as the defendant herein. "Mr. Herbert Junior." was not taken advantage by sleep deprivation ... by food deprivation or water deprivation for over 13 hours ... took every effort possible to make sure that Kato, now known as Mr. Junior, was refreshed and comfortable for his further interviews with the police ... defendant was not being physically subjected to any type of conditions that might affect his knowing, intelligent and voluntary waivers of his rights, any physical condition that might distort his memory ...

 **\*5** THE COURT: The interview process continues, the defendant is not free to go. statements are taken from

him, the exhibits offered by the People are admitted into evidence, for the purposes of the *Huntley* hearing, they are admissible, the court finds they are admissible. The statements taken by the defendant were not taken in violation of any of his rights, *Miranda* or otherwise. They were not the product of police coercion. They were not the product of any physical or psychological depravation of this defendant.

(ST 274–281).

### C. *Plea Proceeding, Execution of Waiver of Right to Appeal, and Sentencing*

After the court rendered its decisions with regard to the pretrial hearings, the District

Attorney and petitioner negotiated a plea agreement. On July 27, 2010 petitioner pled guilty to murder in the second degree (reduced from murder in the first degree) and one count of criminal possession of a weapon in the third degree. During his plea allocution, petitioner explicitly acknowledged that he had agreed to waive any appeals in conjunction with his guilty plea. Petitioner executed, in open court, a Waiver of Right to Appeal.

> THE COURT: Okay. Do you understand by this plea arrangement here today, this plea agreement, that you are avoiding a sentence of life without parole?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. And that's one of the major things you had in mind, accepting this plea bargain, is that correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And are you satisfied with the legal advice that Mr. Proyect has given you with respect to the case, the law, the plea bargain and the waiver of appeal?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that this plea bargain also includes a waiver of appeal, that the waiver of appeal means separately and distinctly that you are giving up your rights to appeal your conviction, your sentence, any pretrial rulings, anything in this case, to any court whatsoever, Federal or State. Do you understand that?
>
> THE DEFENDANT: Yes.

> THE COURT: And that is part of your plea bargain just as the life without parole is being given up, you're also—the People are giving that up. you're giving up your rights to an appeal, right?
>
> THE DEFENDANT: Yes
>
> THE COURT: Okay. Is anyone forcing, threatening or coercing you in any way into giving up all your rights to a jury trial, to the appeal process or anything like that?
>
> THE DEFENDANT: No.
>
> THE COURT: Have any promises been made to you in exchange for a waiver of all those rights including your rights to an appeal other than the promise that there would be a sentence of no more than 23 to life? Any other promises made to you?
>
> THE DEFENDANT: No promises.
>
> THE COURT: And did you in fact sign the written waiver of appeal here in open court this morning in the presence of your attorney, Mr. Proyect?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. The record will reflect that the defendant did in fact sign and he does admit that he signed the waiver of appeal, and the Court too will witness the waiver of appeal as being a knowing—knowing, intelligent and voluntary waiver of appeal.
>
> **\*6** THE COURT: Now. do you have any questions now that you'd like to ask Mr. Proyect regarding anything that's important to you before I ask you how do you plead to the reduced charge of Murder in the Second Degree and Count 5. Possession of a Weapon in the Third Degree, any questions of Mr. Proyect?
>
> (The DEFENDANT shakes head negatively).

(ST, July 27, 2010. pp. 7–9).

In pertinent part, the waiver form executed by petitioner provided as follows:

> I, the undersigned defendant, in consideration of and as part of the favorable plea and sentencing agreement being entered into, hereby acknowledge that I have been advised of, and waive, all of the rights below ...

I acknowledge that I have been advised of, and waive, my right to appeal from the judgment of conviction or sentence ...

In addition to the above issues, my waiver also includes, but is not limited to:

(1) the form, content and legal sufficiency of the indictment(s)/superior court information;

(2) any decision and/or order of the Court on any motions made, or pending;

(3) the voluntariness of any statements made by myself or the constitutionality of any identification procedure conducted:

(4) the sufficiency of the plea allocution:

(5) any other matters which I may have an appeal as of right or otherwise in any State or Federal Court or may collaterally attack in any State or Federal Court, specifically, that I have been advised of an waiver my right to file motions to vacate my conviction and to set aside my sentence under CPL Article 440 and 330, my rights to file habeas corpus petitions to challenge my conviction in state and federal court, Writs of Coram Nobis and any right I may have to file any motions or application attacking my conviction in state or federal court ...

I waive all these rights voluntarily, knowingly and intelligently and without coercion by anyone, after being duly informed of them by my attorney standing beside me. I have had a full opportunity to discuss these matters with my attorney and to raise them with the court, and any questions I may have have been answered to my satisfaction. I am waiving my right to appeal to mark the end of my case.

(SRI 54–155).

On September 21, 2010, in accordance with his plea agreement, the court sentenced petitioner, as a second felony offender, to an indeterminate term of 23 years to life.

**D). *Direct Appeal***

On or about September 21, 2010, petitioner (by and through counsel) timely appealed his conviction to the New York Supreme Court. Appellate Division. Third Judicial Department. (SR018). The Appellate Court held that review of the County Court's suppression ruling was precluded by defendant's waiver of his right to appeal. *People v. Junior,* 947 N.Y.S.2d 919 (2012). The court concluded that defendant's waiver of the right to appeal was knowing, voluntary and intelligent. *Id.* The court further determined that the waiver was made with the assistance of counsel and it was distinguished from other rights that defendant forfeited upon pleading guilty and that preplea rulings were specifically included as part of the waiver. *Id.*

**\*7** On or about August 11, 2012 petitioner's counsel submitted a letter requesting leave to appeal to the New York Court of Appeals. (SR215). On October 30, 2012 the Court of Appeals denied petitioner's request for leave to appeal. *People v. Junior,* 955 N.Y.S.2d 559 (2012).

**E. *The Instant Habeas Petition***

Petitioner timely [2] filed the instant Petition for a Writ of Habeas Corpus on or about December 23, 2013, [3] wherein he seeks habeas review of the claim he raised on direct appeal.

## III. DISCUSSION

**A. *Applicable Law***

"Habeas review is an extraordinary remedy."*Bousley v. United States,* 523 U.S. 614,

621 (1998) (*citing Reed v. Farley,* 512 U.S. 339. 354 (1994)). Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d). The procedural and substantive standards applicable to habeas review, which were substantially modified by the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are summarized below.

**1. *Timeliness***

AEDPA established a one-year statute of limitations for the filing of a habeas corpus petition seeking relief from a state court conviction. *See* 28 U.S.C. § 2244(d)(1). The one-year limitation period runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

AEDPA's statute of limitations is tolled during the pendency of a properly filed application for state post-conviction relief, or other collateral review, of a claim raised in the petition. See id. § 2244(d)(2). The one-year limitation period is also subject to equitable tolling, which is warranted when a petitioner has shown " '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida,* 130 S.Ct. 2549, 2562 (2010) (quoting *Pace v. DiGuglielmo,* 544 U.S. 408. 418 (2005)). In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) (per curiam) (internal quotation marks omitted), which have "prevented [the petitioner] from filing his petition on time."*Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir.2000) (internal quotation marks and emphasis omitted). The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances."*Id.*

## 2. *Exhaustion*

 **\*8** A federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court. *O'Sullivan v. Boerckel,* 526 U.S. 838. 842 (1999); *see*28 U.S.C. § 2254(b) (1) ("[a]n application for a writ of habeas

corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the Slate; or (B) (1) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); *id.* § 2255(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claims.*Rose v. Lundy,* 455 U.S. 509, 518–19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners" federal rights." *Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted)."Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims."*Petrucelli v. Coombe,* 735 F.2d 684, 687 (2d Cir.1984) (citing *Smith v. Phillips,* 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition."*Galdamez v. Keane,* 394 F.3d 68, 73 (2d Cir.2005) (internal citation omitted). The Second Circuit has delineated a number of ways in which a petitioner may fairly apprise the state court of the constitutional nature of his claim, even without citing chapter and verse of the Constitution, including: "a) reliance on pertinent federal cases employing constitutional analysis, b) reliance on state cases employing constitutional analysis in like fact situations, c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."*Carvajal v. Artus,* 633 F.3d 95, 104 (2d Cir.2011) (internal quotation marks and citation omitted). A habeas petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000).

**\*9** However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997) (internal quotation omitted)."In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991). Such a procedurally barred claim may be deemed exhausted by a federal habeas court. *See, e.g., Reyes,* 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," *Harris v. Reed,* 489 U.S. 255, 262 (1989), or "actual innocence," *Schlup v. Delo,* 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." *Rhines v. Weber,* 544 U.S. 269. 277 (2005): see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Padilla v. Keane,* 331 F.Supp.2d 209. 216 (S.D.N.Y.2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3. *Procedural Default*
Federal habeas corpus review of a state court's denial of a state prisoner's federal constitutional claim is barred if the state court's decision rests on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or show "that failure to consider the claims will result in a fundamental miscarriage of justice." *See Coleman v. Thompson,* 501 U.S. 722, 750 (1991).*See also Lee v. Kemna,* 534 U.S. 362, 375 (2002); *Dunham v. Travis,* 313 F.3d 724, 729 (2d Cir.2002). A procedural ground is "independent" if "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar."*See Harris,* 489 U.S. at 263 (internal quotation marks omitted). A procedural bar is "adequate" if it is "based on a rule that is firmly established and regularly followed by the state in question."*Monroe v. Kuhlman,* 433 F.3d 236, 241 (2d Cir.2006) (internal quotation and citation omitted).

In certain limited circumstances, however, "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.' ' *See Garvey v. Duncan,* 485 F .3d 709. 713–14 (2d Cir.2007) (citing *Lee,* 534 U.S. at 376). The Second Circuit has set forth the following "guideposts" for evaluating the adequacy of the state procedural bar in the context of "the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances":

> **\*10** (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and. therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto v. Herbert,* 331 F.3d 217. 240 (2d Cir.2003) (quoting *Lee,* 534 U.S. at 381–85).

### 4. *Standard of Review*
"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."*Estelle v. McGuire,* 502 U.S. 62, 68 (1991).*See* 28 U.S.C. § 2254(a). When reviewing petitions filed subsequent to AEDPA's effective date, a federal court may not grant habeas relief unless the petitioner establishes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."28 U.S.C. § 2254(d)(1), (d)(2). The AEDPA deferential standard of review will be triggered if the petitioner's claim "was adjudicated on the merits in State court proceedings."28 U.S.C. § 2254(d); *see Bell v.*

*Miller,* 500 F.3d 149, 154–55 (2d Cir.2007)."For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits .' and (2) reduces its disposition to judgment."*Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001).

A state court's decision is "contrary to" clearly established Federal law if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court of the United States]."*Williams v. Taylor,* 529 U.S. 362, 405 (2000). As to the "unreasonable application" prong, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant statecourt decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."*Id.* at 411. A state court decision involves an "unreasonable application" of Federal Supreme Court precedent if (1) "the state court identifies the correct legal rule from [Federal Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or (2) "the state court either unreasonably extends a legal principle from [Federal Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."*Id.* at 407. However, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."*Harrington v. Richter,* 131 S.Ct. 770, 786 (2011) (citation omitted). In other words, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."*Id.* at 786–87.

**\*11** Finally, under AEDPA. the factual findings of state courts are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1); *see also Nelson v. Walker,* 121 F.3d 828, 833 (2d Cir.1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(l).

**B.** *Petitioner's Involuntary Confession Claim is Procedurally Barred*
Petitioner seeks habeas relief on the ground that his confession was not voluntarily given. As discussed above, petitioner initially challenged the voluntariness and admissibility of his confession at the pre-trial hearing. The trial court found his confession was obtained voluntarily and denied his motion to suppress any statements. Petitioner thereafter accepted a plea agreement, waiving his appeal rights specifically including his right to challenge any pre-trial hearing decisions and his right to file a habeas corpus petition. Petitioner then presented his challenge to the voluntariness of his statement to the Appellate Division, Third Department. As discussed above, the Appellate Division expressly held that review of the County Court's suppression ruling was precluded by defendant's waiver of his right to appeal. *People v. Junior,* 947 N.Y.S.2d 919 (2012). The New York Court of Appeals denied leave to appeal. *People v. Junior,* 955 N.Y.S.2d 559 (2012).

A state court's reliance upon a defendant's affirmative waiver of his right to appeal constitutes an independent and adequate state procedural bar upon which to deny a claim for habeas relief. *See Haynes v. New York,* No. 10–CV–5867, 2012 WL 6675121, at \*8 (E.D.N.Y. Dec. 21, 2012) (citing *Colon v. New York,* No. 08 Civ. 0170 DC, 2009 WL 11 16478. at \*4 (S.D.N.Y. Apr. 27, 2009) and *Gordon v. Poole,* No. 07–CV–474, 2008 WL 495510, at \*3 (W.D.N.Y. Feb. 21, 2008)). [4] *See also Riley v. Goord,* No. 02 Civ 5884 DC, 2003 WL 22966278. at \*6 (S.D.N.Y. Dec. 16, 2003) (denying confrontation and due process claims on grounds that defendant waived his right to appeal in accepting his plea agreement).

However, the state court's enforcement of an appeal waiver constitutes an "adequate" state procedural bar only if it is "based on a rule that is firmly established and regularly followed by the state in question."*Monroe,* 433 F.3d at 241 (internal quotation and citation omitted). Additionally, pursuant to the second *Cotto* guidepost, the court must assess whether New York state case law requires application of the procedural bar "in the specific circumstances presented." *Cotto,* 331 F.3d at 240.

Under New York law. an order denying a motion to suppress evidence may be reviewed upon an appeal from an ensuing judgment of conviction notwithstanding the fact that such judgment was entered upon a plea of guilty. N.Y.Crim. P.L. §

710.70. However, this right can be waived pursuant to a plea agreement. The New York Court of Appeals has expressly held that where a plea is voluntarily entered into, with full comprehension on defendant's part of both the plea and the associated condition, a defendant may be held to the waiver of his right to appeal from the denial of his suppression motion. *People v. Williams,* 36 N.Y.2d 829. 830 (1975).*See also People v. Kent,* 94 N.Y.2d 831 (1999).

**\*12** Here, after the trial court found petitioner's confession to be voluntary and admissible, petitioner entered into a plea agreement and waived his right to appeal. Petitioner has not challenged the voluntariness of his plea or waiver but rather only challenges the underlying voluntariness of his confession. Because New York State has firmly established and regularly followed the rule that plea agreements containing waivers of appeal rights will be enforced, petitioner's wavier provides an independent and adequate state procedural bar upon which to deny habeas relief.

Petitioner can overcome the procedural bar by demonstrating cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or by showing that failure to consider the claims will result in a fundamental miscarriage of justice. However, petitioner has failed to make any such showing.

## IV. CONCLUSION

For the reasons set forth above. I conclude—and respectfully recommend that Your Honor should conclude—that the instant petition for a writ of habeas corpus should be **DENIED.**Further, because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. *See*28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

Filed March 5, 2015.

**All Citations**

Slip Copy, 2015 WL 1931229

Footnotes

1 Unless otherwise indicated, the information within this section is gleaned from the instant petition ("Pet."; "Dkt. 1"), the State Court Record ("SR"; "Dkt. 9") and the State Court Transcript ("ST"; "Dkt. 10").

2 *See*28 U.S.C. § 2244(d)(1).

3 The date on which petitioner placed the instant Petition in the prison mailing system. *See Noble v. Kelly,* 246 F. d 93, 97 (2d Cir.2001) (extending the "mailbox rule." *Houston v. Lack,* 487 U.S. 266 (1988), to *pro se* petitions for habeas relief).

4 Copies of all unpublished opinions and decisions available only in electronic form cited herein have been mailed to petitioner. *See Lebron v. Sanders,* 557 F.3d 76, 78 (2d Cir.2009).

McGrail v. Superintendent, Collins Corr. Facility, Not Reported in F.Supp.2d (2011)

2011 WL 7090716

2011 WL 7090716
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Richard McGRAIL, Petitioner,
v.
SUPERINTENDENT, COLLINS
CORR. FACILITY, Respondent.

Civ. No. 9:08−CV−111 (GLS/
RFT). | Nov. 14, 2011.

**Attorneys and Law Firms**

Richard McGrail, Albion, NY, pro se.

Hon. Eric T. Schneiderman, New York State Attorney General, Thomas B. Litsky, Esq., Assistant Attorney General, of Counsel, New York, NY, for Respondent.

*REPORT–RECOMMENDATION and ORDER*

RANDOLPH F. TREECE, United States Magistrate Judge.

**\*1** Petitioner Richard McGrail, acting *pro se,* commenced this action seeking *habeas corpus* relief pursuant to 28 U.S.C. § 2254, alleging that his present confinement in state custody is in violation of his federal constitutional rights. McGrail asserts the following grounds in support of his Petition: (1) his guilty plea was involuntary; (2) he received ineffective assistance of trial counsel; and (3) his confession was obtained in violation of his rights under the Fourth Amendment, his rights against self-incrimination, and was the product of coercion. Dkt. No. 1, Pet. For the reasons set forth below, this Court recommends that McGrail's Petition be **denied.**

**I. FACTUAL BACKGROUND
AND PROCEDURAL HISTORY**

On July 8, 2005, J.M.,[1] Petitioner's eight-year-old niece, told a police investigator that, on July 2, 2005, Petitioner asked her if she "wanted to learn something," pulled down her pants, and licked her vagina. *See* State Court R. [hereinafter "R."], Ex. B, Dep. of Detective Frederick E. Cornelius, dated July 14, 2005. Petitioner was thereafter arrested and signed a statement acknowledging his oral contact with J.M.'s vagina. *See* R., Ex. B, Pet'r Statement to Police, dated July 8, 2005. On September 6, 2005, a Cayuga County Grand Jury indicted Petitioner, charging him with Criminal Sexual Act in the First Degree (N.Y. PENAL LAW § 130.50(3)), Sexual Abuse in the First Degree (N.Y. PENAL LAW § 130.65(3)), Endangering the Welfare of a Child (N.Y. PENAL LAW § 260.10), and Making a Punishable False Written Statement (N.Y. PENAL LAW § 210.45). R., Ex. B, Indictment.

On November 10, 2005, Petitioner and his attorney, Samuel M. Tamburo, Esq., appeared before the trial court and stated that Petitioner wanted to plead guilty to the charge of Criminal Sexual Act in the First Degree, in full satisfaction of the Indictment. R., Ex. M, Plea Hr'g Tr., dated Nov. 10, 2005, at pp. 5–14.During the court's colloquy, Petitioner indicated that his plea was voluntary, he was satisfied by his defense attorney's services, and he understood the nature and consequences of his plea, including that he was waiving a multitude of rights. *Id.* However, Petitioner told the court that he had been "drinking [on July 2, 2005] and [does not] remember anything that happened that day."*Id.* at p. 10.Nonetheless, Petitioner indicated that he would plead guilty because, even though he had no recollection of the event, he was "convinced that the proof is sufficient to convict [him] and ... [he does] not dispute [the] allegations[.]"*Id.* at pp. 13–14.Accordingly, the court accepted Petitioner's *Alford* plea.[2] *Id.* at p. 14.After reviewing the pre-sentence report, hearing from the prosecution and the defense, and considering Petitioner's plea, the court sentenced Petitioner to a determinate sentence of seven and one-half years incarceration, with five years post-release supervision. R., Ex. N, Sentencing Hr'g Tr., dated Jan. 12, 2006, at pp. 8–9.

**\*2** On or about March 1, 2007, Petitioner and counsel, Charles A. Marangola, Esq., filed an appeal arguing that his *Alford* plea was insufficient because he failed to specifically waive his right to assert an intoxication defense at trial, and that the imposed sentence was harsh and excessive. R., Ex. A, Pet'r's Appellate Br. The New York State Appellate Division, Fourth Department, unanimously denied Petitioner's appeal and affirmed his conviction. On July 9, 2007, Petitioner sought leave to appeal to the New York State Court of Appeals; that application was denied on August 30, 2007. R., Exs. F & G.

On December 12, 2007, McGrail filed a *Habeas Corpus* Petition pursuant to 28 U.S.C. § 2254. Respondent concedes that this Petition has been timely made.Dkt. No. 27, Resp't

McGrail v. Superintendent, Collins Corr. Facility, Not Reported in F.Supp.2d (2011)

2011 WL 7090716

Mem. of Law, at p. 14.On March 28, 2008, we found that McGrail's Petition contained both exhausted and non-exhausted issues, and directed McGrail to notify this Court as to whether he was seeking a stay of the Petition to pursue available state court avenues. Dkt. No. 5, Order. Petitioner subsequently filed his request for a stay of the Petition, Dkt. No. 7, which this Court granted on June 11, 2008, Dkt. No. 8. Because Petitioner failed to comply with the mandates detailed in the June 11, 2008 Order, specifically that he advise the Court of the status of his state court proceedings every sixty (60) days, we lifted the stay on his Petition on May 22, 2009. Dkt. No. 17.

Meanwhile, on or about May 15, 2008, Petitioner filed a *pro se* motion to vacate the judgment of conviction, pursuant to New York Criminal Procedure Law ("C.P.L") § 440.10. R., Ex. H, Pet'r 440 Mot. In his motion, Petitioner claimed the following: 1) his arrest and subsequent inculpatory statement made to the police were the product of an illegal violation of his rights; 2) his plea was involuntary; and 3) his trial attorney was ineffective. *Id.* The Cayuga County court denied Petitioner's motion on September 12, 2008. R., Ex. J, Order on 440 Mot. The court found that McGrail's *Alford* plea was a voluntary and intelligent choice, and that a conviction "based on such has the same force and effect as one made after a guilty plea and full allocution."*Id.* at p. 1. Therefore, the court concluded, by virtue of his valid guilty plea, Petitioner waived his objections concerning his confession and any other "non-jurisdictional objections including, among others, any grand jury procedural irregularities and any claims of innocence[.]"*Id.*The court additionally found that Petitioner's ineffective assistance of counsel claim involved facts that are contained in the record, such that Petitioner could have raised it on direct appeal, but failed to do so. *Id.* at p. 2 (citing C.P.L. § 440.10(2)(c)). [3] Petitioner did not appeal this decision to the Appellate Division.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

**\*3** 1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello,* 460 F.3d 238, 242 (2d Cir.2006).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997); *Rivera v. New York,* 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003); *see also Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."28 U .S.C. § 2254(e)(1); *see also DeBerry v. Portuondo,* 403 F.3d 57, 66 (2d Cir.2005); *Boyette v. LeFevre,* 246 F.3d 76, 88 (2d Cir.2001) (quoting § 2254(e) (1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz,* 237 F.3d 147, 152 (2d Cir.2001) (citing *Williams* and *Francis S. v. Stone,* 221 F.3d 100, 108–09 (2d Cir.2000)).

McGrail v. Superintendent, Collins Corr. Facility, Not Reported in F.Supp.2d (2011)

2011 WL 7090716

## B. Exhaustion

Prior to seeking federal *habeas* relief, a petitioner must exhaust available state remedies, or demonstrate that there is either an absence of available state remedies or that such remedies cannot adequately protect petitioner's rights. [4] *Aparicio v. Artuz,* 269 F.3d 78, 89 (2d Cir.2001) (quoting 28 U.S.C. § 2254(b) (1)); *Ellman v. Davis,* 42 F.3d 144, 147 (2d Cir.1994). This exhaustion requirement recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions."*Daye v. Attorney Gen. of New York,* 696 F.2d 186, 191 (2d Cir.1982). Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law. *Id.*"The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different than that asserted in state court."*Glover v. Bennett,* 1998 WL 278272, at \*1 (N.D.N.Y. May 21, 1998) (quoting *Daye v. Attorney Gen. of New York,* 696 F.2d at 192). [5]

**\*4** In the present case, Petitioner has not properly exhausted any of his claims. His claims that his guilty plea was involuntary, defense counsel was ineffective, and that his confession was obtained in violation of his constitutional rights, were arguably presented to the state courts only in his 440 motion. Petitioner, however, never appealed the county court's decision regarding these claims. Thus, the claims Petitioner now raises in the instant *Habeas Corpus* Petition have not been presented to the highest state court from which relief could be granted, and therefore Petitioner did not exhaust his state remedies. In fact, in his Petition, McGrail readily acknowledges that the grounds he raises in support of his instant request for relief were not fully presented to the state court. *See* Pet. at ¶ 21. [6] While Petitioner had not filed his 440 motion at that point, he subsequently failed to exhaust his available state court, despite this Court's grant of a stay on the proceedings for that purpose. *See* Dkt. Nos. 5, 8, & 17.

Although a federal court may not grant a writ of *habeas corpus* on a claim that has not been exhausted, the court has the discretion to hear the merits of the asserted claims and deny such a petition. *See* 28 U.S.C. § 2254(b)(2); *see also Marziale v. Walker,* 2000 WL 33767753, at \*3 (N.D.N.Y. May 4, 2000). Additionally, the Supreme Court has held that

when a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," federal courts on *habeas* review must also deem the claim procedurally defaulted. *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (quoted in *Sweet v. Bennett,* 353 F.3d 135, 139 (2d Cir.2003)). In other words, "[a]n unexhausted claim that can no longer be exhausted is deemed procedurally defaulted." *Andrews v. Downstate Corr. Facility,* 2009 WL 3587280, at \*2 (E.D.N.Y. Oct.27, 2009) (citing *Aparicio v. Artuz,* 269 F.3d at 90).

This Court finds that Petitioner's claims could have been raised in an appeal of the county court's decision on his 440 motion to the Appellate Division. Petitioner cannot now file an appeal of the denial of his 440 motion because he failed to do so within thirty (30) days from the county court's decision, as outlined by C.P.L. § 460.10(4)(a), and his motion is thus precluded from further consideration in the New York courts. *See, e.g., Morales v. Greiner,* 2005 WL 1009545, at \*6 (E.D.N.Y. May 2, 2005). He also cannot file a second direct appeal to the judgment of conviction, because a criminal defendant is "entitled to one (and only one) appeal."*Aparicio v. Artuz,* 269 F.3d at 91. Therefore, the entirety of Petitioner's claims are deemed exhausted but procedurally defaulted for purposes of his *habeas* application. *See Spence v. Superintendent Great Meadow Corr. Facility,* 219 F.3d 162, 170 (2d Cir.2000).

**\*5** When a claim in a federal *habeas* petition is procedurally barred, it cannot be heard by the federal reviewing court "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." [7] *Coleman v. Thompson,* 501 U.S. at 750; *Ramirez v. Attorney Gen. of State of New York,* 280 F.3d 87, 94 (2d Cir.2001); *Fama v. Comm'r of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir.2000) (citing *Coleman); King v. Greiner,* 210 F.Supp.2d 177, 182 (E.D.N.Y.2002) (stating the court is precluded from considering unexhausted claims "unless petitioner can establish cause to excuse the default and prejudice, or actual innocence").

To establish legal cause for his or her procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with New York's procedural rules. *Murray v. Carrier,* 477 U.S. 478, 488

McGrail v. Superintendent, Collins Corr. Facility, Not Reported in F.Supp.2d (2011)

2011 WL 7090716

(1986); *Restrepo v. Kelly,* 178 F.3d 634, 638 (2d Cir.1999). Examples of external factors include interference by officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial nor on direct appeal. *Murray v. Carrier,* 477 U.S. at 488. Here, Petitioner has not demonstrated nor stated any fact that would support a finding of legal cause for his procedural default sufficient to meet this standard. In his Petition, McGrail asserts that he did not present such claims to the state court due to "special circumstances involving [the] court of conviction and its actions[ ]" and that his failure to pursue such appeal falls under the "exceptions provided for in 28 U.S.C. § 2254(b)(i) and (ii)." [8] Pet. at ¶ 21. Conversely, Petitioner also espouses that his failure to raise "any of the grounds [raised now in his Petition] in a prior proceeding" was due to his ignorance of the existence of such grounds and because of the ineffective assistance of counsel. *Id.* at ¶ 23.However, besides these alternative and ambiguous conclusory statements, Petitioner has offered no facts nor explanations that suggest cause such that his procedural default should be excused. While McGrail alleges ineffective assistance of counsel in his *Habeas* Petition, it is unclear to this Court how his complaints about his trial counsel's performance could be imputed to excuse his failure to exhaust the instant claims in state court appeals, especially considering that Petitioner secured alternative private counsel for his direct appeal. This Court granted McGrail a stay on his Petition explicitly for the purpose of presenting his unexhausted issues to the New York State courts. *See* Dkt. Nos. 5 & 8. His failure to do so, despite this Court's guidance, urging, and *sua sponte* grants of extensions of time, is without justification. *See* Dkt. Nos. 8, Order, dated June 11, 2008; Text Orders of September 30, 2008, December 24, 2008, & February 24, 2009; 13, Order, dated March 20, 2009; & 17, Order, dated May 22, 2009. Because Petitioner cannot establish cause for his procedural default, this Court need not decide whether he also suffered actual prejudice as to this claim because federal *habeas* relief on the basis of a procedurally defaulted claim is unavailable unless both cause and prejudice are demonstrated. *See, e.g., Stepney v. Lopes,* 760 F.2d 40, 45 (2d Cir.1985); *Pou v. Keane,* 977 F.Supp. 577, 581 (N.D.N.Y.1997) (citing *Stepney* ). Moreover, Petitioner has not established that a fundamental miscarriage of justice would occur if the Court could not adjudicate his *Habeas* Petition such that Petitioner is actually innocent of the crimes he plead guilty to.

**\*6** Where there is no basis in the record for overlooking the procedural default, the barred claims are precluded from

habeas review. Therefore, this Court recommends that the entirety of Petitioner's claims composing his Petition be **denied** as procedurally defaulted. [9]

Furthermore, even if this Court could reach Petitioner's claim that he received ineffective assistance of counsel from his trial attorney, Samuel M. Tamburo, Esq., *see* Pet. at ¶ 22(e), that claim is likewise procedurally barred from review. Federal *habeas* review of a state court conviction is prohibited if a state court rested its judgment on a state law ground "independent of the federal question and adequate to support the judgment."*Coleman v. Thompson,* 501 U.S. at 729 (citations omitted) (noting that federal court resolution of the federal issue would merely be advisory where the state judgment is supported by independent and adequate state grounds); *see also Harris v. Reed,* 489 U.S. 255, 261–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Cotto v. Herbert,* 331 F.3d 217, 238 (2d Cir.2003); *Garcia v. Lewis,* 188 F.3d 71, 76 (2d Cir.1999); *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 126 (2d Cir.1995)."This rule applies whether the state law ground is substantive or procedural."*Coleman v. Thompson,* 501 U.S. at 729 (citation omitted). The independent and adequate state ground doctrine is jurisdictional, thus, if the state court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from considering the merits of the federal claim in a *habeas* petition. *Harris v. Reed,* 489 U.S. at 264 n. 10. This bar on *habeas* review applies even when a state court issues an alternative holding addressing a procedurally defaulted claim on the merits. *See id.; see also Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990) (*per curiam* ) ("[W]e are barred from reaching the merits of [petitioner's] ... federal claims [because the] ... state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.").

The Cayuga County court addressed this claim in the denial of Petitioner's 440 motion. The court found that Petitioner's "claim of ineffective assistance of counsel involve[d] sufficient facts contained in the record [such] that [Petitioner] could have raised [the issue] on direct appeal, but did not," and thus, dismissed the claim pursuant to C.P.L. § 440.10(2)(c).*See* Order on 440 Mot. The Cayuga County court's rejection of Petitioner's claim under 440.10(2)(c) was a clear holding based on state procedural rules independent of any federal question. A procedural bar is adequate for purposes of *habeas* review if it is based on a rule that is " 'firmly established and regularly followed' by the state in

McGrail v. Superintendent, Collins Corr. Facility, Not Reported in F.Supp.2d (2011)

2011 WL 7090716

question."*Garcia v. Lewis,* 188 F.3d at 77 (quoting *Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991)). The rule that a 440 motion to vacate judgment may not be used as a device to take a belated appeal on an issue that appears on the face of the record is firmly established and regularly followed, as shown by relevant case law. *See, e.g., People v. Jackson,* 266 A.D.2d 163, 699 N.Y.S.2d 40, 41 (N.Y.App. Div., 1st Dep't 1999), *leave to appeal denied* 94 N.Y.2d 921, 708 N.Y.S.2d 360, 729 N.E.2d 1159 (N.Y.2000). The purpose of the rule requiring a state court to deny a motion to vacate a judgment where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record "is to prevent [Section] 440.10 from being employed as a substitute for direct appeal when [the] defendant was in a position to raise an issue on appeal ... or could readily have raised it on appeal but failed to do so."*Sweet v. Bennett,* 353 F.3d at 139 (quoting *People v. Cooks,* 67 N.Y.2d 100, 500 N.Y.S.2d 503, 491 N.E.2d 676, 678 (N.Y.1986)). Therefore, because the state law ground relied upon to decide this claim was independent of the federal question and adequate to support the decision of the state court, Petitioner's claim of ineffective assistance of trial is procedurally barred in this Court.

**\*7** Therefore, because Petitioner cannot demonstrate legal cause sufficient to excuse the procedural default of his claim nor establish that a fundamental miscarriage of justice would occur if the Court could not adjudicate his federal claims, as previously examined above, this Court recommends that Petitioner's claim of ineffective assistance of trial counsel likewise be **denied** as procedurally defaulted and barred from federal review.

### C. Guilty Plea

Alternatively, even if Petitioner's claims were not barred from federal review, they are additionally without merit or waived by his guilty plea.

McGrail alleges in his Petition for *habeas* relief that his guilty plea was involuntarily and unlawfully induced. Pet. at ¶ 22(g). Specifically, Petitioner asserts that his plea was not made with an "understanding of the nature [ ] of the charge and consequences of the plea."*Id.*

The Cayuga County court addressed this claim on Petitioner's 440 motion. Noting that the Appellate Division, on Petitioner's direct appeal of his judgment of conviction, found

Petitioner's plea "the product of a voluntary and rational choice," the county court came to the same conclusion and rejected Petitioner's claim, while also stating that "[a]n *Alford* plea is valid so long as it represents a voluntary and intelligent choice."R., Ex. J, Order on 440 Mot. In accordance with the AEDPA, this Court must decide whether that state court determination constituted an unreasonable application of clearly established federal law.

A guilty plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant."*North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). To satisfy due process, a defendant must have the ability to "consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him."*Harris v. Kuhlmann,* 346 F.3d 330, 349–50 (2d Cir.2003) (citing *Cooper v. Oklahoma,* 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996)). Furthermore, there is no "material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt."*North Carolina v. Alford,* 400 U.S. at 37. Thus, an *Alford* plea "is simply a guilty plea, with evidence in the record of guilt, typically accompanied by the defendant's protestation of innocence and his or her unequivocal desire to enter the plea."*Abimbola v. Ashcroft,* 378 F.3d 173, 181 (2d Cir.2004) (quoting *United States v. Mackins,* 218 F.3d 263, 268 (3d Cir.2000)).

In this case, there is no indication in the record that Petitioner's plea was anything less than completely voluntary, knowing, and intelligent. A review of the transcript from the plea hearing reveals that Petitioner was informed and aware of the consequences of his guilty plea. *See* R., Ex. M, Plea Hr'g Tr., dated Nov. 10, 2005. Petitioner told the court that he was satisfied with his attorney's performance, he understood the nature of the charges against him, the consequences of pleading guilty, the rights he was waiving by his plea, and that he was making his plea completely voluntarily. *Id.* at pp. 6–10.Petitioner also stated that he had no physical nor mental disabilities which would interfere with the ability to make a voluntary and intelligent plea, his plea was not made in reliance on any promises or threats, and his plea was not the result of any illegal search, seizure, compulsion, or statement given in violation of his constitutional rights. *Id.* at pp. 7–9.Lastly, when the court asked Petitioner to recount

McGrail v. Superintendent, Collins Corr. Facility, Not Reported in F.Supp.2d (2011)

2011 WL 7090716

the incident and his participation in the offense, Petitioner told the court that he did not remember anything about the day in question because he "was drinking." *Id.* at p. 10.The court explained to Petitioner that voluntary intoxication is "not a defense to any crime in this State. However, where a crime requires an intent, a jury may consider the question of intoxication in determining whether the person had the ability to form the intent to commit the crime in question."*Id.* After Petitioner indicated he still wished to plead guilty, the trial court initiated an *Alford* plea proceeding, wherein the court "may still accept a plea under certain conditions, those conditions being that the Defendant [after] being apprised of what is alleged does not basically dispute what is alleged, although he has no recollection of it ... but that the evidence that has been presented is so compelling that the person is ... willing to enter a plea."*Id.* at p. 11.After continuing the *Alford* plea colloquy with Petitioner and his attorney, including asking the prosecution what they were prepared to prove if the matter went to trial, the court was satisfied that Petitioner was pleading guilty voluntarily and intelligently. *Id.* at pp. 11–14.

**\*8** Thus, Petitioner's unsupported allegation that his guilty plea was not voluntary is not sufficient to warrant *habeas* relief. A criminal defendant's self-inculpatory "[s]olemn declarations in open court carry a strong presumption of verity."*Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Accordingly, such statements "are generally treated as conclusive in the face of the defendant's later attempt to contradict them."*Adames v. United States,* 171 F.3d 728, 731 (2d Cir.1999) (citations omitted). Petitioner has not provided evidence that would justify overlooking his statements under oath that he was choosing to plead guilty of his own accord, and that he understood the nature of the charges agains him and the consequences of his plea. Thus, after a thorough review of the record, we cannot conclude that McGrail's guilty plea was made involuntarily and in violation of his rights to due process as a result. Because, for the above reasons, the New York State courts' determination of the claim was not an unreasonable application of established federal law, we recommend Petitioner's claim be **denied.**

As discussed above, McGrail claims in his *Habeas* Petition that he received ineffective assistance of counsel. *See* Pet. at ¶ 22(e). He does not explicitly spell out what his counsel purportedly did, or failed to do, that resulted in such deficient performance, or how it relates to his guilty plea, but rather attaches to his Petition his Memorandum of Law in Support of

his 440 Motion. *See id.* at Ex. A, pp. 28–35. Even if this claim was not unexhausted or procedurally barred by a state court decision based on an independent and adequate state ground, Petitioner's claim that he received ineffective assistance of counsel is without merit.

To establish ineffective assistance of counsel in violation of the Sixth Amendment, a *habeas* petitioner must show that: 1) his attorney's representation was deficient such that it fell below an objective standard of reasonableness measured by the prevailing professional norms; and 2) this deficient performance prejudiced his defense such that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Bell v. Cone,* 535 U.S. 685, 695, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Strickland v. Washington,* 466 U.S. 668, 688 & 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *see also Aeid v. Bennett,* 296 F.3d 58, 62–63 (2d Cir.2002); *Brown v. Artuz,* 124 F.3d 73, 79–80 (2d Cir.1997); *Rattray v. Brown,* 261 F.Supp.2d 149, 157 (E.D.N.Y.2003).[10] In determining the reasonableness of counsel's representation, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [legal] strategy.' " *Strickland v. Washington,* 466 U.S. at 689 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

**\*9** After reviewing the record before us, this Court concludes that McGrail's defense counsel's representation did not amount to ineffective assistance of counsel. It is evident that Petitioner's counsel negotiated a favorable plea agreement for Petitioner, who was charged with a Class B felony carrying a potential prison term of twenty-five years. *See*N.Y. PENAL LAW § 70.02(3)(a); *see also* R., Ex. M, Plea Hr'g Tr. at p. 8. Counsel effectively secured a plea offer resulting in a prison sentence of seven and one-half years. *See* R., Ex. N, Sentencing Hr'g Tr., dated Jan. 12, 2006, at p. 8. Moreover, in the plea hearing before the county court, Petitioner indicated that he was "satisfied with the services [his attorney] rendered [on his] behalf."Plea Hr'g Tr. at p. 6. In his Petition, which incorporates his Memorandum in support of his 440 Motion, McGrail claims that his counsel was ineffective because he "was not provided an opportunity to be present at his Grand Jury."Pet., Ex. A, Pet'r's Mem. of Law in Support of 440 Mot., at p. 13.Even assuming this complaint is true, "New York courts have

McGrail v. Superintendent, Collins Corr. Facility, Not Reported in F.Supp.2d (2011)

2011 WL 7090716

consistently held that counsel's failure to ensure that the defendant testifies before the grand jury does not amount to ineffective assistance of counsel."*Davis v. Mantello*, 42 F. App'x 488, 491 n. 1 (2d Cir.2002). Petitioner also contends that his counsel was ineffective for "ma[king] no oral challenges or objections relating to the [*Alford* ] plea."Pet'r's Mem. of Law in Support of 440 Mot. at p. 15.However, it is unclear on what basis Petitioner would have had his attorney object. As examined above, his plea was favorable, and it was entered knowingly, voluntarily, and intelligently. Additionally, notwithstanding Petitioner's individual complaints of attorney ineffectiveness, a review of the prior state court proceedings *in toto* indicates that Petitioner's counsel performed laudably. Attorney Tamburo appropriately conducted an investigation into the basis behind the charges and the subsequent *Alford* plea prior to the plea hearing. *See* Plea Hr'g Tr. at pp. 11–13.He also directed the court during sentencing to consider that Petitioner had no prior criminal history, Petitioner admitted he had a substance abuse problem, as indicated in the pre-sentencing report, he regreted what happened, and that the victim appeared to be doing well under the circumstances. *See* Sentencing Hr'g Tr. at pp. 4–7.

Therefore, we cannot conclude that McGrail's attorney's representation was objectively unreasonable. As such, we need not discuss *Strickland*'s second inquiry of whether the deficient performance actually prejudiced the Petitioner. Because, for the above reasons, Petitioner's claim that he received ineffective assistance of trial counsel is without merit, we recommend Petitioner's claim be **denied.**

As to Petitioner's remaining claims regarding his confession, it is well-settled that a defendant's properly counseled and entered plea of guilty admits all of the elements of a formal criminal charge and waives a multitude of federal constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)."A guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."*Id.; accord United States v. Coffin*, 76 F.3d 494, 497 (2d Cir.1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. He may only attack the voluntary and

intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.") (internal quotations omitted).

 **\*10** In this instant case, Petitioner claims that his statement made to the police in which he admitted he made oral contact with J.M.'s vagina [11] was the product of an unlawful arrest, constituted an unconstitutional search and seizure, was in violation of his rights against self-incrimination, and was the product of coercion. Pet. at ¶¶ 22(A)-(D). Petitioner, in making his guilty plea to the court, clearly waived any possible claims regarding his confession made to the police and his allegation that it was the product of an unlawful arrest and seizure, in violation of his rights against self-incrimination, and was the product of coercion. During the plea colloquy, the court explicitly asked Petitioner and his counsel if they had any underlying constitutional challenges, to which they answered in the negative. [12] As discussed above, there is nothing in the record to indicate that Petitioner's decision to plead guilty was anything but knowing, voluntarily, and intelligent, and Petitioner did not suffer from ineffective assistance of counsel. By pleading guilty, Petitioner chose to forgo his challenges regarding his post-arrest statement. Accordingly, we find Petitioner's complaints, as they relate to his statement given to the Cayuga County Sheriff's office, are waived by his guilty plea and should be **denied.**

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED;** and it is further

**RECOMMENDED,** that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims. *See*28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir.2000), *cert. denied*531 U.S. 873, 121 S.Ct. 175, 148 L.Ed.2d 120 (2000); and it is further

McGrail v. Superintendent, Collins Corr. Facility, Not Reported in F.Supp.2d (2011)

2011 WL 7090716

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE*

*APPELLATE REVIEW.Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs. .,* 892 F.2d 15 (2d Cir.1989)); *see also*28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a).

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 7090716

Footnotes

1 Because Petitioner was convicted of a sex offense and included the name of his minor victim in his Petition, this Court directed the Clerk of the Court to seal the Petition so as to maintain the confidentiality of the victim. *See*Dkt. No. 5, Order, dated Mar. 28, 2008. To further preserve confidentiality, we now only refer to the victim by her initials.

2 A defendant entering an *Alford* plea "voluntarily, knowingly, and understandingly consent[s] to the imposition of a prison sentence even [though] he is unwilling or unable to admit his participation in the acts constituting the crime."*See North Carolina v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Analogous to a plea of *nolo contendere,* an *Alford* plea occurs when "a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty."*Id.* at 35.

3 A motion to vacate the judgment of conviction must be denied when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal."C.P.L. § 440.10(2)(c).

4 28 U.S.C. § 2254(b) and (c) provide, in part, as follows:

(b) (1) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that: (A) the applicant has exhausted the remedies available in the courts of the State; or (B) (i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant....

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

5 Because the AEDPA's restriction on federal *habeas* power was premised upon the duty of state courts to uphold the Constitution and faithfully apply federal laws, the AEDPA's review standards apply only to federal claims which have been actually adjudicated on the merits in the state court. *Washington v. Shriver,* 255 F.3d 45, 52–55 (2d Cir.2001). Accordingly, deference is not mandated under section 2254(d) if a state court decides the case on a procedural basis, rather than on the merits. *See Sellan v. Kuhlman,* 261 F.3d 303, 309–10 (2d Cir.2001).

6 Notwithstanding Petitioner's assessment of his failure to exhaust all grounds, Petitioner did, on his direct appeal to the Appellate Division, specifically target his *Alford* plea as one of the two sources of contention. However, he claimed on his direct appeal that his *Alford* plea was "insufficient since [he] failed to specifically waive his right to assert his intoxication at trial."R., Ex. A, Pet'r's Appellate Br. This claim differs substantially from the claim Petitioner raises in his *Habeas* Petitioner: that his *Alford* plea was "unlawfully induced or not made voluntary [sic] with understanding of the nature ... of the charge and consequences of the plea."Pet. at ¶ 22(g). Because of the difference in character between the two claims regarding Petitioner's *Alford* plea, Petitioner did not "fairly present" his claim to the state courts through his direct appeal, as required before seeking a federal writ of *habeas corpus. See Jimenez v. Walker,* 458 F.3d 130, 148–49 (2d Cir.2006); *see also Jackson v. Edwards,* 404 F.3d 612, 619 (2d Cir.2005) ("In developing and refining the 'fairly present' standard, the Supreme Court has concentrated on the degree of similarity between the claims that a petitioner presented to the state and federal courts.").

7 This final exception, however, is intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."*Murray v. Carrier,* 477 U.S. 478, 496 (1986); *see also Lebron v. Mann,* 40 F.3d 561, 564 (2d Cir.1994).

8 28 U.S.C. § 2254(b)(1) states the following:

**McGrail v. Superintendent, Collins Corr. Facility, Not Reported in F.Supp.2d (2011)**

2011 WL 7090716

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

....

(B) (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant."

9   While Petitioner does not make the argument, this Court is keenly aware of the Supreme Court's ruling in *Massaro v. United States,* 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), that in 28 U.S.C. § 2255 *habeas* petitions there is no procedural default for failure to raise an ineffective assistance claim on direct appeal, abrogating the Second Circuit's previous holding that an ineffective assistance claim, based solely on the record made at trial and when the petitioner is represented by new counsel on appeal, must be made on direct appeal. However, it is clear that, by its own language, *Massaro* did not extend this rule beyond § 2255 *habeas* petitions. *See Sweet v. Bennett,* 353 F.3d 135, 140 (2d Cir.2003) (noting that § 2254, unlike § 2255, addresses concerns of comity and federalism, and accordingly contains an exhaustion rule as well as a rule requiring deference to state courts). McGrail filed the instant Petition pursuant to § 2254, and thus *Massaro* 's holding does not apply.

10   In *Williams v. Taylor,* the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law[.]' " 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Sellan v. Kuhlman,* 261 F.3d 303, 309 (2d Cir.2001).

11   The statement Petitioner made to the Cayuga County Sheriff's office, in short, was that he performed oral sex on J.M., but only because "[s]he came on to [him]." Petitioner stated that:

I tried to pull her off the bunk, she layed [sic] back and her pants and underwear came down. She spread her legs and her vagina was almost in my face. I took this to mean that she wanted me to go down on her. When I say "go down" I mean that she wanted me to tickle her little thing with my tongue. As I pulled [J.M.] off the bed, my mouth came in contact with the top of her vagina. It was a freak accident. I knew she was coming on to me. I feel bad that it went as far as it did with [J.M.] and me. It should have never happened. If you want me to go to counseling I will. R., Ex. B, Pet'r Statement to Police, dated July 8, 2005.

12   Court: "Does your client contend this plea has been brought about by any illegal search or seizure, Mr. Tamburo?"

Tamburo: "No, Judge."

Court: "Does he contend this plea has been brought about by any statement given in violation of his constitutional or statutory rights?"

Tamburo: "Well, we did make that claim, Judge, but he would have to waive that to—"

Court: "You're withdrawing that claim?"

Tamburo: "Yeah. Would have to for him to proceed."

Court: "Thank you. Do you contend this plea has been brought about by any identification proceeding that may have been tainted in any fashion?"

Tamburo: "No, Judge."

....

Court: "Okay. Has anyone else made any promises to you other than what has been said in this courtroom?"

Petitioner: No.

Court: "Now has anyone threatened you or coerced you to get you to enter this plea?"

Petitioner: "No, sir."

Plea Hr'g Tr. at pp. 7–9.

---

**End of Document**      © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 3522227
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
W.D. New York.

Ricky A. MOORE, Jr., Petitioner,
v.
William LAPE, Respondent.

No. 08–CV–0474 (MAT).   |   Sept. 8, 2010.

**Attorneys and Law Firms**

Ricky A. Moore, Jr., Attica, NY, pro se.

Nancy A. Gilligan, Rochester, NY, for Respondent.

**ORDER**

MICHAEL A. TELESCA, District Judge.

**I. Introduction**

 **\*1**  *Pro se* petitioner Ricky A. Moore, Jr. ("petitioner"), has filed a timely petition for writ of habeas corpus pursuant to 28 U.S .C. § 2254 challenging his conviction in Monroe County Court of Criminal Possession of a Weapon in the Second Degree (former N.Y. Penal L. § 265.03(2)), following a guilty plea before Judge Richard A. Keenan. Petitioner is currently serving a determinate sentence of imprisonment of fifteen years.

**II. Factual Background and Procedural History**

Petitioner was convicted of one count of second-degree weapon possession for having possessed a loaded .357 caliber revolver while he was a passenger in a taxi cab in the City of Rochester. His guilty plea satisfied multiple counts of criminal weapon possession, felony drug charges, and two misdemeanors.[1] See Hr'g Mins. dated 2/13/2004 at 13–14; Plea Mins.("P.M") 2–5. The United States Attorney's Office agreed that petitioner would not be prosecuted federally for the same conduct in exchange for his guilty plea. P.M. 2–5; Sentencing Mins. ("S.M.") 4–5.

Plea proceedings were held on February 18, 2004, before Judge Richard Keenan, in which petitioner acknowledged that he understood the nature of the charges, was not under the influence of medicine or any other substance, that he was alert and awake, that he was not threatened or pressured to plead guilty, and was doing so of his own free will. The county court explained to petitioner that he waived certain constitutional rights, including the right to a trial. P.M. 5–10. Petitioner then admitted to the facts of the crime of Criminal Possession of a Weapon in the Second Degree, and the court accepted his guilty plea.[2] P.M. 11–14

A few days prior to sentencing, petitioner submitted a *pro se* letter to the trial court requesting that his plea be withdrawn on the basis of ineffective assistance of counsel. *See* Respondent's Appendix ("Appx.") I. During the sentencing proceeding, the court acknowledged receipt of the letter and inquired of petitioner whether he had anything to add to his request. Petitioner declined, and the court denied petitioner's motion. S.M. 3–4. Petitioner was then sentenced in accordance with the plea agreement to a fifteen-year determinate term of imprisonment with five years of post-release supervision. S.M. 7.

Through counsel, petitioner filed a direct appeal in the Appellate Division, Fourth Department, raising three points: (1) petitioner's plea must be vacated because petitioner implicitly negated an essential element of the crime during the plea colloquy; (2) the sentencing court erred in failing to inquire into petitioner's complaints about defense counsel; and (3) the sentence was unduly harsh and severe. Appx. B. The Appellate Division unanimously affirmed the judgment of conviction. *People v. Moore,* 39 A.D.3d 1199, 834 N.Y.S.2d 606 (4th Dept.), *lv. denied,*9 N.Y.3d 867, 840 N.Y.S.2d 897, 872 N.E.2d 1203 (2007); Appx. D, G.

Petitioner then filed the instant petition for habeas corpus alleging the same claims he did on direct appeal. Petition ("Pet.") ¶ 12(A)-(C). For the reasons that follow, I find that petitioner is not entitled to the writ, and the petition is dismissed.

**III. Discussion**

**A. General Principles Applicable to Federal Habeas Review**

**1. Standard of Review**

**\*2** To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor,* 529 U.S. 362, 375–76, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

### 2. Adequate and Independent State Ground Doctrine

It is a well-settled aspect of federal habeas jurisprudence that if "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred" absent (1) a showing of cause for the default and actual prejudice attributable thereto, or (2) a showing that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A state ground will create procedural default sufficient to bar habeas review if the state ground first was an "independent" basis for the decision; this means that "the last state court rendering a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar ."In addition, the state procedural bar must be "adequate" to support the judgment–that is, it must be based on a rule that is " 'firmly established and regularly followed' by the state in question ."*Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir.1999) (quoting *Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991)). If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

### B. Merits of the Petition

#### 1. Invalid Guilty Plea

As he did on direct appeal, petitioner contends that his plea was not knowingly and voluntarily entered. Specifically, he alleges that the trial court erred in failing to make a sufficient inquiry during the plea colloquy to ensure that petitioner understood the law in relation to the facts, based on petitioner's failure to admit that he intended to use the weapon unlawfully against another person .[3] Pet. ¶ 12(A). The Appellate Division held, "[d]efendant failed to move to withdraw his plea on that ground and thus failed to preserve his challenge for our review. This case does not fall within the narrow exception to the preservation requirement."*Moore,* 39 A.D.3d at 1199, 834 N.Y.S.2d 606 (citing *People v. Lopez,* 71 N.Y.2d 662, 666, 529 N.Y.S.2d 465, 525 N.E.2d 5 (1988)).[4]

**\*3** Habeas courts in this Circuit have held that the failure to move to withdraw a guilty plea before sentencing constitutes an adequate and independent state ground barring habeas review. *See Garcia v. Boucaud,* No. 09 Civ. 5758(RJH)(GWG), 2001 WL 1875636, *6–*7 (S.D.N.Y. May 11, 2010) (finding that petitioner's failure to move to withdraw his plea constituted an adequate and independent state ground under the "guideposts" set forth in *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir.2003)); *Larweth v. Conway,* 493 F.Supp .2d 662, 668–669 (W.D.N.Y.2007) (same); *Fuller v. Schultz,* 572 F .Supp.2d 425, 438 (S.D.N.Y.2008) ("Fuller is barred from challenging the voluntariness of his guilty plea on habeas review, provided that the state rule on which the Appellate Division relied was 'firmly established and regularly followed.' That a defendant's challenge to his guilty plea is unpreserved unless he first moves to withdraw his plea or vacate the judgment is such a rule.") (quoting *Cotto,* 331 F.3d at 239–41; other citations omitted).

Accordingly, petitioner's claim is precluded from habeas review unless the petitioner "can show 'cause' for the procedural default and 'prejudice attributable thereto,' or demonstrate that failure to consider the claim will result in a miscarriage of justice."*Coleman,* 501 U.S. at 749–50 (internal citations omitted); *accord, e.g., Fama v. Commissioner of Corr. Servs.,* 235 F.3d 804, 809 (2d Cir.2000). Petitioner makes no showing of the requisite cause and prejudice necessary to overcome the procedural bar, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice (i.e., that he is actually innocent). This claim is therefore dismissed.

#### 2. Insufficient Inquiry

Petitioner next contends that the sentencing court failed to inquire into petitioner's complaints about his attorney, thereby depriving petitioner of due process. ¶ 12(B). The Appellate Division rejected petitioner's claim on the merits:

Defendant further contends that County Court failed to conduct a sufficient inquiry into the basis for his complaints against defense counsel. Defendant did not request new counsel, but instead sought to withdraw his plea on the ground that defense counsel was ineffective and had coerced him into accepting the plea. We conclude that the court conducted a sufficient inquiry before denying petitioner's request to withdraw the plea.

*Moore,* 39 A.D.3d at 1199–1200, 834 N.Y.S.2d 606.

The Second Circuit has held that the proper analytical approach to such a due process claim is to determine if "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" has been offended. *Hines v. Miller,* 318 F.3d 157, 161–62 (2d Cir.), *cert. denied,* 538 U.S. 1040, 123 S.Ct. 2089, 155 L.Ed.2d 1075 (2003) (quoting *Medina v. California,* 505 U.S. 437, 445, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992)). The *Hines* court concluded that because both federal and New York precedent have established that a defendant is not, as a matter of right, entitled to an evidentiary hearing on a motion to withdraw a guilty plea, *id.* at 162, the failure to hold one does not offend a deeply rooted or fundamental principal of justice. *Id.*

  **\*4** In this case, petitioner filed a *pro se* letter seeking to withdraw his guilty plea, claiming that his attorney coerced him into pleading guilty, that he was being "railroaded", and that he should receive a reduced sentence as a remedy. *See* Appx. I. Although given the opportunity to do so, petitioner elected not to elaborate on his claim of ineffective assistance of counsel, and thus provided no factual support for his allegations to the county court. S.M. 3. The court denied the request, explaining to petitioner:

> You entered a voluntary and very favorable plea. I know the sentence promise is serious, certainly from your perspective, but you essentially faced sentences which could have placed you in prison for the rest of your life. [Defense counsel] was not only able to resolve, as he indicated, nine serious felony charges in the State courts, but

also a Federal prosecution which also exposed you to a severe sentence. As I have indicated, under oath you entered an admission and a sufficient colloquy to support the charge; you have been given an adjournment to consider the People's position, talk about it with your family and [counsel] and certainly it appears to the Court that [counsel] has fulfilled his obligation to give you appropriate advice regarding his evaluation of the strength of the various cases the People had against you and the record certainly supports that you understood your rights and consequences of the plea at the time it was entered ....

S.M. 4–5.

Indeed, petitioner's claim is belied by his statements in the plea proceeding, wherein he advised the court that he had not been pressured or threatened to plead guilty, and that he was pleading guilty of his own free will. P.M. 6–7. Given the conclusory nature of petitioner's allegations, there is no basis for petitioner's claim that the court was required to conduct a further inquiry regarding his motion to withdraw his guilty plea. Accordingly, the Appellate Division's determination that the county court conducted a sufficient inquiry was not contrary to, or an unreasonable application of Supreme Court precedent, and habeas relief is denied on this ground.

### 3. Sentence Unduly Harsh and Severe

Petitioner concludes his petition by arguing that the fifteen-year determinate sentence is unduly harsh and severe for a first-time felony offender. Pet. ¶ 12(C). The respondent has correctly pointed out that the imposition of a sentence within the permissible range prescribed by law does not "present a constitutional question necessary for habeas corpus reversal." *Underwood v. Kelly,* 692 F.Supp. 146, 152 (E.D.N.Y.1988) (citations omitted), *aff'd,* 875 F.2d 857 (2d Cir.), *cert denied,* 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989); *see also Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948).

Here, petitioner was sentenced to the maximum allowable sentence for a class C violent felony. *See* N.Y. Penal L. § 70.02. The sentence was imposed, as agreed upon, in satisfaction of multiple outstanding felony drug charges and

precluded petitioner's prosecution in federal court. Because petitioner's sentence was within the statutory range, he has not set forth a basis for habeas relief, and this claim is dismissed.

**IV. Conclusion**

 **\*5** For the reasons stated above, Ricky A. Moore, Jr.'s petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. *See, e.g.,*

*Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 111–113 (2d Cir.2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 3522227

Footnotes

1 If convicted at trial, petitioner faced a maximum sentence of approximately forty years imprisonment. *See* Hr'g Mins. dated 2/13/2004 at 14.

2 Prior to its revision in 2005, N.Y. Penal L. § 265.03(2) read, "A person is guilty of criminal possession of a weapon in the second degree when, with intent to use the same unlawfully against another ... [h]e possesses a loaded firearm."

3 During the plea colloquy, the county court elicited from petitioner that he possessed a loaded, operational firearm in a taxi cab in the City of Rochester. As to the element of intent, the prosecutor relied on a statutory presumption concerning "intent to use unlawfully." *See* N.Y. Penal L. § 265.15(4). Defense counsel did not oppose to the use of that presumption, and petitioner did not challenge his attorney's statement. P.M. 12–14.

4 An exception to the preservation requirement was articulated in *People v. Lopez,* 71 N.Y.2d 662, 529 N.Y.S.2d 465, 525 N.E.2d 5 (1988), which held that "where a defendant's factual recitation negates an essential element of the crime pleaded to, the court may not accept the plea without making further inquiry to ensure that defendant understands the nature of the charge and that the plea is intelligently entered. Where the court fails in this duty and accepts the plea without further inquiry, the defendant may challenge the sufficiency of the allocution on direct appeal, notwithstanding that a formal postallocution motion was not made." *Id.* at 666, 529 N.Y.S.2d 465, 525 N.E.2d 5 (citations omitted).

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 5878679
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Miguel A. ROJAS, Petitioner,

v.

Philip D. HEATH, Superintendent, Respondent.

No. 11 Civ. 4322(CS)(PED). | Oct. 18, 2012.

### *REPORT AND RECOMMENDATION*

PAUL E. DAVISON, United States Magistrate Judge.

**\*1 TO: THE HONORABLE CATHY SE1BEL, UNITED STATES DISTRICT JUDGE**

### *I. INTRODUCTION*

Petitioner Miguel Rojas ("Petitioner"), appearing *pro se*, seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 from his June 6, 2008 conviction entered in Dutchess County Court (Hayes, J). Petitioner was convicted, upon a plea of guilty, of one count of manslaughter in the first degree, in violation of N.Y. Penal Law § 125.20, and sentenced, *inter alia*, to a determinate term of twenty-three years imprisonment and five years post-release supervision. He was also ordered to pay $8,350.00 in restitution. This petition comes before me pursuant to an Order of Reference dated July 20, 2011. (Dkt.8.) For the reasons set forth below, I respectfully recommend that the petition be **DENIED**.

### *II. BACKGROUND* [1]

#### A. *The Crime*
On September 6, 2007, in Poughkeepsie, New York, Petitioner pushed his mother-in-law, Brenda Vantassell ("Vantassell"), down a flight of steps. Vantassell threatened to call the police. Petitioner then kicked, punched, and pushed Vantassell's head against the floor. Vantassell later died of severe head trauma. (*See* Apr. 29, 2008 Tr., at 16–17 (Ex. 6).) On October 4, 2007, Petitioner was indicted on one count of murder in the second degree, in violation of N.Y. Penal Law § 125.25. [2] (*See* Indictment (Ex. 2).)

On November 29, 2007, Petitioner moved by pretrial omnibus motion to suppress his confession and certain evidence obtained from the crime scene. The court granted the motion to the extent that it ordered a pretrial hearing. However, the hearing was not held because Petitioner subsequently pled guilty. (*See* Jan. 22, 2008 Decision and Order (Ex. 5); Resp't's Aff. ¶¶ 6–7.)

#### B. *Guilty Plea and Sentencing*
On April 29, 2008, Petitioner, accompanied by counsel and an interpreter, [3] informed the court that he had agreed to a plea bargain. He stated that he intended to plead guilty to manslaughter in the first degree, in violation of N.Y. Penal Law § 125.20, in full satisfaction of the indictment. [4] He also stated that he understood that his guilty plea would result in a determinate sentence of twenty-three years imprisonment and five years of post-release supervision. (*See id.* at 2–4.)

Petitioner was then placed under oath and stated that he decided to plead guilty after he consulted with counsel. He stated that he understood that by pleading guilty he waived, among things, the rights to a trial by jury or judge; to be proven guilty beyond a reasonable doubt as to each element of the offense; to cross-examine and to confront witnesses; and to remain silent. (*See id.* at 6–14.)

Petitioner again confirmed that he was voluntarily pleading guilty to manslaughter in the first degree in exchange for a sentence of twenty-three years imprisonment. He also stated that he understood the offense carried a maximum possible sentence of twenty-five years. (*See id.* at 14.)Petitioner then allocuted to the crime. Specifically, he stated that, in the City of Poughkeepsie, New York, with the intent to seriously injure Vantassell, he caused Vantassell's death by striking her in the face with his fists and by pushing her head into the floor. The court accepted Petitioner's plea. (*See id.* at 16–17.)On June 6, 2008, Petitioner was sentenced in accordance with the terms of the plea bargain and ordered to pay $8,350.00 in restitution to Vantassell's family. (*See* June 6, 2008 Tr., at 11 (Ex. 7).)

#### C. *Direct Appeal*
**\*2** Petitioner, through counsel, appealed his conviction to the New York State Appellate Division, Second Department, on the following grounds: (1) the sentence was excessive; [5] (2) the court failed to properly inquire into whether Petitioner understood the nature of the charge and was intelligently

entering his plea;[6] and (3) the court erred by failing to set a time and manner for Petitioner to pay the restitution that it ordered.[7] (*See* Appellant's Br., at 2–17.) The Second Department affirmed the conviction on June 29, 2010. *People v. Rojas,* 903 N.Y.S.2d 258 (App.Div.2010). Petitioner sought leave to appeal to the New York Court of Appeals, which was denied on September 2, 2010. *People v. Rojas,* 15 N.Y.3d 855 (2010). Petitioner did not seek a writ of *certiorari* to the United States Supreme Court or file post-conviction collateral motions in state court. (*See* Pet., at 2 (unpaginated).)

#### D. *Habeas Corpus Proceedings*

On June 6, 2011, Petitioner filed a petition seeking a federal writ of *habeas corpus.*[8] (*See generally id.*)He raises the same claims that he raised on direct appeal, but has inserted references to the Constitution and federal caselaw in stating those claims. Specifically, Petitioner argues: (1) his sentence was excessive in view of the fact that the court failed to conduct a hearing pursuant to *Bovkin v. Alabama,* 395 U.S. 238 (1968), in violation of his Sixth and Fourteenth Amendment rights;[9] (2) the state court's failure to conduct a *Bovkin* hearing violated his Sixth and Fourteenth Amendment rights;[10] and (3) Petitioner's Sixth and Fourteenth Amendment rights were violated when the state court failed to set the time and manner to pay the restitution that it ordered. (*See* Pet., at 6.)

On September 15, 2011, Respondent filed its answer. (Dkt.10.) Petitioner filed a reply which was received in chambers on November 29, 2011. (Dkt.13.) In that reply, he stated that, even if this Court deemed Grounds Two and Three procedurally barred from federal review, his petition should still be reviewed because it was "brought in Federal Constitutional Terms, clearly stating constitutional abridgements, which are protected to the extent of Due Process and Equal Protection under the XIV Amendment of the United States Constitution."(*Id.* ¶ 5 (emphasis omitted).)[11]

### III. *DISCUSSION*

#### A. *Applicable Law on Habeas Corpus Review*

"Habeas review is an extraordinary remedy."*Bouslev v. United States.* 523 U.S. 614, 621 (1998) (citing *Reed v. Farley,* 512 U.S. 339, 354 (1994)). Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claims in accordance with § 2254(d). The procedural and substantive standards applicable to *habeas* review, which were substantially modified by the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1220 (Apr. 24, 1996), are summarized below.

#### 1. *Timeliness Requirement*

**\*3** A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of limitations. *See*28 U.S.C. § 2244(d). The statute provides four different potential starting points for the limitations period, and specifies that the latest of these shall apply. *See id.* § 2244(d)(1). Under the statute, the limitations period is tolled only during the pendency of a properly filed application for State post-conviction relief, or other collateral review, with respect to the judgment to be challenged by the petition. *See id.* § 2244(d)(2). The statute reads as follows:

> (d) (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(d) (2) The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

*Id.* § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida,* 130 S.Ct. 2549, 2562 (2010) (quoting *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)). In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) (per curiam) (internal quotation marks omitted), which have "prevented [the petitioner] from filing his petition on time,"*Valverde v. Stinson,* 224 F.3d 129, 134 (2d Cir.2000) (internal quotation marks and emphasis omitted). The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances."*Id.*

**2.** *Exhaustion Requirement*

**\*4** A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court. *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999); *see*§ 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); *id.* § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claim. *See Rose v. Lundy,* 455 U.S. 509, 518–19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."*Baldwin v. Reese,* 541 U.S. 27, 29 (2004) (internal quotation marks omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims."*Petrucelli v. Coombe,* 735 F.2d 684, 687 (2d Cir.1984) (internal citation omitted) (citing *Smith v. Phillips,* 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition."*Galdamez v. Keane,* 394 F.3d 68, 73 (2d Cir.2005). A claim may be "fairly presented" to the state courts, therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Dave v. Attorney Gen. of State of N.Y.,* 696 F.2d 186, 194 (2d Cir.1982). A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."*Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997) (internal quotation marks omitted). "In such a case, a petitioner no longer has remedies available in the courts of the State within the meaning of 28 U.S.C. § 2254(b)."*Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (internal quotation marks omitted). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court. *See, e.g., Reyes,* 118 F.3d at 139. However, absent

a showing of either "cause for the procedural default and prejudice attributable thereto," *Harris v. Reed.* 489 U.S. 255, 262 (1989), or "actual innocence," *Schlup v. Delo,* 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

**\*5** Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims if those unexhausted claims are "plainly meritless." *Rhines v. Weber.* 544 U.S. 269, 277 (2005); *see§* 2254(b)(2) ( "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *see also, e.g., Padilla v. Keane,* 331 F.Supp.2d 209, 216 (S.D.N.Y.2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3. *Procedural Default*

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it. *Harris,* 489 U.S. at 262; *see also Coleman v. Thompson,* 501 U.S. 722, 730 (1991); *Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991); *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 126 (2d Cir.1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on state law. *Jimenez v. Walker.* 458 F.3d 130, 138 (2d Cir.2006) (citing *Coleman.* 501 U.S. at 740). A decision will be "adequate" if it is " 'firmly established and regularly followed' by the state in question."*Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir.1999) (quoting *Ford v. Georgia.* 498 U.S. 411, 423–24 (1991)).

### 4. *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas* relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims. § 2254(d)(1)—(2). This statute "modifie[d] the role of federal habeas courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review.*Williams v. Taylor.* 529 U.S. 362, 402 (2000). For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)—(2). The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment. *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). Where the state court "did not reach the merits" of the federal claim, however, "federal habeas review is not subject to the deferential standard that applies under AEDPA.... Instead, the claim is reviewed *de novo.*"*Cone v. Bell,* 556 U.S. 449, 472 (2009); *see§* 2254(d).

**\*6** Under the first prong of the AEDPA deferential standard, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."*Williams.* 529 U.S. at 413. A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."Id. at 407. Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct. § 2254(e)(1); *see Nelson v. Walker.* 121 F.3d 828, 833 (2d Cir.1997). The petitioner must rebut this presumption by "clear and convincing evidence." § 2254(e)(1).

### B. *Application*

### 1. *Ground One: Excessive Sentence*

Petitioner's first claim argues that his sentence was excessive, and that the state court's failure to conduct a *Boykin* hearing violated his Sixth and Fourteenth Amendment rights. (*See* Pet., at 6.) Respondent contends that this Petitioner does not state a cognizable federal sentencing claim and that the claim is otherwise unexhausted. (*See* Resp't Mem., at 4–7.)

I agree with Respondent that, to the extent that Petitioner argues his sentence was excessive, that claim is not cognizable upon *habeas* review. It is well-settled that "[n]o federal constitutional issue is presented where ... the sentence is within the range prescribed by law."*White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992). In this case, a determinate sentence of twenty-three years is within the range permitted by New York law. *See*N.Y. Penal Law § 125.20 (classifying manslaughter in the first degree as a class B felony); *id.* § 70.02(1)(a) (classifying manslaughter in the first degree a class B violent felony offense); *id.* § 70.02(2)(a) (requiring a determinate sentence for class B violent felony offense); *id.* § 70.02(3)(a) (requiring a term of sentence of at least five years and no greater than twenty-five years for a class B violent felony offense). Accordingly, this claim must be denied.

As noted above, Petitioner has appended a reference to *Boykin v.. Alabama,* 395 U.S. 238 (1968) to the excessive sentence claim he presented to the state courts on direct appeal. [12] This *Boykin* reference is *non sequitur,* however, as Petitioner has not explained how any defect in his plea allocution is relevant to his sentencing claim. I do not agree with Respondent that Petitioner's unexplained citation to *Boykin* represents a separate, unexhausted claim. (Resp't Mem., at 4.) Instead, I construe Petitioner's citation to *Boykin* as pertaining to Petitioner's exhausted challenge to his plea hearing, addressed below under Ground Two.

## 2. *Ground Two: Petitioners's Guilty Plea*

**\*7** Petitioner argues that the state court's failure to make additional inquiry during his plea hearing, pursuant to *Boykin v. Alabama,* 395 U.S. 238 (1968), violated his Sixth and Fourteenth Amendment rights. (*See* Pet., at 6.) Respondent contends that this claim remains procedurally barred and is otherwise without merit. (*See* Resp't Mem., at 7–10.) I agree with Respondent that this claim is procedurally barred.

It is clear from the Second Department's written decision that it actually relied upon a state procedural rule in denying this claim. [13] Specifically, the court relied upon New York State's requirement that a challenge to the validity of a guilty plea be preserved for appellate review by first seeking in the trial court to withdraw the plea [14] or by moving to vacate the judgement of conviction. [15] *See Rojas,* 903 N.Y.S.2d at 258. It is well-settled that in New York, such challenges must be preserved in the manner described, and state courts regularly follow this rule in denying claims. *See, e.g., Garcia v. Boucaud,* No. 09 Civ. 5758, 2011 WL 1794626, at *3 (S.D.N.Y. May 11, 2011) (internal quotation marks and citation omitted) ("Treating a failure to withdraw a plea as a procedural default is well-established in the New York courts.... [T]he Court of Appeals [has] noted [in] its prior holdings that in order to preserve a challenge to the factual sufficiency of a plea allocution there must have been a motion to withdraw the plea under [N.Y.Crim. Proc. Law] § 220.60(3) or a motion to vacate the judgment of conviction under [N.Y.Crim. Proc. Law] § 440.10. Numerous New York courts, including federal courts on habeas review, have applied that rule in rejecting challenges to the sufficiency of guilty pleas as ... procedurally barred."); [16] *Hunter v. McLaughlin,* No. 04 Civ. 4058, 2008 WL 482848, at *3 (S.D.N.Y. Feb. 21, 2008) (collecting cases and determining that "[t]here is ample case law holding that a defendant must notify the trial court of his request to withdraw a guilty plea on a specific basis in order to preserve that issue for appeal"); *Anaya v. Brown,* No. 05 Civ. 8974, 2006 WL 2524079, at *7–8 (S.D.N.Y. Sept. 1, 2006) (collecting cases and determining that "New York case law clearly indicates that [petitioner] was required to present his failure-to-inquire claim to the trial court in the first instance if he wanted to preserve it for appellate review"). Accordingly, in denying this claim, the state court relied upon an independent and adequate procedural bar that precludes federal review. [17]

Petitioner has not asserted cause or prejudice or a fundamental miscarriage of justice that would permit this Court to circumvent his procedural default and review the merits of this claim. Accordingly, Ground Two must be denied.

## 3. *Ground Three: Restitution*

Petitioner argues that his Sixth and Fourteenth Amendment rights were violated when the state court failed to set a time and manner to pay the restitution that it ordered. (*See* Pet., at 6.) Respondent contends that Petitioner's restitution claim is procedurally barred and not cognizable upon *habeas* review. (*See* Resp't Mem., at 10–12.) Respondent is correct.

**\*8** It is clear from the Second Department's decision that the court actually relied upon New York's contemporaneous

objection rule in denying the claim as unpreserved for appellate review.[18] *Rojas,* 903 N.Y.S.2d at 258. The court's reliance upon this state procedural rule constitutes an independent and adequate ground for its decision. *See Wainwright v. Sykes,* 433 U.S. 72, 86 (1977) (contemporaneous objection rule constitutes adequate procedural ground for dismissal); *Bossett v. Walker,* 41 F.3d 825, 829 n. 2 (2d Cir.1994) (same).

As in Ground Two, Petitioner has not asserted cause or prejudice or a fundamental miscarriage of justice that would permit this Court to circumvent his procedural default and review the merits of this claim. Accordingly, Ground Three must be denied.[19]

### IV. *CONCLUSION*

For the reasons set forth above, I conclude-and respectfully recommend that Your Honor should conclude—that the Petition should be **DENIED.**Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. *See*28 U.S.C. § 2253(c); *Slack v. McDaniel,* 529 U.S. 473, 483–84 (2000).

### V. *NOTICE*

Pursuant to 28 U.S.C. 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections. *See also*Fed.R.Civ.P. 6(a), (b), (d). Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Cathy Seibel, at the Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. Requests for extensions of time to file objections must be made to Judge Seibel.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 5878679

---

Footnotes

1    Unless otherwise indicated, the information within this section is taken from a review of the petition ("Pet."), (Dkt.2); Respondent's Memorandum of Law ("Resp't's Mem."), (Dkt.19); Petitioner's Reply to Respondent's Opposition ("Pet'r's Reply"), (Dkt.13); Respondent's Affidavit in Answer to a Petition for *Habeas Corpus* ("Resp't's Aff."), (Dkt.10); Respondent's Brief ("Resp't's Br."), (attached to Resp't's Aff., at Ex. 10); and the Brief for Appellant ("Appellant's Br.") (attached to Resp't's Aff., at Ex. 9). All exhibits cited herein are attached to Resp't's Aff. (Dkt.10).

2    "A person is guilty of murder in the second degree when ... [w]ith intent to cause the death of another person, he causes the death of such person...."N.Y. Penal Law § 125.25(1).

3    Petitioner apparently understands English, but indicated he that he is more comfortable participating in court proceedings through a Spanish interpreter. (*See* Apr. 29, 2008 Tr., at 2.)

4    "A person is guilty of manslaughter in the first degree when ... [w]ith intent to cause serious physical injury to another person, he causes the death of such person...."N.Y. Penal Law § 125.20(1).

5    Specifically, the Brief for Appellant states that "appellant's sentence of 23 years' imprisonment, upon his plea to manslaughter in the first degree, was excessive."(Appellant's Br., at 5 (typeface altered from original).) The brief also cited *Robinson v. California,* 370 U.S. 660 (1962), and argued that the sentence constituted cruel and unusual punishment because it was significantly higher than sentences received by similarly-situated defendants. (*See id.* at 9–10.)

6    Specifically, the Brief for Appellant states that, "after Appellant said 'it was never my intention to hurt [the victim],' the court never conducted further inquiry to ensure either that the defendant understood the nature of the charge or that the plea was being intelligently entered."(Appellant's Br., at 11 (typeface altered from original).)

7    Specifically, the Brief for Appellant states that, "despite a request from Appellant, the County Court failed to fix the time and manner of the restitutionary payment."(Appellant's Br., at 15 (typeface altered from original).)

8    The petition was timely filed. *See*28 U.S.C. § 2244(d) (l)-(2).

**9**  Specifically, Ground One states:

> Petitioner's Sentence of 23 years imprisonment, upon his plea to Manslaughter in the first degree, was excessive in view of the fact that the court failed to conduct a *Boykin Rule* hearing See: *Boykin v. Alabama,* 395 U.S. 238, and such was violative of Petitioner's rights under the VI & XIV Amendment's of the United States Constitution.
>
> (Pet., at 6 (typeface altered from original).)

**10**  Specifically, Ground Two states:

> After petitioner said "it was never my intention to hurt [the victim," the court never conducted further inquiry to ensure either that the defendant understood the nature of the charge or that the plea was being intelligently entered was such that the court could not willingly accept such plea where the Petitioner is a non English speaking person with limited education, and such was contrary to the *Boykin rule,* 395 U.S. 238, *See* also: *Johnson v. Zerbst,* 304 U.S. 458 (1938), and contrary to the VI & XIV amendment's of the United States Constitution.
>
> (Pet., at 6 (typeface altered from original).)

**11**  Petitioner stated in his reply that he never received Respondent's Memorandum of Law. I directed Respondent to serve the memorandum on Petitioner and granted Petitioner 30 days to file a supplemental response thereafter. (*See* Dkt. 14.) The docket reflects that Petitioner was served with Respondent's memorandum on or about June 27, 2012. (Dkt.20.) Petitioner did not file a supplemental reply.

**12**  In *Boykin,* the Supreme Court held that the record must clearly show that a defendant was apprised of his Fifth and Sixth Amendment rights before the court accepts his guilty plea. 395 U.S. at 243.

**13**  The opinion reads in pertinent part:

> The defendant's challenge to the factual sufficiency of his plea allocution is unpreserved for appellate review since the defendant failed to move to withdraw his plea prior to sentencing....
>
> *Rojas,* 903 N.Y.S.2d at 258.

**14**  At any time before the imposition of sentence, the court in its discretion may permit a defendant who has entered a plea of guilty to the entire indictment or to part of the indictment, or a plea of not responsible by reason of mental disease or defect, to withdraw such plea, and in such event the entire indictment, as it existed at the time of such plea, is restored. N.Y.Crim. Proc. Law § 220.60(3).

**15**  "At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment...."N.Y.Crim. Proc. Law § 440.10(1).

**16**  Copies of unreported cases cited herein will be mailed to Petitioner. *See Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009).

**17**  The New York Court of Appeals has recognized a narrow exception to this waiver rule, holding that "where a defendant's factual recitation negates an essential element of the crime pleaded to, the court may not accept the plea without making further inquiry to ensure that defendant understands the nature of the charge and that the plea is intelligently entered."*People v. Lopez,* 71 N.Y.2d 662, 666 (1988). Here, however, the Second Department specifically determined that the *Lopez* exception does not apply. *See Rojas,* 903 N.Y.S.2d at 258.

**18**  The opinion reads in pertinent part: "The defendant's challenge to the restitution component of his sentence is unpreserved for appellate review (*see*CPL 470.05[2]; *People v. Bruno,* 900 N.Y.S.2d 447; *People v. Harris,* 900 N.Y.S.2d 137)...."*Rojas,* 903 N.Y.S.2d at 258 (parallel citations omitted). The court's citation to N.Y.Crim. Proc. Law § 470.05(2) reveals that it relied upon New York's contemporaneous objection rule.

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.
>
> N.Y.Crim. Proc. Law § 470.05(2). Under this section, "an objection to a ruling or instruction of a criminal court must be raised contemporaneously with the challenged ruling or instruction in order to preserve the objection for appellate review."*Green v. Travis,* 414 F.3d 288, 294 (2d Cir.2005) (citing *People v. Jones,* 440 N.Y.S.2d 248, 254 (App.Div.1981)). Additionally, the objection must "be made with sufficient specificity to enable the trial court to respond."*Id.*

**19**  Furthermore, *habeas* relief is unavailable for claims that have no effect upon a petitioner's custody. *See*28 U.S.C. § 2254(a) (emphasis added) (stating that a district court may entertain a petition for a writ *of habeas corpus*"only on the ground that [the Petitioner] is *in custody* in violation of the Constitution or laws or treaties of the United States"). I note that the Second Circuit has declined to grant *habeas* relief for restitution claims brought under § 2255. *See United States v. Boyd,* 407 F. App'x 559, 560 (2d Cir.2011) (quoting *Kaminski v. United States,* 339 F.3d 84, 87 (2d Cir.2003)) ("Restitution orders cannot be challenged through a habeas petition because a 'monetary fine is not a sufficient restraint on liberty to meet the in custody requirement', even if raised in conjunction with a challenge to a sentence of imprisonment.").

**End of Document**                              © 2015 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 28995
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Randy WILENS, Petitioner,
v.
SUPERINTENDENT OF CLINTON
CORRECTIONAL FACILITY, Respondent.

No. 11–CV–1938 (JFB). | Dec. 31, 2013.

**Attorneys and Law Firms**

Randy Wilens, pro se.

Thomas Spota, District Attorney of Suffolk County, by
Michael Herman Blakey, Riverhead, NY, for Respondent.

**MEMORANDUM AND ORDER**

JOSEPH F. BIANCO, District Judge.

**\*1** Randy Wilens ("Petitioner") petitions this Court for
a writ of habeas corpus, pursuant to 28 U.S.C. § 2254,
challenging his October 25, 2005 conviction in state court.
Under Suffolk County Indictment Number 1020–2005,
Petitioner was charged with two counts of Course of Sexual
Conduct Against a Child in the First Degree (N.Y. Penal Law
§ 130.75(1)(a)), two counts of Course of Sexual Conduct
Against a Child in the Second Degree (N.Y. Penal Law
§ 130.80(1)(a)), three counts of Sexual Abuse in the First
Degree (N.Y. Penal Law § 130.65(3)), and five counts of
Endangering the Welfare of a Child (N .Y. Penal Law §
260.10(1)). Petitioner pled guilty to the indictment and was
sentenced, as a prior felony offender, to an aggregate term
of fourteen years' incarceration with five years post-release
supervision ("PRS").

Petitioner now challenges his conviction, arguing that: (1)
his Fourteenth Amendment due process rights were violated
because he was not informed of the mandatory post-release
supervision ("PRS") as a component of his sentence; (2) he
received ineffective assistance of counsel when his attorney
failed to advise him of PRS accompanying the sentence,
failed to object to duplicate counts in the indictment, and
failed to file an appeal; (3) his allocution was insufficient
to support a conviction for the crimes alleged; and (4) the

District Attorney committed *Brady* and *Rosario* violations by
failing to disclose Family Court findings and medical reports
related to the case.

For the reasons set forth herein, the Court finds that Petitioner
has not demonstrated any basis for habeas relief. Most of
Petitioner's claims are procedurally barred. In any event, all
of Petitioner's claims fail on the merits. The Court, therefore,
denies the petition in its entirety.

**I. BACKGROUND**

**A. Facts**

**1. The Plea**
On August 30, 2005, Petitioner entered a plea before
the Honorable Michael Mullen. Under advice of counsel,
Petitioner was sworn in (P. 4), [1] and affirmed that he freely
entered his guilty plea while waiving his constitutional and
statutory trial rights. (P. 5–6.) Petitioner allocuted to his guilt
on the offenses charged, admitting that: (1) at least three
times within a three month period between 2002 and 2004,
he subjected a female child, who was less than eleven years
of age, to sexual contact and sexual intercourse for his sexual
gratification (*id.* at 7–8); (2) between September 2003 and
July 2004, on three occasions within a three month period,
at his residence in Suffolk County, he had sexual contact
with a male child, who was less than eleven years of age,
including one incident of oral sexual conduct (*id.* at 9–10); (3)
at his residence in Suffolk County, in July 2004, he had sexual
intercourse with a male, who was less than eleven years of
age, for his own sexual gratification (*id.* at 11–12); (4) he had
sexual contact with another male who was less than eleven
years of age for his own sexual gratification (*id.* at 12–13);
(5) he twice exposed himself to a female less than seventeen
years of age (*id.* at 15–16); (6) in October 2004, at a house in
Suffolk County, he had sexual contact with a female, who was
under eleven years of age, for his own sexual gratification (*id.*
at 13–14); (7) at a house in Suffolk County, in the autumn of
2004, he played pornographic video tapes for a minor under
eleven years of age (*id* . at 14); (8) in the autumn of 2004, he
displayed lewd images from his cell phone to a child under
seventeen years of age (*id.* at 14–15); and (9) he endangered
the physical, mental, and moral welfare of four children under
seventeen years of age (*id.* at 16).

**\*2** The court was satisfied with the allocution and Petitioner
was found guilty of all charges which consisted of: (1) two

counts of Course of Sexual Conduct Against a Child in the First Degree (N.Y. Penal Law § 130.75(1)(a)); (2) two counts of Course of Sexual Conduct Against a Child in the Second Degree (N.Y. Penal Law § 130.80(1)(a)); (3) three counts of Sexual Abuse in the First Degree (N.Y. Penal Law § 130.65(3)); and (4) five counts of Endangering the Welfare of a Child (N.Y. Penal Law § 260.10(1)). (P. 16–17.)

**2. The Sentencing**

At the sentencing hearing on October 25, 2005, Petitioner was sentenced as a Persistent Felony Offender ("P.F.O.") after admitting to a prior conviction of Sodomy in the First Degree, a class "B" felony. (S.5–6.) [2] The court sentenced Petitioner as follows: (1) for two counts of Course of Sexual Conduct Against a Child in the Second Degree, Petitioner was sentenced to two concurrent terms of seven-years' incarceration with three-years' PRS (*id.* at 9–10); (2) for two counts of Course of Sexual Conduct Against a Child in the First Degree, Petitioner was sentenced to two concurrent terms of fourteen-years' incarceration with five-years' PRS (*id.* at 10); (3) for three counts of Sexual Abuse in the First Degree, the court sentenced Petitioner to three concurrent terms of seven-years incarceration with three-years' PRS (*id.* at 10); and (4) for five counts of Endangering the Welfare of a Child, the court sentenced Petitioner to five concurrent terms of one year of incarceration.(*Id.* at 10–11.)All terms of the sentence were ordered to run concurrently.

**B. Procedural History**

Petitioner filed a notice of motion for sentence reduction on November 17, 2005. His court appointed defense counsel argued that, in the interest of justice, the sentence should be reduced from 14 years, to the minimum 10 years, as the imposed sentence was harsh and excessive. (Notice of Motion for Sentence Reduction, Dec. 31, 2007, Indictment Number 1020–2005.) Petitioner also wrote a letter to the Appellate Division seeking permission to file a *pro se* supplemental brief. The Appellate Division granted the request. Through his Supplemental Brief filed October 30, 2007, Petitioner claimed that his sentence was harsh and excessive and should be reduced because (1) his plea was unknowingly made, as he was not made aware of post-release supervision accompanying the plea, and (2) his counsel was ineffective for failing to raise specific *Brady* or *Rosario* material, failing to file an appeal, and failing to inform Petitioner of PRS. (Notice of Motion for Sentence Reduction–Supplemental Brief, Oct. 30, 2007, Indictment Number 1020–2005) The Appellate Division affirmed the sentence on March 4, 2008

without an opinion. *People v. Wilens,* 49 A.D.3d 570 (N.Y.App.Div.2008). Petitioner sought leave to appeal from the Court of Appeals, which was denied. *People v. Wilens,* 10 N.Y.3d 965, 863 N.Y.S.2d 149, 893 N.E.2d 455 (2008).

**\*3** Petitioner then filed a motion under N.Y.C.P.L. § 440.10 ("Pet'r's 440 Mot.") to vacate the judgment with the Suffolk County Supreme Court, arguing that: (1) his plea was not knowingly, intelligently, and voluntarily made because he was not made aware of the PRS, thus violating his due process rights (Pet'r's 440 Mot. at 1–2); (2) he received ineffective assistance of counsel for failing to object to alleged duplicate counts on the indictment, failing to advise him of PRS, and coercing Petitioner to accept the plea agreement (*id.* at 3–4, 863 N.Y.S.2d 149, 893 N.E.2d 455); (3) the allocution was insufficient to cover the elements of the crimes (*id.* at 2, 863 N.Y.S.2d 149, 893 N.E.2d 455); and (4) the prosecutor committed *Brady* and *Rosario* violations for failing to disclose a finding of not guilty to a charge of abuse in Family Court. (*Id.* at 3–4.)

The Suffolk County Supreme Court denied the motion in full. *People v. Wilens,* Ind. No. 01020–2005 (Sup.Ct. Suffolk Cnty. Sept. 10, 2010). First, the court reasoned, based on the record, that Petitioner failed to show how his plea was unknowingly, unintelligently, or involuntarily made. *Id.* Furthermore, the court held that the claim was "wholly based on the record and as such not subject to review in a '440' proceeding."*Id.* (citing N.Y.C.P.L. § 440.10(2)(c); *People v. Byrdsong,* 234 A.D.2d 468, 651 N.Y.S.2d 903 (2d Dep't 1996)). Second, the court concluded that Petitioner failed to support his claim of ineffective assistance of counsel with any evidence other than a self-serving affidavit and was not borne out by the record. *Id.* (citing *People v. Mackenzie,* 224 A.D.2d 173, 637 N.Y.S.2d 128 (1st Dep't 1996)). Third, the court held that "[t]he defendant's claim that the impositions of a period of five years post release supervision was error requiring relief was again record based and not subject to review."*Id.* Fourth, the court held the alleged *Rosario* and *Brady* violations were presented without any evidence and had no merit. However, the court did not specifically address whether there was an insufficient allocution to cover the elements of the crimes (which had been raised in a one-sentence argument by Petitioner).*Id.* The Appellate Division denied Petitioner's certificate for leave to appeal. *People v. Wilens,* A.D. No.2010–10180 (2d Dep't Dec. 23, 2010). Petitioner's motion to reargue the denial of leave to appeal was again denied by the Appellate Division. *People v. Wilens,* A.D. No 2010–10180 (2d Dep't Mar. 31, 2011).

Petitioner then filed a *pro se* Petition for Writ of Habeas Corpus ("Pet'r's Habeas Pet.") on August 22, 2011, raising four grounds for relief. First, Petitioner argues that his plea violated the Due Process Clause of the Fourteenth Amendment because it was not made voluntarily, knowingly, and intelligently, as he was not made aware that PRS was a component of his sentence. (Pet'r's Habeas Pet. at 1.) Second, Petitioner argues that he had ineffective assistance of counsel because his attorney failed to: (1) advise him of the direct consequences of PRS; (2) advise him of his right to appeal; (3) file an appeal; and (4) object to duplicate counts on the indictment.(*Id.* at 3, 863 N.Y.S.2d 149, 893 N.E.2d 455.) Third, Petitioner argues that his allocution was insufficient to support the elements of the crimes charged.(*Id.* at 6, 863 N.Y.S.2d 149, 893 N.E.2d 455.) Finally, Petitioner alleges that the prosecution committed *Brady* and *Rosario* violations by withholding certain medical records and a finding of 'Not Guilty' of abuse in his Family Court case, which related to this criminal matter. (*Id.* at 3–4) Respondent filed a memorandum of law in opposition to the petition on July 27, 2012. ("Resp.Br.") The Court has fully considered the submissions and arguments of the parties.

## II. STANDARD OF REVIEW

**\*4** To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)." 'Clearly established Federal law' " is comprised of " 'the holdings, as opposed to the dicta, of [the

Supreme] Court's decisions as of the time of the relevant state-court decision.' " *Green v. Travis,* 414 F.3d 288, 296 (2d Cir.2005) (quoting *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."*Williams,* 529 U.S. at 412–13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case."*Id.* at 413.

AEDPA establishes a deferential standard of review: " 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.' " *Gilchrist v. O'Keefe,* 260 F.3d 87, 93 (2d Cir.2001) (quoting *Williams,* 529 U.S. at 411). Additionally, while " 'some increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.' " *Id.* (quoting *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo.* " *Dolphy v. Mantello,* 552 F.3d 236, 238 (2d Cir.2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir.2006)).

## III. DISCUSSION

For the reasons discussed below, this Court denies the petition for habeas corpus. As a threshold matter, the due process claim is procedurally barred because the state court found that claim to be a record-based claim that is not subject to review in a Section 440 motion. However, in an abundance of caution, the Court has analyzed the merits of every claim and concludes that Petitioner's claims are entirely without merit.

**A. Procedural Bar**

## 1. Exhaustion

 **\*5**  As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida,* 549 U.S. 327, 333, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007), a petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 132 L.Ed.2d 865 (1995) (per curiam) (quoting *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)) (alteration in original and quotation marks omitted).

Passage through the state courts, in and of itself, "is not sufficient." *Picard,* 404 U.S. at 275. To provide the State with the necessary "opportunity," the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *see also Duncan,* 513 U.S. at 365–66. "A petitioner has fairly presented his claim only if he has informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Jones v. Keane,* 329 F.3d 290, 294–95 (2d Cir.2003) (citation and internal quotation marks omitted). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye v. Att'y Gen. Of N.Y.,* 696 F.2d 186, 191–92 (2d Cir.1982) (en banc). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 191–92 (footnote omitted).

## 2. State Procedural Requirements

Similar to the failure to exhaust a claim, the failure to satisfy the state's procedural requirements will deprive the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson,* 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). "[A] claim is procedurally defaulted for the purposes of federal state habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.' " *Reyes v. Keane,* 118 F.3d 136, 140 (2d Cir.1997) (quoting *Coleman,* 501 U.S. at 735) (emphasis omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are ... to be deemed exhausted." *DiGuglielmo v. Smith,* 366 F.3d 130, 135 (2d Cir.2004). Notably, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes,* 118 F.3d at 139 (citations and internal quotation marks omitted).

 **\*6**  However, even where a plaintiff properly exhausts his claim, exhaustion "does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo,* 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (citing *Gray v. Netherland,* 518 U.S. 152, 162, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Coleman,* 501 U.S. at 744–51)). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray,* 518 U.S. at 162.

The procedural bar rule in the review of applications for writs of habeas corpus is based on the "comity and respect" accorded to state judgments. *House v. Bell,* 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Coleman,* 501 U.S. at 730–31.

Once it is determined that a claim is procedurally barred under state rules, a federal court may review such a claim on its merits only if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id.* at 750. A miscarriage

of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier,* 477 U.S. 478, 496 (1986). To overcome procedural default based on miscarriage of justice, petitioner must demonstrate that in light of new reliable evidence not presented at trial, " 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' " and would require " 'new reliable evidence ... that was not presented at trial.' " *House,* 547 U.S. at 537 (quoting *Schlup v. Delo,* 513 U.S. 324, 327 (1995)).

### 3. Application

"The burden of proving exhaustion lies with the habeas petitioner."*Cartagena v. Corcoran,* No. 04–CV–4329, 2009 WL 1406914, at *3 (E.D.N.Y. May 19, 2009). The Court concludes that Petitioner has not met this burden with respect to his due process claim, as it was not "fairly presented" in state court. Petitioner never sought reversal of his conviction, but rather merely sought a sentence reduction under state law. As discussed *supra,* Petitioner on direct appeal argued to reduce his sentence under N.Y.Crim. Proc. Law 470.15(2) (c) and 470.20(6), claiming that it was harsh and excessive. Courts have correctly found that a prisoner's reliance on a state procedural law granting courts discretionary authority to reduce sentences does not "fairly present" a constitutional claim in state court. *King v. Cunningham,* 442 F.Supp.2d 171, 181 (S.D.N.Y.2006) (collecting cases); *Castillo v. Abrams,* No. 88–CV–1165, 1988 WL 96026, at *1–2 (S.D.N.Y. Aug. 24, 1988) ("Asking a state court to use its discretionary authority to reduce a sentence [under New York's Criminal Procedure Laws], without more, is not enough to alert the court that the claim is of constitutional dimension.") Accordingly, Petitioner's due process claim is unexhausted, and thus, cannot be reviewed by this Court.

**\*7** However, Petitioner, through his § 440.10 motion to vacate, did seek reversal on the same grounds that he alleges in this petition-namely, (1) due process violations because the plea was not knowingly made; (2) ineffective assistance of counsel; (3) insufficient allocution; and (4) *Brady* and *Rosario* violations. Petitioner also argued that post-release supervision should not have been imposed. The Supreme Court of Suffolk County, through its § 440.10 order, made clear that the due process claim was procedurally barred because it was recordbased. *People v. Wilens,* Ind. No. 01020–2005 (Sup.Ct. Suffolk Cnty. Sept. 10, 2010). Accordingly, Petitioner's claim that his plea was not knowingly and voluntarily made is procedurally barred

because the court's ruling was based on an independent and adequate state procedural rule. [3]

In order to overcome the procedural bar, Petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."*Coleman,* 501 U.S. at 750. Petitioner has not satisfied this standard. Petitioner has not provided any explanation for his failure to properly exhaust the due process claim. Moreover, Petitioner has failed to demonstrate any prejudice for his failure to exhaust, and he has not demonstrated that a fundamental miscarriage of justice will take place if the Court fails to consider the procedurally defaulted claims. *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). In any event, that claim, as well as all of Petitioner's other claims, are without merit for the reasons discussed below.

### B. Merits Analysis

### 1. Due Process Claim

Petitioner claims that his due process rights under the Fourteenth Amendment were violated because he was unaware of PRS accompanying his sentence. Therefore, he alleges that the plea was not made voluntarily, knowingly, and intelligently. As discussed below, this claim has no merit.

### a. Legal Standard

"The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant ."*Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (internal quotation marks and citations omitted)); *see also Parke v. Raley,* 506 U.S. 20, 28–29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (plea is valid when it is both knowingly and voluntarily made). Where "a defendant is represented by counsel during the plea process, and enters his plea upon the advice of counsel, the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."*Hill,* 474 U.S. at 56 (internal quotation marks and citations omitted).

The Supreme Court has held that, under the Due Process Clause of the United States Constitution, a trial court can only accept a guilty plea which is done "voluntarily, knowingly, and intelligently, with sufficient awareness of relevant

circumstances and likely consequences." *United States v. Adams,* 448 F.3d 492, 497 (2d Cir.2006) (internal quotation marks and citations omitted); *accord Godinez v. Moran,* 509 U.S. 389, 400, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). Although a guilty plea "is not ordinarily subject to collateral attack," it "may be collaterally attacked if it was not knowing or not voluntary...." *Salas v. United States,* 139 F.3d 322, 324 (2d Cir.1998); *see also U.S. ex rel Scott v. Mancusi,* 429 F.2d 104, 107 (2d Cir.1970) ("[A] conviction which is based upon an involuntary plea of guilty is inconsistent with due process of law and is subject to collateral attack by federal habeas corpus.").

**\*8** "A plea is considered 'intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a rudimentary way,' and it is considered 'voluntary if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.' " *Manzullo v. New York,* No. 07 CV 744(SJF), 2010 WL 1292302, at \*5 (E.D.N.Y. Mar.29, 2010) (quoting *Miller v. Angliker,* 848 F.2d 1312, 1320 (2d Cir.1988)). Indeed, a "plea of guilty entered by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper." *Bousley v. United States,* 523 U.S. 614, 619, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (internal alteration, citations, and quotation marks omitted).

### b. Application

Under New York law, the trial court should have advised Petitioner of the five-year mandatory PRS. In *People v. Catu,* the Court of Appeals held that "[b]ecause a defendant pleading guilty to a determinate sentence must be aware of the postrelease supervision component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action, the failure of a court to advise of postrelease supervision requires reversal of the conviction." 4 N.Y.3d 242, 245, 792 N.Y.S.2d 887, 825 N.E.2d 1081 (2005).

However, under AEDPA, this Court may only grant relief if the state court "unreasonably applied clearly established Federal law." *Carey v. Musladin,* 549 U.S. 70, 77, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006) (alterations omitted) (quoting 28 U.S.C. § 2254(d)(1))." 'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.' " *Green v. Travis,* 414 F.3d 288, 296 (2d

Cir.2005) (quoting *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Therefore, this Court cannot grant a petition for habeas corpus if the state court unreasonably applied *state* law; instead, this Court may only grant relief unless the state court unreasonably applied federal law that has been clearly defined by Supreme Court precedents (or was a result of an unreasonable determination of the facts in light of the record).*See Knowles v. Mirzayance,* 556 U.S. 111, 122, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009) ("[T]his Court has held on numerous occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." (citations and internal quotation marks omitted)).

"Unfortunately for Petitioner, there is no clearly established Supreme Court precedent that a defendant must be advised of mandatory post-release supervision prior to entering a guilty plea. Many federal courts in this Circuit have recently come to this same conclusion."*Sanchez v. Keller,* 06–CIV–3370, 2007 WL 4927791, at \*7 (S.D.N.Y. Dec.4, 2007) (Report and Recommendation); *see also Facen v. Cully,* 787 F.Supp.2d 278, 284 (W.D.N.Y.2011) (stating that "the Supreme Court has never held that a mandatory term of post-release supervision is a direct consequence of a criminal conviction"); *Potter v. Green,* 04–CV–1343, 2009 WL 2242342, at \*6 (E.D.N.Y. July 24, 2009) ("[T]here is no clearly established Supreme Court precedent that requires a state court judge to advise a defendant of mandatory PRS before accepting a guilty plea."). In fact, as noted by the Seventh Circuit, "the Court has expressly declined to decide such an issue in the very similar context of parole."*Lockhart v. Chandler,* 446 F.3d 721, 724 (7th Cir.2006) (citing *Lane v. Williams,* 455 U.S. 624, 630 n. 9, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982)). This Court finds the analysis contained in these cases persuasive.

**\*9** Therefore, because the Supreme Court has not ruled directly on this issue, the failure of the state court to advise Petitioner at his plea about the mandatory PRS is not a basis for habeas relief. *See Sanchez,* 2007 WL 4927791, at \*8 ("[B]ecause the Supreme Court has never addressed the issue of whether mandatory supervised release is a direct consequence of one's conviction, the trial court's failure to inform Petitioner of his mandatory PRS cannot be a violation of clearly established federal law. In other words, Petitioner's claim is without merit because there is no clearly established Supreme Court precedent for the trial court to have unreasonably applied."); *see also Lane,* 446 F.3d at 724;

*Facen,* 787 F.Supp.2d at 284; *Menjivar v. Sears,* 06 CV 2854, 2007 WL 2274892, at *3 (E.D.N.Y. Aug.7, 2007). [4]

In addition, although this could end the Court's inquiry, the Court notes that Petitioner must also demonstrate that "there is a reasonable probability that, but for the error, he would not have entered the plea."*Zhang v. United States,* 506 F.3d 162, 168 (2d Cir.2007) (citation and internal quotation marks omitted). Petitioner provides no evidence that he would not have entered his guilty plea had the court informed him of the mandatory PRS, and it appears highly improbable that the PRS played any role in his decision to accept or reject the plea. In fact, during the sentencing hearing, Petitioner admitted that the plea bargain, struck by him and for his benefit, was "favorable." [5] (S. at 7.) More importantly, Petitioner was made aware of the PRS at his sentencing hearing. For each charge, the sentencing state judge, informed Petitioner of the mandatory five-year PRS accompanying the charges. (S. at 10.) At no time did Petitioner object to the PRS, indicate that he was unaware that PRS was mandated in accordance with state law, or state that he wished to withdraw his previously entered plea. Therefore, as in *Sanchez,* "Petitioner's claim-that the failure to inform him of mandatory PRS prior to the entry of his guilty plea was a violation of his due process rights-can be dismissed as harmless error, because even if he had know about the PRS, such knowledge would likely not have affected his decision."*Sanchez,* 2007 WL 4927791, at *9.

### 2. Ineffective Assistance of Counsel

Petitioner contends that he received ineffective assistance of counsel, specifically that his counsel failed to object to duplicate counts on the indictment, failed to file a Notice of Appeal, and failed to advise him of the PRS accompanying the guilty plea. As discussed below, this claim is meritless.

### a. Legal Standard

Under the standard promulgated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness,"*id. at 680, and (2)*"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,"*id. at 694.*

**\*10** The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally

effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' " *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir.2005) (quoting *Strickland,* 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a " 'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.' " *Id.* (quoting *Rompilla v. Beard,* 545 U.S. 374, 408, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005)). In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments.' " *Id.* (quoting *Strickland,* 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord,* 77 F.3d 578, 588 n. 3 (2d Cir.1996), and " 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.' " *Id.* at 588 (quoting *Strickland,* 466 U.S. at 690–91). "However, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' " *Id.* (quoting *Strickland,* 466 U.S. at 690–91).

The second prong focuses on prejudice to a petitioner. A petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."*Strickland,* 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that they " 'undermine[ ] confidence in the outcome.' " *Pavel v. Hollins,* 261 F.3d 210, 216 (2d Cir.2001) (quoting *Strickland,* 466 U.S. at 694). " '[T]he question to be asked in assessing the prejudice from counsel's errors ... is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilty.' " *Henry v. Poole,* 409 F.3d 48, 63–64 (2d Cir.2005) (quoting *Strickland,* 466 U.S. at 695). " 'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.' " *Lindstadt v. Keane,* 239 F.3d 191, 204 (2d Cir.2001) (quoting *Strickland,* 466 U .S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of Strickland, the determination of prejudice may be made with the benefit

of hindsight ." *Hemstreet v. Greiner,* 491 F.3d 84, 91 (2d Cir.2007) (internal citation and quotation marks omitted).

**\*11** This Court proceeds to examine Petitioner's claim, keeping in mind that the habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin,* 366 F.3d 95, 100 (2d Cir.2004).

**b. Application**

**i. Failure to Object to Duplicate Counts on the Indictment**

Petitioner alleges that his trial counsel failed to object to duplicate counts contained within the indictment. Specifically, Petitioner asserts that under N.Y. Penal Law § 130.75(2) and N.Y. Penal Law § 130.80(2), a defendant may not be subsequently prosecuted for any other sexual offense involving the same victim. Petitioner argues that he was charged twice for acts upon the same victim under Counts I and III, and for Counts II and IV, and that he suffered prejudice as a result of the his attorney's inaction.

First, this Court finds defense counsel's conduct was not deficient because he sought to have the indictment dismissed on any plausible grounds. Defense counsel filed a motion for the trial court to review the Grand Jury minutes and sought dismissal of the charges. The court, in response to counsel's motion, concluded that the minutes were sufficient and denied counsel's application to dismiss or reduce the charges. *People v. Wilens,* Ind. No. 1020–2005 (Sup.Ct., Suffolk Cnty. July 26, 2005).

Second, Petitioner has failed to show that these alleged duplicate counts caused any prejudice and thus fails the second prong under the *Strickland* test. The New York legislature was careful to avoid double jeopardy concerns under N.Y. Penal Law § 130 .75(2) and § 130.80(2) by enacting N.Y. Penal Law § 70.25(2)(e).N.Y. Penal Law § 70.25(2)(e) states:

> Whenever a person is convicted of course of sexual conduct against a child in the first degree as defined in section 130.75 or course of sexual conduct against a child in the second degree as defined in section 130.80 and any other crime under article one hundred thirty committed against the same child and within the

period charged under section 130.75 or 130.80, the sentences *must run concurrently.*

N.Y. Penal Law § 70.25(2)(e) (emphasis added). At sentencing, Petitioner was sentenced to fourteen years and seven years for Counts One and Three, respectively. For Counts Two and Four, the state judge again sentenced the Petitioner to fourteen and seven years, respectively. The sentences were to run concurrently, not consecutively. Therefore, Petitioner was not subject to prejudice, and his claim must fail.

Furthermore, by pleading guilty, the Petitioner waived any argument that counsel was ineffective for failing to challenge the indictment. *See Schwartz v. Connell,* 05 CIV. 10305, 2006 WL 3549660, at \*5 (S.D.N.Y. Dec.6, 2006) ("A motion to dismiss for a duplicitous indictment is similar to a speedy trial motion in that both can result in a dismissal of charges against the defendant. Both errors, however, are rendered irrelevant in the face of defendant's plea of guilty since this admission is, in most cases, convincing factual evidence of actual guilt."); *People v. Thomas,* 2 A.D.3d 982, 768 N.Y.S.2d 519, 520 (3d Dep't 2003) (holding a claim of ineffective assistance of counsel, predicated on counsel's failure to challenge the indictment, was waived as the alleged failures did not undermine the voluntariness of defendant's guilty plea). [6]

**ii. Failure to File a Notice of Appeal**

**\*12** Petitioner claims that his trial counsel was ineffective because counsel did not file a Notice of Appeal. In *Roe v. Flores–Ortega,* 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), the Supreme Court applied the *Strickland* test with regard to a claim that counsel was constitutionally ineffective for failing to file a Notice of Appeal. The Court noted that it had "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."*Id.* at 477.However, the Court held that, in cases where the defendant "neither instructs counsel to file an appeal nor asks that an appeal not be taken," the first question is whether counsel "in fact consulted with the defendant about an appeal."*Id.* at 478.If the attorney consulted with the defendant, counsel "performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."*Id.* If, however, counsel has not consulted with the defendant, the relevant inquiry is "whether counsel's failure

to consult with the defendant itself constitutes deficient performance."*Id.* The Court rejected a bright-line rule that counsel must always consult with a defendant regarding an appeal. *Id.* at 480.Instead, the Court held that "counsel has a constitutionally-imposed duty to consult with the defendant about an appeal where there is reason to think either (1) that a rational defendant would want to appeal ... or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."*Id.* In making this determination, courts should consider "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings."*Id.* Where a defendant pleads guilty, courts should consider factors such as "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights."*Id.* If the court determines that counsel's performance was deficient, the court must turn to the second prong of the *Strickland* rule-whether counsel's deficient performance prejudiced the defendant. "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."*Id.* at 484.If so, a presumption of prejudice arises. *Id.*

In the instant case, Petitioner, in his *pro se* appellate brief, repeatedly states that he attempted to contact and inform his attorney to file an appeal, but his attempts were futile. (Pet'r's Habeas Pet. at 3.) Assuming that no such consultation occurred, the relevant question becomes whether "there is reason to think either (1) that a rational defendant would want to appeal, or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."*Flores–Ortega,* 528 U.S. at 480.

**\*13** Petitioner pled guilty, which "reduces the scope of potentially appealable issues" and "may indicate that the defendant seeks an end to judicial proceedings."*Id.* However, Petitioner has a right to appeal, and his attorney must respect this right. Assuming *arguendo* that counsel's performance was deficient for failing to appeal or failing to consult Petitioner about an appeal, that deficiency did not create any prejudice and fails the second prong of *Strickland.*Petitioner filed his own Notice of Appeal in a timely manner. Subsequently, Petitioner was assigned appellate counsel. Appellate counsel filed a motion with the Appellate Division to reduce Petitioner's sentence and Petitioner was able to file

his own *pro se* supplemental brief. Not only did appellate counsel raise what he believed to be a meritorious issue on appeal, but Petitioner himself raised his own issues. Both motions were heard and subsequently denied. Therefore, Petitioner did not suffer any prejudice. *See id.* at 484 (rejecting rule that failure to file appeal results in prejudice *per se* because this rule "ignores the critical requirement that counsel's deficient performance must actually cause *the forfeiture of the defendant's appeal."*) (emphasis added).

### iii. Failure To Advise Him Of The Mandatory PRS Accompanying The Guilty Plea
Petitioner alleges his defense counsel was ineffective for failing to advise him of the mandatory post-release supervision, which accompanied his guilty plea. This argument fails the second prong under the *Strickland* test because Petitioner cannot show prejudice based on his lack of knowledge. Under *Strickland,* a habeas petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."*Strickland,* 466 U.S. at 694. Nothing in the record indicates that Petitioner would not have pled had he been informed of the mandatory PRS. *Walker v. Pearlman,* 556 F.Supp.2d 259, 265 (S.D.N.Y.2008) (holding that knowledge of a five-year PRS period would have not changed the defendant's plea).

Petitioner does allege that, had he known about the PRS, he would not have pled guilty. In fact, Petitioner was made fully aware of PRS at his sentencing hearing, and made no objection or any attempt to withdraw his guilty plea. In his *pro se* supplemental brief to the Appellate Division on appeal, Petitioner again did not seek to withdraw his guilty plea. Furthermore, as stated above, had Petitioner gone to trial and been found guilty of the charges, he faced two life sentences. In addition, any period of incarceration connected with these charges carries with them a mandatory period of post-release supervision.N.Y. Penal Law § 70.80(3). Under the circumstances, even assuming *arguendo* the allegation of ineffective assistance to be true, there is no basis to conclude that Petitioner suffered any prejudice under the second prong of *Strickland.*

### 3. Insufficient Allocution
**\*14** Petitioner alleges his allocution was insufficient in establishing the elements of the crimes of which he was convicted. For the reasons stated, the Court finds this claim to be without merit. [7]

**i. Allocution Under Penal Law § 130.75(1)(a) (Course of sexual conduct against a child in the first degree)**

In analyzing the transcript of the plea, it is clear that Petitioner provided a sufficient allocution for each element of the crimes charged. N.Y. Penal Law § 130.75(1) (Course of sexual conduct against a child in the first degree) reads:

> A person is guilty of course of sexual conduct against a child in the first degree when, over a period of time not less than three months in duration:

> (a) he or she engages in two or more acts of sexual conduct, which includes at least one act of sexual intercourse, oral sexual conduct, anal sexual conduct or aggravated sexual contact, with a child less than eleven years old

N.Y. Penal Law § 130.75(1). Under this statute, the prosecutor must show that over a three-month period or more, the defendant engaged in at least two acts of sexual conduct.

Petitioner admitted in great detail to the specific oral sexual conduct between himself and the victims, which occurred well over a three-month period. Petitioner also admitted that these victims were children under the age of eleven. In particular, during the allocution, petitioner admitted in part that, (1) within a three-month period between 2002 and 2004, on at least three occasions at his residence in Suffolk County, he subjected the female child "DM" (who was under the age of eleven) to sexual contact and sexual intercourse for Petitioner's sexual gratification (P. 7–8); and (2) within a three-month period from between September 2003 and July 2004, on at least three occasions at his residence, Petitioner had sexual contact with the male child "DM" (who was under the age of 11), including one incident of oral sexual conduct. (P. 8–12.) Petitioner's allocution covered all of the requisite elements and was sufficient to find him guilty of the charges under Penal Law § 130.75(1)(a) (Course of sexual conduct against a child in the first degree).

**ii. Allocution under Under Penal Law § 130.80(1)(a) (Course of sexual conduct against a child in the second degree)**

In relevant part, N.Y. Penal Law § 130.80(1)(a) (Course of sexual conduct against a child in the second degree) reads:

> A person is guilty of course of sexual conduct against a child in the second degree when, over a period of time not less than three months in duration:

> (a) he or she engages in two or more acts of sexual conduct with a child less than eleven years old.

N.Y. Penal Law § 130.80(1)(a). Under this statute, the prosecutor must show that over a three-month period or more, the defendant engaged in two or more acts of sexual conduct with a child less than eleven years old. "Sexual conduct" means sexual intercourse, oral sexual conduct, anal sexual conduct, aggravated sexual contact, or sexual contact. N.Y. Penal Law § 130.00(10).

**\*15** The plea transcript provides sufficient evidence that Petitioner is guilty under N.Y. Penal Law § 130.80(1)(a) (Course of sexual conduct against a child in the second degree). As discussed supra, Petitioner admitted to sexual conduct with a child under the age of eleven. He also admitted that this conduct occurred for a period of at least three months. Moreover, he allocuted to conduct that clearly fell within the definition of oral sexual conduct. (P. 9–11 .) Thus, each element under Penal Law § 130.80(1)(a) was satisfied.

Petitioner furthers argues that dialogue between the prosecutor and himself during the plea was insufficient to support the charge because his admission was preceeded by six denials. (Pet'r's Habeas Pet. at 2.) He asserts that the state court should have, "looked further into the reasons of denials of alleged acts before accepting the insufficient pleas."(*Id.* at 2.)

The Court disagrees. By looking at the totality of the guilty plea proceeding, instead of a few isolated lines as Petitioner suggests, it is clear that the plea was voluntary. There is no evidence that the prosecutor or anyone else threatened Petitioner to induce a coerced plea. The court simply gave Petitioner another opportunity to explain what had occurred. Subsequently, Petitioner provided a sufficient allocution and made a proper plea. In short, there is no basis to challenge the Petitioner's statements at the guilty plea, including the voluntariness of those statements.

**iii. Allocution Under Penal Law § 130.65 (Sexual Abuse in the First Degree)**

N.Y. Penal Law § 130.65 (Sexual Abuse in the First Degree) states that "[a] person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact: ... [w]hen the other person is less than thirteen years old and the actor is twenty-one years old or older."N.Y. Penal Law § 130.65.

The record is clear that the prosecution satisfied every element of this charge. Petitioner described in great detail sexual acts which satisfy subsection 4 of N.Y. Penal Law § 130.65. Petitioner, by his own admission, subjected his victims, who were all under the age of thirteen, to sexual contact. Because the Petitioner is older than twenty-one years of age, the elements are satisfied, and thus his allocution was sufficient.

### iv. Allocution Under Penal Law § 260.10(1) (Endangering the Welfare of Child)

Lastly, under the N.Y. Penal Law § 260.10(1) (Endangering the Welfare of Child):

> A person is guilty of endangering the welfare of a child when:
>
> 1. He or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his or her life or health.

N.Y. Penal Law § 260.10(1). There is no requirement under this statute that the physical, mental or moral welfare of the child be in fact injured, and New York courts have held that actions similar to the ones admitted to by Petitioner violate the statute. *See, e .g., People v. Rice,* 17 N.Y.2d 881, 271 N.Y.S.2d 307, 218 N.E.2d 341 (1966); *People v. Dunavin,* 173 A.D.2d 1032, 1034, 570 N.Y.S.2d 369 (3d Dep't 1991) (evidence demonstrating that defendant showed minors sexually explicit film combined with touching minor's buttocks legally sufficient to establish crime of endangering welfare of child). The Court concludes that Petitioner's allocution under Penal Law § 260.10(1) (Endangering the Welfare of Child) was sufficient to satisfy all elements of the crime alleged. (P. 14–16.)

**\*16** In sum, Petitioner's claim that his allocution did not satisfy the elements of the crimes charged is plainly without merit.

### 4. *Brady* and *Rosario* Violations

Petitioner also claims *Brady* and *Rosario* violations, alleging that the prosecution withheld certain exculpatory evidence-namely, the victims' medical records and a finding of 'Not Guilty' in his Family Court case, which related to this

criminal matter. (Pet. at 3–4) For the reasons set forth below, the Court finds that Petitioner's claim is without merit.

### a. Legal Standard

For the purposes of federal habeas corpus review, a habeas petition can only be granted to remedy some violation of federal law. Because the obligation to turn over *Rosario* material arises under state law, to the extent that this claim is based on a *Rosario* violation, it must fail. Thus, the only question is whether the prosecution violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. *See King v. Greiner,* No. 02–CV–5810, 2008 WL 4410109, at \*38 n. 41 (S.D.N.Y. Sept.26, 2008).

Under *Brady,* the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."373 U.S. at 87. In order to prevail on a *Brady* claim, petitioner must demonstrate that material evidence favorable to his case was not disclosed to him. *See Kyles v. Whitley,* 514 U.S. 419, 437–38, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ("[T]he prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable.")."Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Strickler v. Greene,* 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). Failure to disclose such material evidence merits relief only if the prosecution's failure " 'undermines confidence in the outcome of the trial.' " *Kyles,* 514 U.S. at 434 (quoting *Bagley,* 473 U.S. at 678). Furthermore, "[t]here is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler,* 527 U.S. at 281.

### b. Application

Petitioner argues that the outcome of his case would have been different if the prosecutor submitted medical records and a Family Court verdict of 'Not Guilty' of sexual abuse. Analyzing these claims, the Court finds them to be meritless. With regard to the Family Court adjudication, Petitioner makes conclusory statements without providing a shred of evidence before the Court beside his self-serving declaration.

The state record is devoid of any documentation from Family Court, which would be classified as exculpatory under *Brady.* Additionally, Petitioner failed to produce an affidavit from his attorney attesting to a favorable adjudication in the Family Court. In fact, Respondent submitted to the state court, in response to his Section 440 motion, court documents from Family Court indicating that the abuse petitions were granted on September 23, 2005. (Opp. to Section 440 Motion, Ex. B.)

**\*17** In any event, Petitioner was presumably present in Family Court during the proceedings. Therefore, he was aware of the evidence allegedly withheld, removing it from the scope of *Brady* material. Lastly, as noted above, a final Family Court disposition took place on September 23, 2005. Petitioner pled guilty in Criminal Court on August 30, 2005. There can be no argument that this disposition, which took place later in time, could have possibly influenced the outcome of his guilty plea (which had already taken place).

Similarly, the medical records at issue are neither exculpatory nor favorable to Petitioner. The medical records specifically state that the victims' medical history indicates that "inappropriate sexual contact" occurred. This statement is certainly not favorable to Petitioner. Although the records state that there were no abnormal findings *during* the exam, this has no bearing on whether the victims were abused

in the past by Petitioner. Moreover, the medical record qualifies the examination by stating that the alleged acts would not cause "permanent changes in the patient's physical exam." Therefore, the medical records do not exculpate Petitioner and, thus, cannot be classified as *Brady* material. [8]

In sum, Petitioner's *Brady* and *Rosario* claims are without merit and do not provide a basis for habeas relief.

## IV. CONCLUSION

For the reasons set forth herein, this Court finds that Petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. All of Petitioner's claims are plainly without merit. Therefore, the petition for a writ of habeas corpus is denied. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall be issued. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

**All Citations**

Slip Copy, 2014 WL 28995

## Footnotes

1    "P." refers to the plea transcript.

2    "S." refers to the sentencing transcript.

3    The Court did not address Petitioner's claim that his allocution was insufficient and it would appear that this claim is not cognizable on a § 440.10 motion to vacate. However, when a state court fails to address a claim, a Court must review it *de novo. See Cotto v. Fischer,* 09 CV 9813, 2012 WL 5500575, at *39 (S.D.N.Y. Aug.23, 2012). As a threshold matter, Petitioner only addressed this matter in a conclusory manner without any argument as to the specific challenge being made. Thus, the issue was not fairly presented to the state court. In any event, as addressed *infra,* the Court has reviewed this claim and finds it to be plainly without merit.

4    As stated *supra,* even if the state court did violate New York law, Petitioner is also not entitled to relief because this claim is procedurally barred.

5    As Respondent notes, "All terms of incarceration were ordered to run concurrently, for an aggregate sentence of fourteen years for his sexual assaults and lewd behavior against eight children. Had petitioner gone to trial and been found guilty, as a second child sexual assault felony offender, petitioner faced a maximum sentence of two life terms, plus 48 years." (Resp. Opp. at 11.)

6    The Court notes that, for the reasons discussed *infra,* Petitioner has not made any plausible argument that his guilty plea was not voluntary and intelligent that would allow him to now argue that this argument should not be waived.

7    The state court did not address Petitioner's contention that his allocution at his plea was insufficient, and thus, this claim is not entitled to AEDPA deference. *See, e.g., Bell v. Napoli,* 08 CIV 9900, 2010 WL 8039333, at *23 n. 13 (S.D.N.Y. Aug.24, 2010) (Report and Recommendation). However, even under *de novo* review, Petitioner's claim is plainly without merit.

8    In any event, such claims cannot provide a basis for habeas relief. The Supreme Court has never held that exculpatory material must be disclosed prior to a guilty plea. Therefore, a state court decision on that issue could not have been

"contrary to clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A habeas petition may not be granted on an issue of law that has not yet been resolved. *See Friedman v. Rehal,* 618 F.3d 142, 154–55 (2d Cir.2010) (discussing *Ruiz* and holding that, because no clearly established federal law has been established as to the application of *Brady* to a guilty plea, such a claim was not cognizable on habeas review).

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.